

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed June 21, 2024**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-80045-mvl11 |
| | § | |
| **KIDKRAFT, INC.,** *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors. [1] | § | (Jointly Administered) |
| | § | |
| | § | Re: Docket Nos. 28, 29, & 220 |

## FINDINGS OF FACT,
## CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
## THE DISCLOSURE STATEMENT; AND(II) CONFIRMING THE
## DEBTORS' AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are: KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc (4302). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 4630 Olin Road, Dallas, TX 75244.

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

having:

a. distributed, through Stretto, Inc. (the "**Voting Agent**"), on or about May 9, 2024 (i) the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket. No. 29] (as may be amended, supplemented, or modified from time to time, the "**Disclosure Statement**"); (ii) the *Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 28] (the "**Initial Plan**"); and (iii) a ballot (the "**Ballot**") for voting on the Plan to the sole Holder of the Class 3 Prepetition Secured Party Claim in accordance with title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**N.D. Tex. L.B.R.**"), and applicable nonbankruptcy law, as evidenced by the *Certification of Stretto, Inc. Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 30] (the "**Voting Report**");

b. commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 10, 2024 (the "**Petition Date**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**");

c. commenced recognition proceedings pursuant to Part IV of the *Companies' Creditors Arrangement Act* (Canada) in respect of the chapter 11 cases of the Debtors on May 17, 2024 (the "**CCAA Recognition Proceedings**") in the Ontario Superior Court of Justice (Commercial List) (the "**CCAA Court**") and on May 10, 2024, prior to commencement, obtained a preliminary stay in the CCAA Court;

d. continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

e. filed, on the Petition Date, the prepetition solicitation versions of the (i) Initial Plan and (ii) Disclosure Statement;

f. filed, on the Petition Date, that certain *Asset Purchase Agreement* [Docket No. 29, Ex. C] (together with all ancillary documents, as may be amended, modified, or supplemented, the "**Purchase Agreement**");

g. filed, on the Petition Date, the *Emergency Motion for Entry of an Order (I) Scheduling a Combined Hearing (II) Establishing Objection Deadlines, (III) Approving the Solicitation Materials and Tabulation Procedures; and (IV) Granting Related Relief* [Docket No. 27] (the "**Scheduling Motion**");

h. filed, on the Petition Date, the Voting Report, which detailed the results of the prepetition Plan solicitation and voting process;

2

i.    served or caused to be served, on May 15, 2024, (i) the *Notice of (I) Combined Hearing to Consider Approval of Disclosure Statement and Confirmation of Plan, (II) Deadline for Filing Objections to Final Approval of Disclosure Statement and Confirmation of Plan, and (III) Other Relevant Information*, which contained, among other things, notice of the date and time set for the confirmation hearing to consider the adequacy of the Disclosure Statement and Confirmation of the Plan (the "***Combined Hearing***") and the deadlines for filing objections to the Plan and the Disclosure Statement (such notice, the "***Combined Hearing Notice***") and (ii) the *Notice of (I) Non-Voting Status, (II) Deadline for Filing Objections to Approval of Disclosure Statement and Confirmation of Plan, and (III) Other Relevant Information* (the "***Notice of Non-Voting Status***"), each as evidenced by the *Certificate of Service* [Docket No. 115] filed on May 17, 2024 (the "***Notice Affidavit***");

j.    caused notice of the Combined Hearing to be published on May 17, 2024, in the *New York Times*, as evidenced by the *Affidavit of Publication* [Docket No. 123] filed on May 28, 2024, and on May 20, 2024, in the *Globe & Mail National Edition*, as evidenced by the *Affidavit of Publication* [Docket No. 124] filed on May 28, 2024, (collectively, the "***Combined Hearing Publication Notice***");

k.    served or caused to be served, on June 11, 2024, the *Notice of Deadlines for Filing Proof of Claim* (the "***Bar Date Notice***"), as evidenced by the *Certificate of Service* [Docket No. 172] filed on June 12, 2024 (the "***Bar Date Notice Affidavit***"); and (i) on June 12, 2024, caused the publication of the Bar Date Notice in the *New York Times*, as evidenced by the *Affidavit of Publication* [Docket No. 206], filed on June 18, 2024 (the "***NYT Bar Date Publication Notice Affidavit***"); and (ii) on June 13, 2024, caused the publication of the Bar Date Notice in the *Globe & Mail National Edition*, as evidenced by the *Affidavit of Publication* [Docket No. 207] filed on June 18, 2024 (the "***G&M Bar Date Publication Notice Affidavit***," together, with the Bar Date Notice Affidavit and the NYT Bar Date Publication Notice Affidavit, the "***Bar Date Affidavits***");

l.    filed, on June 12, 2024, the *Notice of Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 175], consisting of the Purchase Agreement, the Schedule of Assumed Executory Contracts and Unexpired Leases, and the Schedule of Retained Causes of Action (the "***First Plan Supplement***");

m.    filed, on June 14, the *Notice of Amended Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 187], consisting of the Liquidation Analysis (the "***Second Plan Supplement***");

n.    filed, on June 14, 2024, the *Declaration of Ajay Bijoor, Managing Director of Robert W. Baird & Co. Incorporated, in Support of (I) the Sale Process, and (II) the Bid Protections* [Docket No. 188] (the "***Bijoor Sale Declaration***");

o.    filed, on June 17, the *Notice of Filing of Global Settlement Term Sheet* [Docket No. 195];

p.   filed, on June 20, 2024, (i) the *Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 220] (as may be further modified, amended, or supplemented from time to time, the "**Plan**"),[2] a copy of which is attached hereto as **Exhibit A** and (ii) the *Notice of Filing Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 221];

q.   filed, on June 21, 2024, the *Notice of Second Amended Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 223], consisting of (i) the Global Settlement Term Sheet, (ii) the GUC Trust Agreement, (iii) the GUC Settlement Opt-In Form, (iv) the Identity of Wind Down Administrator, and (v) the Identity of GUC Trustee (the "**Third Plan Supplement**," and together with the First Plan Supplement and the Second Plan Supplement, collectively, the "**Plan Supplement**");

r.   filed, on June 20, 2024, the *Notice of Filing of (I) Proposed Confirmation Order and (II) Proposed Sale Order* [Docket No. 219], which included the proposed forms of this order and the *Order (I) Authorizing the Sale of the Debtors' Assets Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 105 and 363, (II) Approving the Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "**Proposed Sale Approval Order**");

s.   filed, on June 20, 2024, the *Debtors' Memorandum of Law in Support of (I) Approval of the Disclosure Statement; (II) Confirmation of the Debtors' Amended Joint Prepackaged Chapter 11 Plan; and (III) Reply to Confirmation Objections* [Docket No. 213] (the "**Confirmation Brief**");

t.   filed, on June 20, 2024, the *Certification of Stretto, Inc. Regarding Tabulation of Release Opt-Out Forms in Connection with the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 217] (the "**Opt-Out Report**");

u.   filed, on June 20, 2024, the *Declaration of Geoffrey Walker in Support of Confirmation of the Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 214] (the "**Walker Confirmation Declaration**"); and

v.   filed, on June 19, 2024, the *Declaration of Carl Moore, Managing Director of SierraConstellation Partners, LLC, in Support of the Debtors' Liquidation Analysis* [Docket No. 212] (the "**Moore Confirmation Declaration**," and together with the Walker Confirmation Declaration and the Bijoor Sale Declaration, the "**Confirmation Declarations**").

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan apply.

The Bankruptcy Court having:

a.      entered, on May 14, 2024, the *Order (I) Scheduling a Combined Hearing, (II) Establishing Objection Deadlines, (III) Approving the Solicitation Materials and Tabulation Procedures, and (IV) Granting Related Relief* [Docket No. 93] (the "***Scheduling Order***"), which, among other things, approved the Debtors' prepetition solicitation and tabulation procedures (the "***Prepetition Solicitation and Tabulation Procedures***");

b.      approved May 9, 2024 as (i) the voting record date (the "***Voting Record Date***") and (ii) the deadline by which the Voting Agent must have received the completed Ballot (the "***Voting Deadline***");

c.      set June 14, 2024, at 5:00 p.m. (Prevailing Central Time) as the deadline by which objections to the adequacy of the Disclosure Statement and/or Confirmation of the Plan must be filed (the "***Confirmation Objection Deadline***");

d.      set June 19, 2024, as the date by which the Debtors must file a reply to objections to the Plan and the Disclosure Statement;

e.      set June 21, 2024, at 9:30 a.m. (Prevailing Central Time) as the date and time for the Combined Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, subject to adjournment;

f.      entered, on June 10, 2024, the *Order (I) Establishing Bar Dates and Procedures and (II) Approving the Form and Manner of Notice* [Docket No. 155] (the "***Bar Date Order***");

g.      entered, substantially contemporaneously herewith, the *Order (I) Approving Certain Bidder Protections, (II) Approving Contract Assumption and Assignment Procedures, and (III) Granting Related Relief*;

h.      reviewed the Plan, the Confirmation Brief, the Plan Supplement, the Voting Report, the Opt-Out Report, the Confirmation Declarations, the Disclosure Statement, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of rights filed by parties in interest on the docket of these chapter 11 cases;

i.      held the Combined Hearing;

j.      heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation of the Plan and approval of the Disclosure Statement;

k.      considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation of the Plan and approval of the Disclosure Statement;

l.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these chapter 11 cases; and

m.      overruled any and all objections to the Plan, Confirmation, the adequacy of the Disclosure Statement, and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

**NOW**, **THEREFORE**, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation of the Plan and approval of the Disclosure Statement have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered, admitted, or adduced by counsel at or prior to the Combined Hearing and the entire record of these chapter 11 cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Findings of Fact and Conclusions of Law.**

1.      The findings and conclusions set forth herein and on the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Bankruptcy Court has jurisdiction over these chapter 11 cases pursuant to section 1334 of title 28 of the United States Code.  The Bankruptcy Court has exclusive jurisdiction

to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code, and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of These Chapter 11 Cases.**

4.      On the Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Bankruptcy Court, these chapter 11 cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 51].  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  On May 23, 2024, the U.S. Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 120] (the "***Committee***") in these chapter 11 cases.

**E.      Judicial Notice.**

5.      The Bankruptcy Court takes judicial notice of the docket of these chapter 11 cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, all declarations, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these chapter 11 cases.

**F.    Notice.**

6.    Due, timely, proper, and adequate notice of the Plan, the Claims Bar Date, and the Combined Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan or opting out of the Releases (as defined herein), has been provided substantially in accordance with the Scheduling Order and the Bar Date Order, as set forth in the Voting Report, the Notice Affidavit, the Opt-Out Report, and the Bar Date Affidavits, respectively.

7.    Such notice was appropriate and satisfactory based upon the facts and circumstances of these chapter 11 cases and pursuant to sections 1125, 1126(b)(1), and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely, and adequate notice of the Combined Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., and applicable non-bankruptcy law, rule, or regulation.

**G.    Solicitation.**

8.    The Initial Plan, the Disclosure Statement, and the Ballot (collectively the "***Prepetition Solicitation Package***") were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the N.D. Tex. L.B.R., the Prepetition Solicitation and Tabulation Procedures approved by the Bankruptcy Court via the Scheduling Order, and all other applicable rules, laws, and regulations applicable to such solicitation.  Transmission and service of the Prepetition Solicitation Package was timely, adequate, and sufficient.  No further notice is required.

9.    As set forth in the Voting Report, on May 9, 2024, prior to the Petition Date, the Prepetition Solicitation Package was transmitted to and served on the eligible Holder of Class 3

Prepetition Secured Party Claims, which was the only Class of Claims entitled to vote to accept or reject the Plan (the "***Voting Class***").[3]

10.     The sole Holder of a Claim in the Voting Class received a Ballot.  The form of the Ballot adequately addressed the particular needs of these chapter 11 cases and was appropriate for the Holder of Claims in the Voting Class.  The instructions on the Ballot advised that for the Ballot to be counted, the Ballot had to be properly executed, completed, and delivered to the Voting Agent so that it was actually received by the Voting Agent on or before the Voting Deadline.  The period during which the Debtors solicited acceptance of the Plan was a reasonable period of time for the Holder of Claims in the Voting Class to make an informed decision to accept or reject the Plan.

11.     The Debtors were not required to solicit votes from the Holders of Claims in Class 1 (Other Priority Claims) or Class 2 (Other Secured Claims) (collectively, the "***Unimpaired Classes***"), as each such Class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

12.     The Debtors were not required to solicit votes from the Holders of Claims in Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests), as the Holders of Claims or Interests in such Classes are either Unimpaired or Impaired by the Plan, and accordingly, such Holders are either presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or are not entitled to receive distributions on account of their Claims or Interests under the Plan except as set forth in the Plan and, thus, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and, in either case, were not entitled to vote to accept or reject the Plan.

---

[3]     *See* the Voting Report [Docket No. 30].

4854-6211-3726

13.     The Debtors were not required to solicit votes from Holders of Claims or Interests in Class 4 (General Unsecured Creditors) or Class 7 (KidKraft Intermediate Holdings, LLC Interests), (collectively, the "*Deemed Rejecting Classes*"), as the Holders of Claims or Interests in such Class are Impaired and not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

14.     As described in and as evidenced by the Voting Report, the transmittal and service of the Prepetition Solicitation Package (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required.  The Solicitation complied with the Solicitation and Tabulation Procedures, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., the Scheduling Order, and any other applicable rules, laws, and regulations governing the adequacy of disclosure in connection with such Solicitation. The applicable Released Parties and Exculpated Parties acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law, rules, and regulations, including with respect to solicitation of the acceptance or rejection of the Plan, and are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan and this Confirmation Order.

**H.      Adequacy of the Disclosure Statement.**

15.     The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy rules, laws, and regulations, including the Securities Act, as applicable, (b) contains "adequate information" (as such term is

defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the
Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein,
and (c) is hereby approved on a final basis in all respects.

**I.     Voting.**

16.     On the Petition Date, the Voting Report was filed with the Bankruptcy Court,
certifying the method and results of the Ballot tabulated for the Voting Class.  As of the Voting
Deadline, 100% in number and 100% in dollar amount of the Holder of Claims in the Voting Class
that timely voted, voted to accept the Plan.  As evidenced by the Voting Report, votes to accept or
reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with
the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R, and the Solicitation and
Tabulation Procedures.

**J.     Plan Supplement.**

17.     The Debtors filed the Plan Supplement, consisting of:  (i) the Purchase Agreement,
(ii) the Schedule of Assumed Executory Contracts and Unexpired Leases, (iii) the Schedule of
Retained Causes of Action, (iv) the Liquidation Analysis, (v) the Global Settlement Term Sheet,
(vi) the GUC Trust Agreement, and (vii) the GUC Settlement Opt-In Form.

18.     All such materials are consistent with the terms of the Plan, and the filing and notice
of the Plan Supplement was proper and in accordance with the Plan, the Bankruptcy Code, the
Bankruptcy Rules, the N.D. Tex. L.B.R., and all applicable law, and no other or further notice is
or shall be required.  All documents included in the Plan Supplement are integral to, part of, and
incorporated by reference into the Plan as if set forth in full therein.  Subject to the terms of the
Plan, the Debtors reserve the right to and may alter, amend, update, or modify the Plan Supplement
before the Effective Date with the consent of the Prepetition Secured Parties; *provided* that any

4854-6211-3726

such alteration, amendment, update, or modification shall be in compliance with the Bankruptcy

Code, the Bankruptcy Rules, and the terms of this Confirmation Order.

**K.      Modifications of the Plan.**

19.      Pursuant to and consistent with section 1127 of the Bankruptcy Code and

Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Initial Plan as reflected

herein, in the Plan Supplement, and/or in the Plan filed with the Bankruptcy Court prior to entry

of this Confirmation Order (collectively, the "***Plan Modifications***").  Consistent with Bankruptcy

Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Initial Plan

under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of

sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment

of any Claims or Interests, (d) require re-solicitation of any Holders of any Claims or Interests, or

(e) require that the Holder of Claims in the Voting Class be afforded an opportunity to change its

previously cast acceptance of the Plan.  Under the circumstances, the form and manner of notice

of the proposed Plan Modifications are adequate, no further solicitation is necessary or required,

and no other or further notice of the proposed Plan Modifications is necessary or required.  In

accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of

Claims who voted to accept the Initial Plan or who are conclusively presumed to have accepted

the Initial Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  The

Holder of Claims in the Voting Class is not permitted to change its vote as a consequence of the

Plan Modifications.

**L.      Bankruptcy Rule 3016.**

20.      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the

Debtors as the Plan proponents.  The Debtors appropriately filed the Disclosure Statement with

the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).  The release, injunction, and

exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**M.      Burden of Proof: Confirmation of the Plan.**

21.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**N.      Compliance with Bankruptcy Code Requirements: Section 1129(a)(1).**

22.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)      Proper Classification: Sections 1122 and 1123(a)(1).

23.      In addition to the Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims, which need not be classified, Article III of the Plan provides for the separate classification of Claims and Interests into seven Classes at each Debtor (as applicable). Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to other Claims or Interests within that Class.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      Specified Unimpaired Classes: Section 1123(a)(2).

24.      Article III of the Plan specifies that Claims in the following Classes are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

13

| Class | Claim or Interest |
|-------|-------------------|
| 1 | Other Priority Claims |
| 2 | Other Secured Claims |

     (iii)    <u>Specified Treatment of Impaired Classes: Section 1123(a)(3).</u>

25.    Article III of the Plan specifies that the Claims in the following Classes are Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:

| Class | Claim or Interest |
|-------|-------------------|
| 3 | Prepetition Secured Party Claims |
| 4 | General Unsecured Claims |
| 5 | Intercompany Claims |
| 6 | Intercompany Interests |
| 7 | KidKraft Intermediate Holdings, LLC Interests |

     (iv)    <u>No Discrimination: Section 1123(a)(4).</u>

26.    Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

14

(v)     <u>Adequate Means for Plan Implementation: Section 1123(a)(5)</u>.

27.     The Plan, including the various documents and agreements in the Plan Supplement, provides adequate and proper means for implementation of the Plan, including, without limitation: (a) the consummation of the Sale Transaction; (b) the general settlement of claims and interests; (c) the creation of specific segregated accounts for Plan Distributions; (d) the wind down of existing operations and corporate governance over time following the Effective Date; (e) the creation and funding of the Wind Down Estate, and the appointment of the Wind Down Administrator; (f) to the extent necessary, the sale and abandonment of assets by the Wind Down Estate; (g) the creation and funding of the GUC Trust and the appointment of the GUC Trustee; (h) the cancellation of certain existing securities, agreements, obligations, instruments, and Interests; (i) the release of liens; (j) the continuation of existing director and officer liability insurance; (k) the substitution of the Wind Down Estate or the Wind Down Administrator as the party to any litigation; (l) the payment of Unpaid Employee Severance Obligations; (m) the termination of any surviving obligations under the Restructuring Support Agreement; (n) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan; (o) provisions governing the distributions under the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code; and (p) the general authority for the Debtors to take all actions necessary or appropriate to effectuate any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, as set forth more fully in Article IV of the Plan.

(vi)     <u>Voting Power of Equity Securities: Section 1123(a)(6)</u>.

28.     All existing securities will be canceled pursuant to the Plan. The Debtors' corporate charters are deemed amended by this Confirmation Order to provide that no nonvoting equity

15

securities will be issued and to otherwise comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)    Designation of Directors and Officers: Section 1123(a)(7).

29.    Article IV.A.17.b. of the Plan provides that, as of the Effective Date, the term of the current members of the board of directors of KidKraft and its Debtor Affiliates shall expire automatically, and each person serving as a director of KidKraft and each of its Debtor Affiliates shall be removed and shall be deemed to have resigned and cease to serve automatically. The identities of the Wind Down Administrator and the GUC Trustee, to the extent known, have been or will be disclosed in the Plan Supplement prior to the Effective Date. To the extent that section 1123(a)(7) of the Bankruptcy Code applies to the Wind Down Administrator or the GUC Trustee, the Wind Down Administrator or the GUC Trustee was appointed in accordance with the interests of creditors and with public policy, and, therefore, satisfies section 1123(a)(7) of the Bankruptcy Code.

(viii)    Impairment / Unimpairment of Classes: Section 1123(b)(1).

30.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix)    Assumption and Rejection of Executory Contracts and Unexpired Leases: Section 1123(b)(2).

31.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V.A of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date. In accordance with the provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Supplement, or this Confirmation Order, all Executory Contracts or Unexpired Leases shall be rejected as of the

4854-6211-3726

Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on a schedule of assumed contracts by the Purchaser; (ii) is designated as a Transferred Contract pursuant to the Purchase Agreement on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (iii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iv) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (v) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (vi) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

> (x)   <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action: Section 1123(b)(3).</u>

32.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable. The foregoing includes, without limitation, the Global Settlement (as defined below) and the corresponding settlement of Claims, Causes of Action, and controversies embodied in Article IV.C of the Plan.

33.    Article IV.C of the Plan describes the terms of the Global Settlement between the Global Settlement Parties, which provides the potential for a recovery to Holders of Allowed Class 4 General Unsecured Claims who timely make a GUC Settlement Opt-In Election.  The provisions of the Global Settlement constitute a good faith compromise and settlement among the Global Settlement Parties of all Claims, Causes of Action, Interests, and controversies among such parties, are in consideration of the value provided to the Estates by the Global Settlement Parties pursuant to the Global Settlement and are fair and equitable and in the best interests of the Estates and their creditors.  The GUC Settlement Opt-In Election, including the GUC Settlement Opt-In Form and the procedures set forth therein, are fair and consistent with the Global Settlement.  The Plan shall be deemed a motion to approve the Global Settlement, including the GUC Settlement Opt-In Form and related procedures, as a good faith compromise and settlement of all of the Claims, Interests, Causes of Action, and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable).  Entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the Global Settlement, as well as a finding by the Bankruptcy Court that the Global Settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  If a Global Settlement Party is in breach of the terms of the Global Settlement, the parties that are not in breach shall not be obligated to perform any obligations for the benefit of such breaching party.

34.    Articles VIII.E and IV.C of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***").  The Debtor Releases are granted in exchange for the good and valuable consideration provided by the Released Parties.  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  For

18

the reasons set forth on the record of these chapter 11 cases and the evidence proffered, admitted, or adduced at or prior to the Combined Hearing, such releases are a necessary and integral part of the Plan.  The Debtor Releases are "fair and equitable" and "in the best interests of the estate" and the Holders of Claims and Interests considering (a) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to such Claims and Causes of Action; (b) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; and (c) the arm's-length negotiations that produced the settlements embodied in the Plan, including the Global Settlement.  Additionally, the Debtor Releases are: (x) a good-faith settlement and compromise of the Claims and Causes of Action released by Articles VIII.E and IV.C of the Plan; (y) given and made, after due notice and opportunity for hearing; and (z) a bar to any of the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) or any other entity on behalf of the Debtors' estates asserting any Claim or Cause of Action released by Article VIII.E or IV.C of the Plan.

35.    Article VIII.F of the Plan describes certain releases granted by the Releasing Parties (the "***Releases***").  The Releases provide finality for the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trustee, and the Released Parties (as applicable) regarding the parties' respective historic relationships with the Debtors, obligations under the Plan, and with respect to the Wind Down Estate and the GUC Trust.  The Ballot unambiguously stated that the Plan contains the Releases, set forth the terms of the Releases, and provided the option for the Holder of the Claim in the Voting Class to elect to opt-out of granting the Releases by indicating such election on the Ballot.  The Notice of Non-Voting Status sent to all Holders of Claims or Interests not entitled to vote on the Plan (collectively, the "***Non-Voting Classes***") similarly and unambiguously included information regarding the Releases and detailed the process by which

19

Holders of Claims and/or Interests in the Non-Voting Classes could opt-out of granting the Releases, including by providing a form by which such Holders could indicate that they wished to opt-out of granting the Releases and providing instructions for, alternatively, opting-out of granting the Releases electronically through the Debtors' case website. The Combined Hearing Notice sent to Holders of Claims and Interests included the terms of the Releases and an explanation of how to object to the Plan. In addition, the Combined Hearing Notice advised careful review of the release, exculpation, and injunction provisions of the Plan and emphasized in bold and capitalized typeface that any party who opposed the Plan, including the release, exculpation, or injunction provisions set forth therein, should timely file an objection to the Plan in accordance with the Combined Hearing Notice.

36.     The Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; (e) in exchange for good and valuable consideration provided by the Released Parties; (f) not violative of the Bankruptcy Code or any applicable non-bankruptcy law; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Releases. The Releases are consensual because all parties in interest, including all Releasing Parties, were provided with extensive and sufficient notice of the chapter 11 cases, the Plan, the deadline to object to Confirmation of the Plan, and the process for opting-out of giving the Releases and the consequences for failing to timely do so, and all such parties were properly informed that the Plan contained release provisions that could affect such parties' rights.

37.     The Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released Claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of these chapter 11 cases. The Releases are conspicuous and

emphasized with boldface type in the Plan, the Disclosure Statement, the Ballot, the Notice of

Non-Voting Status, and the Combined Hearing Notice.

38.      The Releases are integral to the Plan because they, *inter alia*, facilitated

participation in both the formulation of the Plan and the chapter 11 process generally and were

critical in incentivizing the parties to support the Plan.  As such, the Releases offer certain

protections to parties that participated constructively in the Debtors' chapter 11 process by, among

other things, supporting the Plan.

39.      The Releases are consistent with established practice in this jurisdiction and others

because they are, among other things:  (a) consensual; (b) in the best interests of the Debtors, their

Estates, and all Holders of Claims and Interests; (c) in exchange for the good and valuable

consideration provided by the Released Parties; (d) fair, equitable, and reasonable; (e) given and

made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties

asserting any Claim or Cause of Action released pursuant to the Releases.

40.      The exculpation, described in Article VIII.G of the Plan (the "***Exculpation***"), is

appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.,* 48 F.4th 419

(5th Cir. 2022), because it was proposed in good faith and is appropriately limited in scope.  The

Exculpated Parties reasonably relied upon the Exculpation provisions as a material inducement to

engage in postpetition work for the Debtors that culminated in the Plan.  The record in the chapter

11 cases supports that the Exculpation is appropriately tailored to protect the Exculpated Parties

from unnecessary litigation and contains appropriate carve-outs for actions determined by a Final

Order to have constituted actual fraud, willful misconduct, or gross negligence.  For the avoidance

of doubt, nothing in this Confirmation Order or Article VIII.G of the Plan shall exculpate any

4854-6211-3726

Exculpated Party from any Causes of Action specifically enumerated in the List of Retained Causes of Action.

41.    The injunction provision set forth in Article VIII.H of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Releases, and the Exculpation and, by extension, the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.  Subject in all respects to Article XI of the Plan, no Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the chapter 11 cases, the CCAA Recognition Proceedings, the Debtors (including the governance, management, ownership, and operation thereof), the Wind Down Estate, the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Sale Process, the Purchase Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Plan, the Disclosure Statement, the chapter 11 cases, the CCAA Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, or any Claim or Cause of Action subject to Article VIII.E, VIII.F, VIII.B, or VIII.G of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim or Cause of Action of any kind, including negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party or Exculpated Party and (b) specifically authorizing such entity or person to bring such Claim or Cause of Action against any such Released

22

Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

42.     Article IV.A.20 of the Plan appropriately provides that in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Wind Down Estate will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, other than Causes of Action that are GUC Trust Assets, whether arising before or after the Petition Date, and any other actions specifically enumerated in the List of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

43.     The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against the property of the Estates described in Article VIII.D of the Plan (the "*Lien Release*") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi)     Distribution of Sale Proceeds:  Section 1123(b)(4)

44.     In accordance with section 1123(b)(4) of the Bankruptcy Code, Article IV.A of the Plan provides for (i) the sale of substantially all of the Debtors' Assets under the Sale Transaction and the transfer of Wind Down Estate Assets, including any cash proceeds of the Sale Transaction,

23

and all GUC Trust Assets (solely until the GUC Trust Asset Transfer Occurs) not distributed pursuant to the Plan on the Effective Date, to the Wind Down Estate on the Effective Date and (ii) the creation of the Wind Down Estate to effectuate the liquidation of all assets contributed to the Wind Down Estate and the distribution of proceeds to creditors in accordance with the terms of the Plan. Wind Down Estate Assets are (i) any Assets of the Debtors' Estates that are not GUC Trust Assets and not sold pursuant to the Sale Transaction, including, but not limited to, the Excluded Assets, Interests in the Debtors' non-Debtor affiliates, and any Cause of Action specifically enumerated in the List of Retained Causes of Action which are not GUC Trust Assets and (ii) Cash in the amount set forth in the Post-Sale Reserve; *provided* that proceeds of any Wind Down Estate Assets, including without limitation, Excluded Assets and such Retained Causes of Action shall become Distributable Value. Article IV.C of the Plan provides for the creation of a GUC Trust, which shall be funded with GUC Trust Assets, which GUC Trust Assets may be funded with cash proceeds of the Sale.

(xii)     Modification of Rights: Section 1123(b)(5).

45.     The Plan modifies the rights of Holders of Claims or Interests, as applicable, in Class 3 (Prepetition Secured Party Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), Class 6 (Intercompany Interests), and Class 7 (KidKraft Intermediate Holdings, LLC Interests), as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xiii)     Additional Plan Provisions: Section 1123(b)(6).

46.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims and Interests, (b) resolution of Disputed Claims, (c) allowance of certain Claims, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the

Bankruptcy Code.  The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(xiv)   Cure of Defaults: Section 1123(d).

47.    The Debtors have cured, or provided adequate assurance that the Debtors will cure, defaults (if any) under or relating to each of the Executory Contracts that are being assumed and assigned to the Purchaser pursuant to the Sale Approval Order and the Plan.  In addition, the Debtors' assigns to such Executory Contracts have provided adequate assurance of future performance under such Executory Contracts being assumed and assigned.

**O.    Debtor Compliance with the Bankruptcy Code: Section 1129(a)(2).**

48.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.   is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b.   has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c.   complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., any applicable non-bankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Prepetition Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**P.    Plan Proposed in Good Faith: Section 1129(a)(3).**

49.    The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In so determining, the Bankruptcy Court has considered the facts and record of these chapter 11 cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at or prior to the

25

Combined Hearing, and examined the totality of the circumstances surrounding the filing of these chapter 11 cases, the Plan, and the process leading to Confirmation. The Debtors' chapter 11 cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to consummate the Sale Transaction and to distribute the proceeds from the sale of substantially all of the Debtors' Assets. The Plan (including all documents necessary to effectuate the Plan) and the Plan Supplement were negotiated in good faith and at arm's-length among the Debtors and their key stakeholders, including the Prepetition Secured Parties, the DIP Secured Parties, the Purchaser, MidOcean, and the Committee. Additionally, compromises and settlements embodied in the Plan, including the Global Settlement, were negotiated in good faith and at arm's-length and reflect the best possible compromises and settlements that could be reached given the facts and circumstances surrounding the Debtors and these chapter 11 cases. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, and necessary for the Debtors' successful implementation of the Plan.

**Q.    Payment for Services or Costs and Expenses: Section 1129(a)(4).**

50.    The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable. All such costs and expenses of the Debtors' Professionals shall be paid in accordance with the Plan, and all other estimated costs and expenses of the Debtors' Professionals shall be escrowed in the Professional Fee Escrow Account no later than the Effective Date.

26

**R.    Directors, Officers, and Insiders: Section 1129(a)(5).**

51.    The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  To the extent known, the Plan Supplement discloses, or will disclose prior to the Effective Date, the identity and affiliations of the individuals or entities proposed to serve as the Wind Down Administrator and the GUC Trustee.  The proposed Wind Down Administrator and GUC Trustee are qualified, and the appointment to such positions are consistent with the interests of the Holders of Claims and Interests and with public policy.

**S.    No Rate Changes: Section 1129(a)(6).**

52.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to these chapter 11 cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**T.    Best Interest of Creditors: Section 1129(a)(7).**

53.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Amended Plan Supplement as **Exhibit D** and described in the Moore Confirmation Declaration and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if such Debtors were hypothetically liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

27

U.      **Acceptance by Certain Classes: Section 1129(a)(8).**

54.      The Unimpaired Classes are Unimpaired by the Plan and, accordingly, Holders of

Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section

1126(f) of the Bankruptcy Code.  The Voting Class is Impaired and has voted to accept the Plan,

as established by the Voting Report.

55.      The Deemed Rejecting Classes are Impaired and deemed to reject the Plan,

pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject

the Plan.  Holders of Claims in the Deemed Rejecting Classes will not receive or retain any

property on account of their Claims or Interests.  Therefore, the Plan does not satisfy the

requirements of section 1129(a)(8) with respect to the Deemed Rejecting Classes.

Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) of

the Bankruptcy Code because Class 3 voted to accept the Plan, and, with respect to the Deemed

Rejecting Classes, section 1129(b) of the Bankruptcy Code is satisfied as set forth below.

V.      **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy
Code: Section 1129(a)(9).**

56.      The treatment of Allowed Administrative Expense Claims, Allowed Professional

Fee Claims, DIP Claims, Adequate Protection Claims, Priority Tax Claims, and statutory fees

imposed by 28 U.S.C. § 1930 under Article II of the Plan, and of Allowed Other Priority Claims

under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section

1129(a)(9) of the Bankruptcy Code.

W.      **Acceptance by At Least One Impaired Class: Section 1129(a)(10).**

57.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

As evidenced by the Voting Report, Class 3, which is Impaired, voted to accept the Plan in

accordance with section 1126 of the Bankruptcy Code, determined without including any

acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**X.      Feasibility: Section 1129(a)(11).**

58.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors at or prior to the Combined Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, including the Wind Down Estate, except as provided for under the Plan; and (e) establishes that the Wind Down Estate will have sufficient funds available to meet its obligations under the Plan, including funding of the Post-Sale Reserve and Wind Down Estate.

**Y.      Payment of Fees: Section 1129(a)(12).**

59.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.F of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**Z.      Continuation of Employee Benefits: Section 1129(a)(13).**

60.      The Debtors maintain no programs providing for employee retirement benefits, as defined in section 1114 of the Bankruptcy Code.   Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

**AA.   Non-Applicability of Certain Sections: 1129(a)(14), (15), and (16).**

61.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these chapter 11 cases.  The Debtors (a) are not required by a judicial or administrative

29

order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each

a moneyed, business, or commercial corporation.

**BB.    "Cram Down" Requirements: Section 1129(b).**

62.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Notwithstanding the fact that Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims),

Class 6 (Intercompany Interests), and Class 7 (KidKraft Intermediate Holdings, LLC Interests) are

deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the

Bankruptcy Code.  The evidence in support of the Plan that was proffered, admitted, or adduced

at or prior to the Combined Hearing is reasonable, persuasive, credible, and accurate, has not been

controverted by other evidence, and establishes that the Plan satisfies the requirements of section

1129(b) of the Bankruptcy Code.  *First*, all of the requirements of section 1129(a) of the

Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and

equitable with respect to such Classes.  The Plan has been proposed in good faith, is reasonable,

and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such

Classes will receive or retain any property under the Plan on account of such junior Claim or

Interest and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more

than 100% on account of its Claim.  *Third*, the Plan does not discriminate unfairly with respect to

such Classes because similarly situated Holders of Claims and Interests will receive substantially

similar treatment on account of their Claims and Interests irrespective of Class.  Accordingly, the

Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan

may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the

Plan.

**CC.     Only One Plan: Section 1129(c).**

63.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed with respect to each Debtor in each of these chapter 11 cases.

**DD.     Principal Purpose of the Plan: Section 1129(d).**

64.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**EE.     Not Small Business Cases: Section 1129(e).**

65.     These chapter 11 cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

**FF.     Good Faith Solicitation: Section 1125(e).**

66.     Based on the record before the Bankruptcy Court in these chapter 11 cases, including evidence proffered, admitted, or adduced at or prior to the Combined Hearing, the Debtors and the other Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the N.D. Tex. L.B.R., the Solicitation and Tabulation Procedures, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the

31

securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the Exculpation set forth in Article VIII.G of the Plan.

**GG.     Satisfaction of Confirmation Requirements.**

67.     Based upon the foregoing, all other pleadings, documents, exhibits, statements,

declarations, and affidavits filed in connection with confirmation of the Plan, and all testimony,

evidence, and arguments made, proffered, admitted, or adduced at or prior to the Combined

Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the

Bankruptcy Code.

**HH.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

68.     Without limiting or modifying the rights of any party set forth in Article X.A or

Article X.B of the Plan, each of the conditions precedent to the Effective Date, as set forth in

Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance

with Article IX.C of the Plan.

**II.       Implementation; Binding and Enforceable.**

69.     The terms of the Plan, including the Plan Supplement, and all exhibits and

schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to

be executed in connection with the transactions contemplated by the Plan and all amendments and

modifications of any of the foregoing made pursuant to the provisions of the Plan governing such

amendments and modifications (collectively, the "***Plan Documents***") are incorporated by

reference and constitute essential elements of the Plan and this Confirmation Order.

Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors'

Estates, and Holders of Claims and Interests, and such Plan Documents are hereby approved. The

Debtors have exercised reasonable business judgment in determining to enter into the Plan

Documents, and the Plan Documents have been negotiated in good faith, at arm's-length, are fair

and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law. The Plan and the Plan Documents, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation.

**JJ.**    **Settlements Embodied in the Plan Satisfy Bankruptcy Rule 9019.**

70.    All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration for the benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable. The foregoing includes, without limitation, the Global Settlement and the corresponding settlement of Claims, Causes of Action and controversies embodied in Article IV.C of the Plan.

**KK.**    **GUC Trust Agreement.**

71.    The Debtors have exercised sound business judgment in determining to enter into the GUC Trust Agreement and have provided adequate notice thereof. The GUC Trust Agreement

has been negotiated in good faith and at arm's length and is deemed to have been made in good

faith and for legitimate business purposes.  The terms and conditions of the GUC Trust Agreement

are fair and reasonable.

**LL.    Authority to Pursue, Settle, or Abandon Retained Causes of Action.**

72.    All Retained Causes of Action are reserved and preserved and shall not be impacted

or affected in any way by deemed consolidation of the estates.  From and after the Effective Date,

except as otherwise set forth in Article VIII of the Plan or transferred to the GUC Trust in

accordance with the Plan, prosecution and settlement of all Retained Causes of Action shall be the

sole responsibility of the Wind Down Administrator pursuant to the Plan, the Confirmation Order.

From and after the Effective Date, the Wind Down Administrator shall retain and may enforce any

claims, demands, rights, and Causes of Action that the Debtors' Estates may hold.  The Wind

Down Administrator may pursue any such retained claims, demands, rights, or Causes of Action,

as appropriate, in accordance with the best interests of the beneficiaries of the Wind Down Estate

as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code.

**MM.  Restructuring Support Agreement.**

73.    The Restructuring Support Agreement has been negotiated in good faith and at

arm's length and is deemed to have been made in good faith and for legitimate business purposes.

The terms and conditions of the Restructuring Support Agreement are fair and reasonable.  Any

surviving obligations under the Restructuring Support Agreement shall terminate on a final basis

upon the Effective Date.

**NN.    Good Faith.**

74.    The Debtors, the Prepetition Secured Parties, the DIP Secured Parties, the

Purchaser, MidOcean, the Committee, and other Released Parties, the Exculpated Parties, and their

respective  successors,  assigns,  predecessors,  control  persons,  affiliates,  directors,  officers,

34

members, managers, shareholders, partners, employees, attorneys, investment bankers, advisors and agents, as applicable, acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan and the Plan Documents; and (b) take the actions authorized and directed by this Confirmation Order.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that (a) each Released Party's in-court or out-of-court efforts to develop, negotiate, and propose the Plan were, with respect to each other Released Party and any other Person, in good faith and not by any means forbidden by law and (b) the settlements reflected in the Plan are (i) in the best interests of the Debtors and their Estates, (ii) fair, equitable, and reasonable, and (iii) approved by the Bankruptcy Court pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

**OO.    Retention of Jurisdiction.**

75.    The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, these chapter 11 cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.  The transactions contemplated as part of the reorganization in these cases should not be subject to any stay, and thus this Confirmation Order should not be subject to any stay under Bankruptcy Rule 3020(e) or any other Bankruptcy Rules such as Bankruptcy Rules 6004 and 6006, in each and every case, to the extent applicable.

**ORDER**

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    **Findings of Fact and Conclusions of Law**.  The findings of fact and conclusions of law set forth herein and on the record at the Combined Hearing are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of

35

law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. **Approval of Disclosure Statement**. The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is **APPROVED** on a final basis in all respects.

3. **Confirmation of the Plan**. The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code. The documents contained in or contemplated by the Plan, including, without limitation, the Plan Supplement and other Plan Documents, are hereby authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

4. **Objections**. All objections to Confirmation of the Plan or approval of the Disclosure Statement and other responses, comments, statements, or reservations of rights, if any, in opposition to the Plan or Disclosure Statement that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits. All objections to Confirmation of the Plan or approval of the Disclosure Statement not

36

Filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

5.      **Plan Classification Controlling.**   The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classification set forth on the Ballot tendered in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.  All rights of the Debtors, the Wind Down Estate, and the GUC Trust, as applicable, to challenge, object to, or seek to reclassify Claims or Interests are expressly reserved.

6.      **Combined Hearing Notice**.  The Combined Hearing Notice and the Combined Hearing Publication Notice complied with the terms of the Scheduling Order, were appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., and applicable non-bankruptcy law, rule, and regulation.

7.      **Solicitation**.  The solicitation of votes on the Plan complied with the Solicitation and Tabulation Procedures, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the N.D. Tex. L.B.R., the Scheduling Order, and applicable non-bankruptcy law, rule, and regulation.

8.      **Plan Modifications**.  The modifications, amendments, and supplements made to the Initial Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the proposed treatment of any Claims or Interests.  After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing of the Plan and proposed form of this Confirmation Order with the Bankruptcy Court on June 20, 2024, which contain such modifications, and the disclosure of such modifications on the record at the Combined Hearing, constitute due and sufficient notice thereof.  Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that the Holder of Claims in the Voting Class be afforded an opportunity to change its previously cast vote on the Plan.  The Holder of Claims in the Voting Class who voted to accept the Initial Plan is deemed to accept the Plan as modified.  The Plan, as modified, is, therefore, properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

9.      **Sale Approval Order.**  As more particularly set forth in the Sale Approval Order, attached hereto as **Exhibit B**, which is incorporated by reference and deemed a part of this Confirmation Order, the Debtors' entry into the Purchase Agreement, and all transactions contemplated thereby and all of the terms and conditions thereof, is hereby authorized in its entirety.  The Debtors and the Wind Down Administrator, as applicable, are authorized to undertake the transactions contemplated by the Purchase Agreement, including pursuant to sections 363, 365, and 1123(a)(5) of the Bankruptcy Code.  Pursuant to the Sale Approval Order and sections 363(f), 363(m), 365(c)(1), and 365(f)(1) of the Bankruptcy Code, the Debtors shall

have no obligation to give effect to any consent right, preferential purchase right, or other similar agreement with respect to the Debtors' assets and property.

10. **No Action Required.**  No action of the respective directors, equity holders, managers, or members of the Debtors, the Wind Down Estate, or the GUC Trust (as applicable) is required to authorize the Debtors, the Wind Down Administrator, or the GUC Trustee (as applicable) to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the GUC Trust Agreement, and the other Plan Documents.

11. **Binding Effect**.  On the date of and after entry of this Confirmation Order, in accordance with section 1141(a) of the Bankruptcy Code and subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors, Wind Down Estate, Wind Down Administrator, GUC Trust, or GUC Trustee (as applicable), and any and all Holders of Claims or Interests and such Holder's respective successors and assigns (regardless of whether or not (a) the Holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Article VIII of the Plan), waivers, discharges, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and Interests shall be fixed, adjusted, or

39

compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

12.     **Vesting of Wind Down Estate Assets in the Wind Down Estate.**  Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, all Wind Down Estate Assets (including all interests, rights, and privileges related thereto) and all GUC Trust Assets (solely until the GUC Trust Assets Transfer occurs) in each Estate and all Causes of Action that are retained under the Plan shall vest in the Wind Down Estate, to be administered by the Wind Down Administrator in accordance with the Plan, free and clear of all Claims, Liens, and encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Wind Down Estate may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action (other than those that are GUC Trust Assets) without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  To the extent that the retention by the Wind Down Estate of assets or property held immediately prior to the Effective Date in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Wind Down Estate (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Wind Down Estate with good title to such property, free and clear of all Liens, Claims, charges, or other encumbrances, except as expressly provided in the Plan, the Plan Documents, or the Confirmation Order, (c) does not and shall not constitute an avoidable transfer under the

Bankruptcy Code or under applicable non-bankruptcy law, rule, or regulation, and (d) does not and shall not subject the Wind Down Estate to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, rule, or regulation, including by laws affecting or creating successor or transferee liability.

13.    **Creation of the GUC Trust.**  Except as otherwise provided in the Plan, the Plan Documents, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan, on the next Business Day following the GUC Settlement Opt-In Election Deadline, the Wind Down Estate shall complete the GUC Trust Assets Transfer, and all GUC Trust Assets shall vest in the GUC Trust on such date, to be administered by the GUC Trustee in accordance with the Plan and the GUC Trust Agreement.  On and after the Effective Date, the GUC Trust is deemed created and effective without any further action by the Bankruptcy Court or any party.  The GUC Trust shall be established with the primary purpose of liquidating the GUC Trust Assets and making distributions to GUC Trust Beneficiaries on account of their Allowed General Unsecured Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the GUC Trust and as may be reasonably necessary to conserve and protect the GUC Trust Assets and provide for the orderly liquidation and distribution thereof.  The terms and conditions of the GUC Trust Agreement are approved.

14.    **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the

41

Debtors, the Wind Down Administrator, or the GUC Trustee (as applicable) and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders or the Wind Down Administrator or GUC Trustee (as applicable).

15. **Plan Implementation**.

(a)     Consistent with section 1142 of the Bankruptcy Code and any provisions of the business corporation law and limited liability company law of any applicable jurisdiction, and without further action by the Bankruptcy Court or the equity holders, members, managers, officers, or directors of any of the Debtors or the Wind Down Administrator or GUC Trustee (as applicable), the Debtors, the Wind Down Administrator, and the GUC Trustee (as applicable) are authorized to: (i)  take any and all actions as may be necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and any transaction contemplated thereby or hereby, and (ii) execute and deliver, adopt or amend, as he case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and any transaction contemplated thereby or hereby.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including, (i) the rejection or assumption, as appropriate, of any Executory Contracts and Unexpired Leases, (ii) the sale and/or abandonment of Assets, (iii) contribution of Wind Down Estate Assets to the Wind Down Estate, (iv) contribution of GUC Trust Assets to the GUC Trust, and (v) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan are hereby approved and shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of the

42

Bankruptcy Court, or further action by the Debtors, the Wind Down Administrator, or the GUC Trustee (as applicable).

(c)    To the extent that, under applicable non-bankruptcy law, rule, or regulation, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or the Wind Down Administrator or GUC Trustee (as applicable), this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the equity holders, members, managers, or directors of any of the Debtors or the Wind Down Administrator or GUC Trustee (as applicable).

(d)    All such transactions effectuated by the Debtors during the pendency of these chapter 11 cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

16.    **Global Settlement Approved**.  The Global Settlement, as incorporated in the Plan, constitutes a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 among the Global Settlement Parties.  The related provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and, controversies that were, or could have been asserted in connection with these chapter 11 cases.

17.    The Global Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  The GUC Settlement Opt-In Election , including the GUC Settlement Opt-In Form and the procedures set forth therein, are fair and consistent with the Global

43

Settlement.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of

the Global Settlement, including the GUC Settlement Opt-In Form and related procedures, the

settlement of all such Claims, Interests, and controversies, and the approval of all such releases

granted in connection therewith.  For the avoidance of doubt, the settlement, release, injunction,

and related provisions described in Article VIII the Plan and approved by this Confirmation Order

shall be in addition to, and not in lieu of, the settlements, releases, agreements, and compromises

granted pursuant to the Global Settlement.

18.     **Cancellation of Existing Securities and Agreements**.  On the Effective Date,

except to the extent otherwise provided herein or in the Plan, all notes, instruments, certificates,

credit agreements, indentures, and other documents evidencing Claims or Interests (including with

respect to the Prepetition Credit Agreement Documents), and any Interests that are not represented

by certificates or other instruments, shall be canceled and surrendered and the obligations of the

Debtors thereunder or in any way related thereto shall be discharged, deemed satisfied in full,

canceled, and of no force or effect against the Debtors, the Wind Down Estate, or the GUC Trust

without any further action on the part of the Debtors, the Wind Down Administrator, the GUC

Trustee, or any other Person.  Holders of or parties to such canceled instruments, Securities, and

other documentation will have no rights arising from or relating to such instruments, Securities,

and other documentation, or the cancellation thereof, except the rights provided for pursuant to the

Plan.

19.     Notwithstanding anything to the contrary in the Plan, but subject to any applicable

provisions of Articles IV and VI of the Plan, the Prepetition Credit Agreement Documents shall

continue in effect as between all Debtors and the non-Debtors party thereto until the wind down

of the Debtors and the Netherlands Wind Down is complete.  Following completion of the wind

down of the Debtors and the Netherlands Wind Down and distribution of proceeds (if any) to the

Prepetition Secured Parties, as provided in Article IV of the Plan, the Prepetition Credit Agreement

Documents shall be canceled and surrendered and the obligations of the Debtors thereunder or in

any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect against

the Debtors or the Wind Down Estate, without any further action on the part of the Debtors, the

Wind Down Estate, or any other Person.

20.    **Directors and Officers of the Debtors**.  As of the Effective Date, the term of the

current members of the boards of directors or boards of managers, as applicable, of KidKraft and

its Debtor Affiliates shall expire automatically and each person serving as a director of KidKraft

and each of its Debtor Affiliates shall be removed and shall be deemed to have resigned and cease

to serve automatically.  Consistent with the Plan, each of the Estates will vest in the Wind Down

Estate effective as of the Effective Date and, thus, no individuals will serve as directors, officers,

or voting trustees after the Effective Date for any Debtors.

21.    **Preservation of Causes of Action.**  In accordance with section 1123(b) of the

Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Wind Down

Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any

and all Causes of Action, including any Retained Cause of Action; *provided that*, the Wind Down

Estate will not retain any Causes of Action (including Avoidance Actions) that are assigned to the

Purchaser as Transferred Assets in connection with the Sale Transaction or that may be included

in the GUC Trust Assets and transferred to the GUC Trust.  For the avoidance of doubt, Avoidance

Actions purchased by the Purchaser will not be pursued by the Purchaser.  The Wind Down

Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved

notwithstanding the occurrence of the Effective Date.  Except to the extent any such claim is

45

specifically satisfied, settled, and released herein, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to include any Cause of Action on the List of Retained Causes of Action shall not be deemed an admission, denial, or waiver of any claims, demands, rights, or causes of action that the Debtor or Estate may hold against any Person.  Except to the extent any such claim is specifically satisfied, settled, and released herein, the Debtor intends to preserve those claims, demands, rights, or causes of action designated as Retained Causes of Action.

22.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as an indication that the Debtors or the Wind Down Estate, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Wind Down Estate, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity or Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, including pursuant to Article VIII of the Plan, the Debtors or the Wind Down Estate, as applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

23.     **Substitution in Pending Legal Actions.**  On the Effective Date, the Wind Down Estate or the Wind Down Administrator, as applicable, shall be deemed to be the same litigation party as the applicable Debtor(s) and are authorized to be substituted as the party to any litigation in which the Debtors are a party, including (but not limited to) (i) pending contested matters or adversary proceedings in the Bankruptcy Court or the CCAA Court, (ii) any appeals of orders of

46

the Bankruptcy Court and (iii) any state court or federal or state administrative proceedings or equivalent in Canada or any other applicable jurisdiction pending as of the Petition Date.  The Wind Down Administrator and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

24.    **Wind Down Estate**.  On and after the Effective Date, the Wind Down Estate shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle, and protect, as applicable, the Wind Down Estate Assets (directly or through its professionals or a Disbursing Agent), in accordance with the Plan; (c) review, reconcile, settle, or object to all such Claims (other than General Unsecured Claims) that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (d) calculate and make distributions of the proceeds of the Wind Down Estate Assets to Holders of Allowed Claims (other than Holders of Allowed General Unsecured Claims) in accordance with the terms of the Plan and otherwise implementing the Plan; (e) subject to Article VIII of the Plan, pursue Retained Causes of Actions ; (f) retain, compensate, and employ professionals to represent the Wind Down Estate; (g) file appropriate tax returns and other reports on behalf of the Wind Down Estate and pay taxes or other obligations owed by the Wind Down Estate; (h) file, to the extent reasonably feasible, appropriate tax returns on behalf of the Debtor and pay taxes or other obligations arising in connection therewith; (i) exercise such other powers as may be vested in the Wind Down Estate under the Plan, or as deemed by the Wind Down Administrator to be necessary and proper to implement the provisions of the Plan; (j) take such actions as are necessary or appropriate to close the Debtors' chapter 11 cases; (k) dissolve the entities comprising the Wind Down Estate; and (l) undertake the Wind Down Transactions.

25.     **Wind Down Administrator**.    SierraConstellation Partners, LLC is hereby appointed to serve as the Wind Down Administrator for the Wind Down Estate in accordance with the terms of this Confirmation Order, and the Plan.   The Wind Down Administrator shall be authorized to take all actions necessary to establish, maintain, and administer the Wind Down Estate pursuant to the terms of the Plan, and this Confirmation Order.

26.     **GUC Trust Agreement**.   The GUC Trust Agreement, substantially in the form filed with the Plan Supplement, is hereby approved in its entirety, and the Debtors are authorized to enter into the GUC Trust Agreement.

27.     **GUC Trust**.   On the Effective Date, the GUC Trust will be established with the purpose and authority set forth in the Plan and the GUC Trust Agreement.

28.     **GUC Trustee**.   Jiangang Ou is hereby appointed to serve as the GUC Trustee for the GUC Trust in accordance with the terms of this Confirmation Order, the Plan, and the GUC Trust Agreement.   The GUC Trustee shall be authorized to take all actions necessary to establish, maintain, and administer the GUC Trust and any sub-trust of the GUC Trust pursuant to the terms of the GUC Trust Agreement, the Plan, and this Confirmation Order.

29.     **Funding and Transfer of Assets Into the GUC Trust**.   Except as otherwise provided in the Plan or the Confirmation Order, on the next Business Day following the GUC Settlement Opt-In Election Deadline, the Wind Down Estate shall complete the GUC Trust Assets Transfer, and all such assets shall vest in the GUC Trust on such date, to be administered by the GUC Trustee in accordance with the Plan and the GUC Trust Agreement.   Except as set forth in the Plan, the GUC Trust Assets shall be transferred to the GUC Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code.   The act of transferring the GUC Trust Assets, as authorized by the Plan, shall not be

48

construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and

such rights may be asserted by the GUC Trust as if the asset or right was still held by the Debtors.

30.     **Settlement of Claims by the GUC Trustee**.  Except as otherwise provided in the

Plan or the GUC Trust Agreement, on and after the Effective Date, the GUC Trustee may

compromise or settle any General Unsecured Claims without supervision or approval by the

Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and

may pay the charges that it incurs on or after the Effective Date for GUC Trust Expenses,

professionals' fees, disbursements, expenses, or related support services (including fees relating

to the preparation of Professional fee applications) without application to the Bankruptcy Court.

31.     **Professional Compensation**.    The provisions governing compensation of

Professionals set forth in Article II.B of the Plan are approved in their entirety.  All final requests

for Professional Fee Claims through and including the Effective Date shall be Filed no later than

45 days after the Effective Date.  Any objections to Professional Fee Claims shall be served and

filed no later than 24 days after the filing of such final applications for payment of Professional

Fee Claims.

32.     **Payment of Professional Fee Claims**.  On the Effective Date, the Debtors shall

establish and fund the Professional Fee Escrow Account with Cash equal to the "Professional Fee

Reserve Amount" described in Article II.B.3 herein. The Professional Fee Escrow Account shall

be maintained in trust solely for the Professionals and the other professionals with Professional

Fee Claims.  The Debtors shall utilize the Funded Reserve Account (as defined in the DIP

Approval Order) to fund the Professional Fee Escrow Account, *provided that* the Funded Reserve

Account is not a limitation on the amount funded to the Professional Fee Escrow Account.  The

Professional Fee Escrow Account and funds therein shall not be considered property of the Estates

4854-6211-3726

of the Debtors the Wind Down Estate, or the GUC Trust.  The amount of Allowed Professional

Fee Claims shall be paid in Cash to the Professionals by the Disbursing Agent or the Wind Down

Administrator from the Professional Fee Escrow Account as soon as reasonably practicable after

such Professional Fee Claims are Allowed, and the amount of all other Professional Fee Claims

shall be paid in Cash to the applicable professionals by the Disbursing Agent or the Wind Down

Administrator from the Professional Fee Escrow Account  on the Effective Date.

33.     After all Professional Fee Claims have been paid in full, any remaining amount in

the Professional Fee Escrow Account shall promptly be deemed Distributable Value and

distributed to the holders of Prepetition Secured Party Claims without any further action or order

of the Bankruptcy Court.

34.     **Establishment of Appropriate Reserves**.  In accordance with the terms of the

Confirmation Order and the Plan, the Debtors shall establish the Post-Sale Reserve in the amount

of $650,000 to fund the reasonably anticipated costs necessary for the wind down of the Wind

Down Estate, including an estimated amount of reasonable fees and expenses that may be incurred

by professionals for services rendered after the Effective Date and statutory fees, which cash

reserve shall be funded into a segregated account on the Effective Date.

35.     **Subordination.**  The allowance, classification, and treatment of all Claims and

Interests and the respective distributions and treatments under the Plan take into account and

conform to the relative priority and rights of the Claims and Interests in each Class in connection

with any contractual, legal, and equitable subordination rights relating thereto, whether arising

under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or

otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Wind Down

Administrator, or the GUC Trustee (as applicable) reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

36.      **Release of Liens.**  Except for the Wind Down Claims, and as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Article III, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate (including the Wind Down Estate and the GUC Trust) shall be deemed fully released and discharged.  After the wind down of the Debtors and the Netherlands Wind Down is complete and after the proceeds of the Netherlands Asset Sale and Netherlands Liquidation, if any, are indefeasibly distributed in Cash to the Prepetition Secured Parties as provided in Article IV of the Plan, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate on account of the Wind Down Claims shall be deemed fully released and discharged.  Notwithstanding anything contained herein to the contrary, until completion of the wind down of the Debtors and the Netherlands Wind Down and distribution of the proceeds after the Netherlands Wind Down is complete, if any, to the Prepetition Secured Parties, as provided in Article IV of the Plan, the Plan shall not operate as a waiver of any right, power or remedy of the Prepetition Agent or Prepetition Lender, or constitute a waiver of any provision of the Prepetition Credit Agreement Documents in respect of any non-Debtor affiliate of the Debtors party thereto and the obligations of the non-Debtor affiliates thereunder shall remain in full force and effect.

37.      **Indemnification**.  Pursuant to Article V.G of the Plan, the Indemnification Obligations shall not be discharged or impaired by the Plan or entry of this Confirmation Order,

and the Indemnification Obligations are hereby deemed to be, and shall be treated as, Executory Contracts assumed by the Debtors and assigned to the Wind Down Estate under the Plan and shall continue as obligations of the Wind Down Estate.

38.    **Insurance.**   To the extent that any of the Debtors' insurance policies constitute Executory Contracts, such insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan and shall be assumed by the Debtors and assigned to the Wind Down Estate on the Effective Date.  All other insurance policies (to the extent not deemed Executory Contracts) shall vest in the Wind Down Estate on the Effective Date.

39.    **Rejection of Contracts and Leases.**   On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on a schedule of assumed contracts by the Purchaser; (ii) is designated as a Transferred Contract pursuant to the Purchase Agreement on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (iii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iv) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (v) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (vi) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

40.    **Distributions**.  All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan, and such methods of distribution are approved.

41.    **Compromise and Settlement of Claims, Interests, and Controversies**.  Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, settlements, releases, and other benefits provided pursuant to the Plan, which distributions, settlements, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.   The entry of this Confirmation Order constitutes approval of the compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Wind Down Estate or the Wind Down Administrator (as applicable) and the GUC Trust or the GUC Trustee (as applicable, and solely with respect to General Unsecured Claims and GUC Trust Assets) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

42.    In accordance with Bankruptcy Rule 9019, the Plan constitutes the good-faith compromise and settlement among the Global Settlement Parties regarding the matters set forth in

53

the Global Settlement Term Sheet, and reflects and implements such compromise and settlement, including by the establishment and funding of the GUC Trust.  Such compromise and settlement is made in exchange for consideration and is in the best interests of the Global Settlement Parties and the Holders of Allowed General Unsecured Claims, is within the reasonable range of possible litigation outcomes, is fair, equitable, and reasonable, and is an essential element of the resolution of these chapter 11 cases.

      43.    **Release, Discharge, Exculpation, and Injunction Provisions**.  All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to those contained in Articles VIII.B, VIII.C, VIII.D, VIII.E, VIII.F, VIII.G and VIII.H of the Plan, are approved and shall be effective and binding on all Persons and Entities to the extent provided therein.  For the avoidance of doubt, the right of any party to object to any Estate Professional's fee application, subject to applicable objection deadlines, is preserved, notwithstanding the approval of the Releases herein.

      44.    **Tax Withholding**.  Pursuant to the Plan, including Article VI.D thereof, to the extent applicable, the Debtors, the Wind Down Administrator, the GUC Trustee, the Disbursing Agent, and any applicable withholding agent shall comply with all applicable tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions until receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are

54

reasonable and appropriate. For these purposes, all distributions made on behalf of the Debtors pursuant to the Plan shall if applicable be first in satisfaction of the portion of Claims that are not subject to any withholding tax obligation. All Persons holding Claims against any Debtor shall be required to provide any additional information reasonably necessary for the Debtors, the Wind Down Administrator, the GUC Trustee, the Disbursing Agent, and any applicable withholding agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors, the Administrator on behalf of the Wind Down Estate, the GUC Trustee on behalf of the GUC Trust, and the Disbursing Agent (as applicable) reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

45.    **Payment of Statutory Fees**. Statutory Fees due and payable prior to, and that remain unpaid as of, the Effective Date shall be paid by the applicable Debtors on the Effective Date. No statutory fees shall be paid on the initial funding of the Post-Sale Reserve or the GUC Trust. Fees due and payable pursuant to 28 U.S.C. § 1930 shall only be paid on subsequent disbursement of Cash by the Wind Down Estate or the GUC Trust, as applicable. Any fees due and payable pursuant to 28 U.S.C. § 1930 that may be owed by the Debtors, the Wind Down

Estate, or the GUC Trust, as applicable, after the Confirmation Date related to the reduction to Cash of non-Cash assets shall be paid by the Debtors, the Wind Down Estate, or the GUC Trust, as applicable, until the case is closed, dismissed, or converted.  If no disbursements are made by the Debtors, the Wind Down Estate, or the GUC Trust for any quarter post-confirmation, only the minimum statutory fee will be owed in accordance with 28 U.S.C. § 1930(a)(6).  The Wind Down Estate and the GUC Trust shall file post-confirmation operating reports with respect to their respective operations and disbursements until these Chapter 11 Cases are closed, dismissed, or converted to cases under chapter 7 of the Bankruptcy Code.

46.    **Documents, Mortgages and Instruments**.  Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

47.    **Return of Deposits**.  All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during these chapter 11 cases (collectively, the "*Deposits*"), whether pursuant to the *Order (I) Approving the Debtors' Proposed Adequate Assurance Payments for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 87] (the "*Utilities Order*") or otherwise, including, but not limited to, gas, electric, telephone, data, cable, trash, freight, and waste management services, are directed to return such Deposits to the Wind Down Estate within 15 days following the Effective Date.  Such amounts returned shall constitute Distributable Value.  Additionally, the Wind Down Estate or the Wind Down Administrator, as applicable, are hereby authorized to close

4854-6211-3726

the Adequate Assurance Account (as defined in the Utilities Order) upon entry of the Confirmation Order.

48.     **Distributable Value**.  Any Distributable Value that is available for distribution after the Effective Date shall be promptly distributed by the Debtors or the Wind Down Estate (as applicable) to Holders of Allowed Prepetition Secured Party Claims.   After the Effective Date, in lieu of conducting sales of liquidating its assets, with the consent of the Prepetition Secured Parties, the Wind Down Administrator may transfer any assets of the Wind Down Estate to the Prepetition Secured Parties free and clear of all Liens, Claims, and encumbrances.  All payments, distributions, and transfers made to or for the benefit of any of the DIP Secured Parties or Prepetition Secured Parties pursuant to the Plan or this Confirmation Order shall be indefeasible and shall not be subject to disgorgement, counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance for any reason.

49.     **Filing and Recording**.  This Confirmation Order is binding upon and shall govern the acts of all Persons or Entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and Entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

50.      **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan, the Confirmation Order, the Confirmation Recognition Order, the Sale Approval Order, or any other Final Order entered by the Bankruptcy Court, all injunctions or stays arising under or entered during the chapter 11 cases under section 362 of the Bankruptcy Code or otherwise, or ordered by the CCAA Court in the CCAA Recognition Proceedings, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

51.      **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the period from the entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect.

52.      **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan and the Restructuring at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article IX.C of the Plan, of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

53.      **Conditions Precedent to the Effective Date**.  The Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan.

54.      **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent (and subject to other consents and

consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

55. **Post-Confirmation Modifications**. Subject to the terms of the Plan and without need for further order or authorization of the Bankruptcy Court, the Debtors, the Wind Down Administrator, or the GUC Trustee (solely with respect to the GUC Trust Agreement) as applicable, are authorized and empowered to make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, the Wind Down Administrator, and the GUC Trustee (as applicable) reserve their respective rights prior to the Effective Date to withdraw, alter, amend, or modify materially the Plan with respect to such Debtor, Wind Down Estate, or GUC Trust, as applicable, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

56. **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or

vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

57.      **Applicable Non-Bankruptcy Law.**  The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation.

58.      **Governmental Approvals Not Required**.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to therein, or contemplated by, the Plan.

59.      **Police and Regulatory**.  Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any liability to a Governmental Unit under police and regulatory law that any Entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or the Wind Down Estate.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.

60.      **Strouse Litigation.**  Consistent with her decision to opt-out of the Plan's Releases, nothing in the Plan or this Order shall prejudice, release, or enjoin the ability of Phoebe Strouse

4854-6211-3726

("**Strouse**") to litigate to final judgment or settlement, including any appeal, her claims pending against Solowave Design, Inc., Solowave Design Corp., and various non-debtor defendants, in Case No. 37-2022-00023823-CU-PL-CTL in the California Superior Court for San Diego County, styled as *Phoebe Strouse, a minor by and through her guardian ad litem, Ginger Strouse vs. Solowave Design, Inc. et al* (the "**Strouse State Court Case**"), for purposes of collection against non-debtor defendants and/or insurance policies, if any, providing coverage or being otherwise liable for such claims. Solowave Design, Inc. and Solowave Design Corp. reserve all rights and defenses with respect to the Strouse State Court Case as available under applicable law. The Plan Injunction shall remain in place for all other purposes, including, without limitation, to prevent the enforcement of any final judgment or settlement against Solowave Design, Inc. and Solowave Design Corp. other than from insurance coverage as available. Any recovery by Strouse with respect to Solowave Design, Inc. and Solowave Design Corp. other than from insurance coverage shall be solely pursuant to the terms of the Plan, and the foregoing paragraphs shall not be deemed to modify or improve the character, validity, or priority of any of Strouse's claims.

61.     **Waiver of Filings**. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or the Office of the United States Trustee for the Northern District of Texas (the "**U.S. Trustee**") (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

62.     **Notice of Entry of the Confirmation Order and Effective Date**. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of the Sale Approval Order, substantially in the

form annexed hereto as **Exhibit B**, and this Confirmation Order and notice of the Effective Date,

substantially in the form annexed hereto as **Exhibit C**, to all parties who hold a Claim or Interest

in these chapter 11 cases, the U.S. Trustee, and other parties in interest.  Such notice is hereby

approved in all respects and shall be deemed good and sufficient notice of confirmation of the

Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

63.    **Waiver of Stay.**  The Confirmation Order shall be effective and enforceable

immediately upon entry and its provisions shall be self-executing.  As set forth in the Sale

Approval Order, time is of the essence in Closing the Sale.  Accordingly, sufficient cause has been

shown to waive the stays contemplated by Bankruptcy Rule 3020(e) or any other Bankruptcy Rule

such as Bankruptcy Rules 6004 and 6006, in each and every case, to the extent applicable.  Any

party objecting to this Confirmation Order must exercise due diligence in filing an appeal, pursuing

a stay, and obtaining a stay prior to the Closing or risk its appeal being foreclosed as moot.

64.    **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to

be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

65.    **Termination of Restructuring Support Agreement**.  On the Effective Date, the

Restructuring Support Agreement will terminate automatically in accordance with Section 12

thereof.

66.    **References to and Omissions of Particular Plan Provisions**.  References to

articles, sections, and provisions of the Plan are inserted for convenience of reference only and are

not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.

The failure to specifically describe, include, or refer to any particular article, section, or provision

of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article,

section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its

4854-6211-3726

entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all of the foregoing are incorporated herein by this reference.

67. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

68. **Effect of Conflict**. This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

69. **Final Order.** This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

70. **Retention of Jurisdiction**. Except as set forth in the Plan or this Confirmation Order, the Bankruptcy Court may properly, and, upon the Effective Date, shall retain jurisdiction over all matters arising out of, and related to, these chapter 11 cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

**# # # END OF ORDER # # #**

**Order submitted by:**

**VINSON & ELKINS LLP**

William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
bwallander@velaw.com
mstruble@velaw.com
kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com;
lkanzer@velaw.com

**ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION**

4854-6211-3726

**<u>Exhibit A</u>**

**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-80045-mvl11 |
| | § | |
| **KIDKRAFT, INC.**, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## DEBTORS' AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN

William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
**VINSON & ELKINS LLP**

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

**Dated: June 20, 2024**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are: KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc (4302). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 4630 Olin Road, Dallas, TX 75244.

# TABLE OF CONTENTS

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms* ........................................................................................................ 1
B.    *Rules of Interpretation* ......................................................................................... 19
C.    *Computation of Time* ............................................................................................ 19
D.    *Governing Law* ...................................................................................................... 20
E.    *Reference to Monetary Figures* ........................................................................... 20
F.    *Reference to the Debtors or the Wind Down Estate* ........................................... 20
G.    *Controlling Document* .......................................................................................... 20

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

A.    *Administrative Expense Claims* ........................................................................... 20
B.    *Professional Compensation* ................................................................................. 21
C.    *DIP Claims* ........................................................................................................... 23
D.    *Adequate Protection Claims* ................................................................................ 23
E.    *Priority Tax Claims* .............................................................................................. 23
F.    *Statutory Fees* ...................................................................................................... 23
G.    *Restructuring Expenses* ....................................................................................... 24

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims* ....................................................................................... 24
B.    *Treatment of Claims and Interests* ...................................................................... 25
C.    *Special Provision Governing Unimpaired or Reinstated Claims* ....................... 27
D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
      Code* ...................................................................................................................... 27
E.    *Elimination of Vacant Classes* ............................................................................ 28
F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes* .......................... 28
G.    *Controversy Concerning Impairment* .................................................................. 28
H.    *Subordinated Claims* ............................................................................................ 28

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Means for Implementation* .................................................................................... 28
B.    *Restructuring Support Agreement* ....................................................................... 38
C.    *Global Settlement* ................................................................................................. 38

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases* ........ 43
B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases* .......... 43

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases* ................... 44
D.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements* ............ 46
E.    *Reservation of Rights* ................................................................................................ 46
F.    *Nonoccurrence of Effective Date* ............................................................................... 46
G.    *Indemnification Obligations* ...................................................................................... 46

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed* ................................................ 47
B.    *Disbursing Agent.* ....................................................................................................... 47
C.    *Delivery of Distributions and Undeliverable or Unclaimed Property* ........................... 48
D.    *Compliance with Tax Requirements* ............................................................................ 49
E.    *Foreign Currency Exchange Rate* ............................................................................... 50
F.    *Surrender of Cancelled Instruments or Securities* ...................................................... 50
G.    *Allocations* ................................................................................................................ 50
H.    *No Postpetition Interest on Claims* ............................................................................. 50
I.    *Setoffs and Recoupment* ............................................................................................. 50
J.    *Claims Paid or Payable by Third Parties* .................................................................... 51

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Allowance of Claims* ................................................................................................... 52
B.    *Claims and Interests Administration Responsibilities* ................................................. 52
C.    *Adjustment to Claims or Interests Without Objection* .................................................. 52
D.    *Time to File Objections to Claims* ............................................................................... 53
E.    *Disallowance of Claims* .............................................................................................. 53
F.    *Amendments to Claims* ............................................................................................... 53
G.    *No Distributions Pending Allowance* .......................................................................... 53
H.    *Single Satisfaction of Claims* ..................................................................................... 54

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies* ........................... 54
B.    *Discharge of Claims and Termination of Interests* ...................................................... 55
C.    *Term of Injunctions or Stays* ...................................................................................... 55
D.    *Release of Liens* ......................................................................................................... 55
E.    *Releases by the Debtors* .............................................................................................. 56
F.    *Releases by Releasing Parties* .................................................................................... 57
G.    *Exculpation* ............................................................................................................... 58
H.    *Injunction* .................................................................................................................. 59
I.    *Protection Against Discriminatory Treatment* ............................................................. 60
J.    *Recoupment* ............................................................................................................... 60
K.    *Subordination Rights* ................................................................................................. 61
L.    *Reimbursement or Contribution* ................................................................................. 61
M.    *Document Retention.* ................................................................................................... 61

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation* ............................................................... 61
B.    *Conditions Precedent to the Effective Date* ...................................................... 62
C.    *Waiver of Conditions* ........................................................................................ 63

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments* .......................................................................... 63
B.    *Effect of Confirmation on Modifications* .......................................................... 64
C.    *Revocation or Withdrawal of the Plan* ............................................................. 64

## ARTICLE XI.
## RETENTION OF JURISDICTION

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect* ................................................................................. 67
B.    *Additional Documents* ...................................................................................... 67
C.    *Reservation of Rights* ....................................................................................... 67
D.    *Successors and Assigns* .................................................................................... 67
E.    *Service of Documents* ....................................................................................... 68
F.    *Term of Injunctions or Stays* ........................................................................... 69
G.    *Entire Agreement* .............................................................................................. 70
H.    *Exhibits* ............................................................................................................. 70
I.    *Nonseverability of Plan Provisions* .................................................................. 70
J.    *Votes Solicited in Good Faith* .......................................................................... 70
K.    *Request for Expedited Determination of Taxes* ............................................... 71
L.    *Closing of Chapter 11 Cases* ........................................................................... 71
M.    *No Stay of Confirmation Order* ........................................................................ 71
N.    *Waiver or Estoppel* ........................................................................................... 71
O.    *Dissolution of Statutory Committees* ............................................................... 71

## INTRODUCTION

KidKraft and its affiliated debtors, as Debtors and debtors in possession in the above-captioned chapter 11 cases, jointly propose this prepackaged chapter 11 plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtor.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A of the Plan or the Bankruptcy Code or Bankruptcy Rules.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, Assets, results of operations, and historical financial information, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

> **ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "***363 Sale***" means the sale of the Transferred Assets pursuant to section 363 of the Bankruptcy Code in accordance with the terms of the Purchase Agreement and Sale Approval Order.

2.    "***503(b)(9) Claim***" means a Claim pursuant to section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtors' business.

3.    "***Adequate Protection Claim***" means any Claim for adequate protection within the meaning of section 361 of the Bankruptcy Code arising under applicable law or pursuant to Final Order of the Bankruptcy Court.

4.    "***Administrative Expense Claim***" means any Claim (other than any Adequate Protection Claims or DIP Claims) for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' Estates and operating the Debtors' businesses, (ii) any Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code, and (iii) any Unpaid Employee Severance Obligations.

1

5.      "*Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount*" means the amount set forth in the Approved Budget (or as otherwise agreed upon by the Debtors, the DIP Secured Parties, and the Purchaser), and funded by cash on hand of the Debtors and the proceeds of the DIP Facility prior to the Confirmation Date, sufficient to satisfy the agreed upon estimated amount of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims; *provided that* in no event will the DIP Secured Parties' obligations to provide such funding exceed the Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount.

6.      "*Administrative Expense Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Expense Claims (other than 503(b)(9) Claims), which: (a) with respect to Administrative Expense Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims of Professionals, shall be 45 days after the Effective Date.

7.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code when used in reference to a Debtor, and when used in reference to an Entity other than a Debtor, means any other Entity that controls, is controlled by, or is under common control with such Entity, other than a Debtor.

8.      "*Allowed*" means with reference to any Claim or Interest, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in the Plan and such Claim or Interest is not Disputed or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective Holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (iii) any Claim or Interest expressly allowed under the Plan; *provided*, *however*, that notwithstanding the foregoing, the Wind Down Estate (to the extent applicable) will retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

9.      "*Approved Budget*" means the weekly budget, as defined in paragraph G(iv) of the DIP Approval Order.

10.     "*Assets*" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

11.     "*Assigned Avoidance Actions*" means all Avoidance Actions other than those against (i) any parties identified on Schedule 1 to the Global Settlement Term Sheet, unless any such party makes a GUC Settlement Opt-In Election, (ii) any other "Designated Parties" (as that term is defined in the Purchase Agreement) under Section 2.1(k)(ii) through (iv) of the Purchase Agreement, and (iii) any Released Parties.

12.     "*Assumed Liabilities*" shall have the meaning set forth in Section 2.3 of the Purchase Agreement.

13.     "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under

2

chapter 5 of the Bankruptcy Code, including sections 502, 510, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer and preference laws.

14.     "***Ballots***" means the ballots distributed to certain Holders of Impaired Claims entitled to vote on the Plan upon which such Holders shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

15.     "***Bankruptcy Code***" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

16.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended from time to time.

17.     "***Bankruptcy Court***" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

18.     "***Bar Date Order***" means the order entered by the Bankruptcy Court setting the Claims Bar Date and the Governmental Bar Date.

19.     "***Bidder Protections***" means, collectively, the Break-Up Fee and Expense Reimbursement.

20.     "***Break-Up Fee***" shall have the meaning set forth in Section 9.3(a) of the Purchase Agreement, as may be modified by a subsequent order of the Bankruptcy Court.

21.     "***Business Day***" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

22.     "***Canadian Debtors***" means, collectively, the following Debtors: Solowave Design Holdings Limited, Solowave Design LP, Solowave Design Inc., and Solowave International Inc. Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Canadian Debtors shall mean the Wind Down Estate to the extent context requires.

23.     "***Canadian Property***" *means the assets, undertakings and property* of the Canadian Debtors and any other assets, undertakings and property of the Debtors that may be located in Canada.

24.     "***Canadian Transferred Assets***" means the Transferred Assets of the Canadian Debtors and any other Transferred Assets of the Debtors that may be located in Canada.

25.     "***Cash***" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

26.     "***Cause of Action***" means any action, claim, cause of action, controversy, third-party claim, dispute, demand, right, action, Lien, indemnity, contribution, guaranty, suit,

3

obligation, liability, loss, debt, fee or expense, damage, interest, judgment, account, defense, remedy, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or Unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract, in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including Avoidance Actions); (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

27.    "*CCAA Court*" means the Ontario Superior Court of Justice (Commercial List).

28.    "*CCAA Recognition Proceedings*" means the recognition proceedings commenced pursuant to Part IV of the *Companies' Creditors Arrangement Act* (Canada) in respect of the Chapter 11 Cases of KidKraft and the Canadian Debtors.

29.    "*Chapter 11 Cases*" means each individual case or the jointly administered cases pending under chapter 11 of the Bankruptcy Code for each individual Debtor or the Debtors, as applicable, in the Bankruptcy Court.

30.    "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor.

31.    "*Claims Bar Date*" means such time and date established pursuant to the Bar Date Order by which Proofs of Claim (other than for Administrative Expense Claims and Claims held by Governmental Units), including 503(b)(9) Claims, must be Filed.

32.    "*Claims Objection Deadline*" means the deadline for objecting to a Claim against a Debtor, which shall be on the date that is the later of (a) 120 days after the Effective Date, subject to extension by order of the Bankruptcy Court, (b) 90 days after the Filing of a Proof of Claim, or (c) such other period of limitation as may be fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to a Claim.

33.    "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Noticing and Claims Agent.

34.    "*Class*" means a category of Claims against or Interests in the Debtors as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

35.    "*Committee*" means the official committee of unsecured creditors of the Debtors appointed by the U.S. Trustee in the Chapter 11 Cases on May 23, 2024, pursuant to section 1102 of the Bankruptcy Code.

36.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

4

37. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

38. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

39. "*Confirmation Order*" means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which Order may include the Sale Approval Order.

40. "*Confirmation Recognition Order*" means an Order of the CCAA Court in the CCAA Recognition Proceedings recognizing and giving effect in Canada to the Confirmation Order.

41. "*Consummation*" means the occurrence of the Effective Date.

42. "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed, or assumed and assigned by such Debtor pursuant to section 365 of the Bankruptcy Code.

43. "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

44. "*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") maintained by any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

45. "*Debtors*" means, collectively, the following: KidKraft, Inc.; KidKraft Europe, LLC; KidKraft Intermediate Holdings, LLC; KidKraft International Holdings, Inc.; KidKraft International IP Holdings, LLC; KidKraft Partners, LLC; Solowave Design Corp.; Solowave Design Holdings Limited; Solowave Design Inc.; Solowave Design LP; and Solowave International Inc. Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors shall mean the Wind Down Estate to the extent context requires.

46. "*Definitive Documentation*" means, without limitation, the following definitive documents and agreements: (a) this Plan and all exhibits hereto, including the Plan Supplement documents; (b) the Confirmation Order and Confirmation Recognition Order; (c) the Disclosure Statement; (d) the solicitation materials with respect to the Plan; (e) the Purchase Agreement, including the exhibits and schedules thereto; (f) the Sale Order, if not incorporated as part of the Confirmation Order and Confirmation Recognition Order, as applicable; (g) any documentation or budget related to the Post-Sale Reserve and Foreign Sale Reserve; (h) the DIP Order; (i) all "first day" motions, applications, and other documents that any Debtor intends to file with the

5

Bankruptcy Court and seeks to have heard on an expedited basis at the "first-day hearing" in the Chapter 11 Cases and any proposed orders related thereto; (j) all motions, applications, and other documents that any Debtor (including a foreign representative appointed by the Bankruptcy Court for any Debtor) or any Canadian Affiliates of Debtors intend to file with the CCAA Court in the CCAA Recognition Proceedings, and any proposed orders related thereto; (k) any provision in any documentation regarding (i) releases of Claims, causes of action, and avoidance actions or (ii) Assumed Liabilities or Transferred Contracts under the Purchase Agreement; (l) such other agreements, instruments, and documentation as may be necessary or reasonably desirable to consummate and document the Restructuring and Sale Transaction (including, without limitation, in connection with the CCAA Recognition Proceedings); and (m) to the extent not included, any motions and related proposed orders seeking approval of each of the above.  For the avoidance of doubt, the Definitive Documentation shall be in form and substance acceptable to the Debtors, the Prepetition Secured Parties, the Purchaser, and with respect to MidOcean, solely with respect to any provision therein having a material effect on MidOcean or releasing Claims or causes of action by or against MidOcean or its affiliates thereunder.

47.    "*De Minimis Assets*" means assets with a total transaction value, as calculated within the Debtors' or Wind Down Administrator's reasonable discretion, in consultation with the Prepetition Secured Parties, less than or equal to $50,000.

48.    "*DIP Agent*" means GB Funding, LLC, in its capacity as administrative agent and collateral agent under the DIP Facility.

49.    "*DIP Approval Order*" means the interim order entered by the Bankruptcy Court approving the DIP Facility and the Final DIP Approval Order.

50.    "*DIP Claim*" means any Claim of the DIP Agent or any DIP Lender on account of or arising from, under or in connection with the DIP Facility.

51.    "*DIP Facility*" means the senior secured superpriority debtor-in-possession financing facility to be provided by the DIP Lenders, all as set forth in, and consistent with and subject to, the terms and conditions of the DIP Facility Documents.

52.    "*DIP Facility Documents*" means the DIP Facility Term Sheet, the DIP Credit Agreement (as applicable) and all other agreements, documents, instruments, and amendments related thereto, including any DIP Order, and any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements.

53.    "*DIP Facility Term Sheet*" means that certain term sheet regarding the terms of debtor-in-possession financing between KidKraft, Inc., as borrower, certain of KidKraft's subsidiaries and affiliates, as guarantors, the DIP Agent, and the DIP Lender, attached as Exhibit A to the DIP Approval Order.

54.    "*DIP Lender*" means 1903 Partners, LLC, in its capacity as lender under the DIP Facility.

55.    "***DIP Liens***" mean the Liens granted to the DIP Agent under the DIP Order to secure the DIP Claims.

56.    "***DIP Order***" means the DIP Approval Order and the DIP Recognition Order, as applicable.

57.    "***DIP Recognition Order***" means one or more orders of the CCAA Court in the CCAA Recognition Proceedings recognizing and giving effect in Canada to the DIP Approval Order, including the Final DIP Recognition Order.

58.    "***DIP Secured Parties***" means collectively, the DIP Lender and the DIP Agent, in their respective capacities under the DIP Facility.

59.    "***DIP Secured Parties Advisors***" means Katten Muchin Rosenman LLP, as counsel to the DIP Secured Parties and Fasken Martineau DuMoulin LLP as Canadian Counsel to the DIP Secured Parties.

60.    "***Disallowed***" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed; *provided, however*, that a Disputed Claim shall not be considered Disallowed until so determined by entry of a Final Order.

61.    "***Disbursing Agent***" means the Debtors, the Wind Down Estate, the GUC Trust, or the Entity or Entities selected by the Debtors, the Wind Down Estate, or the GUC Trust as applicable, to make or facilitate distributions pursuant to the Plan.

62.    "***Disclosure Statement***" means the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan*, dated as of May 8, 2024, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

63.    "***Disputed***" means, with respect to any Claim or Interest, that such Claim or Interest (a) is not yet Allowed, (b) is not Disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable, (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law, or (d) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order.

64.    "***Dissolution Transactions***" means the transactions that the Debtors or Wind Down Administrator, with the consent of the Prepetition Secured Parties, determine to be necessary or appropriate to implement the terms of the Plan, and ultimately result in the dissolution or other termination of the corporate entities that comprise the Debtors.

65.    "***Distributable Value***" means (a) the Purchase Price *plus* (b) any of the Debtors' cash on hand as of the Effective Date *plus* (c) proceeds of the monetization of any Excluded Assets of the Debtors, whenever received by the Debtors or the Wind Down Estates *plus* (d) surrender of collateral or proceeds of any other collateral securing the DIP Claims or Prepetition Secured Party Claims, whenever received by the Debtors or the Wind Down Estates; *minus* (e) amounts held-

back to secure any purchase price adjustments pursuant to the Purchase Agreement (unless and until distributed to the Debtors in accordance therewith); *minus* (f) amounts necessary to fund the Professional Fee Escrow Account in the Professional Fee Reserve Amount; *minus* (g) amounts necessary to satisfy Restructuring Expenses; *minus* (h) amounts necessary to fund the Post-Sale Reserve; *minus* (g) amounts necessary to fund the Foreign Sale Reserve; *provided that* any unused amounts remaining from the Professional Fee Escrow Account, the Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount, and the Post-Sale Reserve shall be considered Distributable Value; *provided that*, for the avoidance of doubt, no GUC Trust Assets shall be included as Distributable Value.

66.     "***Distribution Record Date***" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.

67.     "***Effective Date***" means the date selected by the Debtors on which: (a) no stay of the Confirmation Order, Confirmation Recognition Order or Sale Order (if separately entered) is in effect; (b) all conditions precedent specified in Article IX have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan becomes effective; *provided, however*, that if such date does not occur on a Business Day, the Effective Date shall be deemed to occur on the first Business Day after such date.

68.     "***Entity***" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

69.     "***Estate***" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

70.     "***Excluded Assets***" shall have the meaning set forth in Section 2.2 of the Purchase Agreement.

71.     "***Exculpated Party***" means each of the following solely in its capacity as such and to the maximum extent permitted by law: (a) the Debtors; (b) the Committee; and (c) the members of the Committee, solely in their capacities as such.

72.     "***Executory Contract***" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

73.     "***Expense Reimbursement***" shall have the meaning set forth in Section 9.3(a) of the Purchase Agreement, as may be modified by a subsequent order of the Bankruptcy Court.

74.     "***Federal Judgment Rate***" means the federal judgment rate in effect as of the Petition Date, compounded annually.

75.     "***File***," "***Filed***," or "***Filing***" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Noticing and Claims Agent or the Bankruptcy Court through the PACER or CM/ECF website.

76.     "***Final Decree***" means the decree contemplated under Bankruptcy Rule 3022.

4895-8166-4456

77.    "*Final DIP Approval Order*" means the Final Order entered by the Bankruptcy Court approving the DIP Facility.

78.    "*Final DIP Recognition Order*" means the Final Order of the CCAA Court recognizing and giving effect in Canada to the Final DIP Approval Order.

79.    "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

80.    "*Foreign Sale Reserve*" means the amount of the Purchase Price allocated to the inventory transferred from the Netherlands Subsidiaries to facilitate the Sale Transaction, which amount will be distributed from Debtors to the Netherlands Subsidiaries pursuant to the Plan.

81.    "*General Unsecured Claim*" means any Claim that is not secured, subordinated, or entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court (other than an Intercompany Claim or a Subordinated Claim).

82.    "*Global Settlement*" means the global settlement between the Global Settlement Parties pursuant to the term sheet (the "*Global Settlement Term Sheet*") attached to the *Notice of Filing Global Settlement Term Sheet* [Docket No. 195].

83.    "*Global Settlement Parties*" means the Debtors, the Committee, the DIP Secured Parties, the Prepetition Secured Parties, the Purchaser, and MidOcean.

84.    "*Governmental Bar Date*" means such time and date established pursuant to the Bar Date Order by which Proofs of Claim of Governmental Units must be Filed.

85.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

86.    "*GUC Critical Vendor Cash*" means any amounts permitted to be paid under the *Final Order (I) Authorizing the Debtors to Pay (A) Critical Vendors, (B) Lien Claimants, and (C) 503(b)(9) Claimants; (II) Confirming Administrative Expense Priority of Outstanding Orders; and (III) Granting Related Relief* [Docket No. 200] that are unused as of the Effective Date (with the Debtors having sole discretion to pay amounts authorized under such order, except that any

9

Allowed Claims entitled to priority status under section 503(b)(9) of the Bankruptcy Code shall be paid in full to the Holders thereof).

87.   "*GUC L/C Cash*" means 40% of any cash collateral recovered from the former prepetition agent pursuant to the Assignment and Assumption dated as of January 31, 2024 by and between (i) Antares AssetCo LP, Antares Capital LP, Antares Holdings LP, Antares CLO 2017-2, LTD., Antares CLO 2018-1, LTD., Fifth Third Bank, N.A., and PNC Bank, N.A., as assignors, and (ii) 1903 Partners, LLC, as assignee.

88.   "*GUC Purchase Price Cash*" means (i) $350,000 if, on the Effective Date, the calculation of the Purchase Price Calculation is within a 0-5% variance of $39,322,916; (ii) $250,000 if, on the Effective Date, the Purchase Price Calculation is within a 6-10% variance of $39,322,916; (iii) $200,000 if, on the Effective Date, the Purchase Price Calculation is within a 11-20% variance of $39,322,916; or (iv) $150,000 if, on the Effective Date, the Purchase Price Calculation is a more than 20% variance of $39,322,916.

89.   "*GUC Settlement Opt-In Election*" means the affirmative election by a Holder of a General Unsecured Claim to opt-in to the settlement under the Global Settlement Term Sheet and receive its Pro Rata share of 100% of the GUC Trust Interests.

90.   "*GUC Settlement Opt-In Election Deadline*" means the date that is thirty (30) days after the Effective Date.

91.   "*GUC Settlement Opt-In Form*" means the form by which a potential holder of a General Unsecured Claim may make a GUC Settlement Opt-In Election, which form shall be included in the Plan Supplement.

92.   "*GUC Settlement Opt-In Procedures*" means the procedures set forth in the GUC Settlement Opt-In Form for a potential holder of an Allowed General Unsecured Claim to make a GUC Settlement Opt-In Election.

93.   "*GUC Trust*" means the trust established pursuant to Article IV.C of the Plan to, among other things, hold and liquidate the GUC Trust Assets and make distributions to Holders of Allowed General Unsecured Claims that make a GUC Settlement Opt-In Election pursuant to the Plan.

94.   "*GUC Trust Accounts*" means the bank accounts to be held in the name of the GUC Trustee that are created pursuant to Article IV.C of the Plan.

95.   "*GUC Trust Agreement*" means the agreement establishing and governing the GUC Trust, which agreement shall be included in the Plan Supplement and executed as of the Effective Date, and which agreement shall be acceptable in form and substance to the Debtors, the Committee, and the Prepetition Secured Parties.

96.   "*GUC Trust Assets*" means, in the aggregate, (i) the GUC Trust Expense Reserve; (ii) $125,000 in Cash; (iii) the Sponsor Cash Contribution; (iv) the GUC L/C Cash; (v) the GUC Purchase Price Cash; (vi) any unused amounts in the Approved Budget that are designated for fees and expenses of the Committee's professionals; (vii) the GUC Critical Vendor Cash, if any;

(viii) all commercial tort claims (as that term is defined in Article 9 of the Uniform Commercial Code) of the Debtors other than any such claims against any Released Party under the Plan; and (ix)  the Assigned Avoidance Actions.

97.     "*GUC Trust Assets Transfer*" means the assignment, conveyance, or other transfer of the GUC Trust Assets to the GUC Trust, which shall occur on the next Business Day following the GUC Settlement Opt-In Election Deadline.

98.     "*GUC Trust Beneficiaries*" means any Holder of an Allowed General Unsecured Claim that has made a GUC Settlement Opt-In Election and thereby obtained one or more GUC Trust Interests and the Prepetition Secured Parties.  For the avoidance of doubt, the Prepetition Secured Parties shall be deemed to have made a GUC Settlement Opt-In Election and shall be GUC Trust Beneficiaries without the need to submit any opt-in election or otherwise comply with the GUC Settlement Opt-In Procedures.

99.     "*GUC Trust Expense Reserve*" means a reserve in the amount of $75,000 funded from Cash on hand of the U.S. Debtors to the GUC Trust on the Effective Date to allow the GUC Trustee to maintain and administer the GUC Trust Assets.

100.    "*GUC Trust Interests*" means the beneficial interests in the GUC Trust.

101.    "*GUC Trustee*" means the trustee appointed pursuant to Article IV.C of the Plan (or any successor trustee), in its capacity as the trustee of the GUC Trust, who shall be solely responsible for overseeing the reconciliation, objection, settlement, or other disposition of General Unsecured Claims asserted in these Chapter 11 Cases.

102.    "*Holder*" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

103.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

104.    "*Indemnification Obligations*" means each of the Debtors' indemnification obligations, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts, for the current and former directors and the officers of the Debtors.

105.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

106.    "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor.

107.    "*Interest*" means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in any Debtor, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest, that existed immediately before the Effective Date.

4895-8166-4456

108.    "***Internal Revenue Code***" means the Internal Revenue Code of 1986, as amended.

109.    "***IRS***" means the Internal Revenue Service.

110.    "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

111.    "***KidKraft***" means KidKraft, Inc.

112.    "***Lien***" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

113.    "***List of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors which shall be included in the Plan Supplement.

114.    "***Local Rules***" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas.

115.    "***MidOcean***" means MidOcean Partners IV, L.P. in its capacity as the holder of Preferred A Units and Preferred C Units in KidKraft Group Holdings, LLC and party to that certain *Note Purchase Agreement* dated as of January 13, 2023, pursuant to which, KidKraft agreed to issue and sell to and MidOcean agreed to purchase, notes in the aggregate principal amount of up to $5,000,000 and MidOcean US Advisor, L.P. as party to that certain *Professional Services Agreement* dated as of July 15, 2015 by and among KidKraft Group Holdings, LLC, KidKraft, and MidOcean US Advisor, L.P., as amended by that First Amendment to the Professional Services Agreement dated as of September 30, 2016.

116.    "***Netherlands Asset Sale***" has the meaning set forth in Article IV.A.3. of the Plan.

117.    "***Netherlands Liquidation***" has the meaning set forth in Article IV.A.3. of the Plan.

118.    "***Netherlands Subsidiaries***" means non-debtors KidKraft Netherlands C.V., KidKraft Holdings B.V., and KidKraft Netherlands B.V.

119.    "***Note Purchase Agreement Documents***" means that certain *Note Purchase Agreement* dated as of January 13, 2023 by and among certain of the Debtors and MidOcean and all other agreements, documents, instruments, and amendments related thereto.

120.    "***Noticing and Claims Agent***" means Stretto Inc., the noticing, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases.

121.    "***Other Priority Claim***" means any Claim that is entitled to priority of payment under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

122.    "***Other Secured Claims***" means Secured Claims other than Priority Tax Claims, DIP Claims, or Prepetition Secured Party Claims.

123.    "***Person***" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

4895-8166-4456

124.   "**_Petition Date_**" means the date on which each Debtor Filed its voluntary petition for relief commencing the Chapter 11 Cases.

125.   "**_Plan_**" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of the Plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules to the Plan, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

126.   "**_Plan Supplement_**" means, to the extent applicable, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Purchase Agreement, the Schedule of Assumed Executory Contracts and Unexpired Leases, the GUC Trust Agreement, the Global Settlement Term Sheet, the GUC Settlement Opt-In Form, the identity of the Wind Down Administrator, and the List of Retained Causes of Action all of which shall be incorporated by reference into, and are an integral part of, the Plan, as may be amended, modified, replaced and/or supplemented from time to time, subject to the consent of the Prepetition Secured Parties.

127.   "**_Post-Sale Reserve_**" means a cash reserve in the amount of $650,000 to fund the reasonably anticipated costs necessary for the wind down of the Wind Down Estate, including an estimated amount of reasonable fees and expenses that may be incurred by professionals for services rendered after the Effective Date and statutory fees, which cash reserve shall be funded into a segregated account on the Effective Date.

128.   "**_Prepetition Credit Agreement_**" means that certain _Amended and Restated First Lien Credit Agreement_, dated as of April 3, 2020 (as amended from time to time), by and among KidKraft, Inc. and KidKraft Netherlands B.V., jointly and severally, as borrowers, the guarantors thereto, GB Funding, LLC, as Prepetition Credit Agreement Agent, and 1903 Partners, LLC, as Lender.

129.   "**_Prepetition Credit Agreement Agent_**" means GB Funding, LLC, in its capacity as Administrative Agent and Collateral Agent (as such terms are defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement.

130.   "**_Prepetition Credit Agreement Documents_**" means the Prepetition Credit Agreement and all other agreements, documents, instruments, and amendments related thereto, including any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements.

131.   "**_Prepetition Secured Parties_**" means GB Funding, LLC, as Administrative Agent and Collateral Agent, and 1903 Partners, LLC, as Lender, in their respective capacities under the Prepetition Credit Agreement.

132.   "**_Prepetition Secured Party Advisors_**" means Katten Muchin Rosenman LLP, as counsel to the Prepetition Secured Parties and Fasken Martineau DuMoulin LLP as Canadian counsel to the Prepetition Secured Parties.

133. "***Prepetition Secured Party Claims***" means all Claims, including "Parallel Debts" (as defined in the Prepetition Credit Agreement Documents) held by the Prepetition Secured Parties on account of, arising under, or relating to their respective capacities as lender or agent under the Prepetition Credit Agreement Documents.

134. "***Prepetition Secured Parties' Deficiency Claims***" means the deficiency Claims held by the Prepetition Secured Parties. Solely for purposes of any distributions to be made from the GUC Trust Assets to GUC Trust Beneficiaries, the Prepetition Secured Parties' Deficiency Claims shall be capped at $55 million.

135. "***Prepetition Secured Party Liens***" means all Liens granted to the Prepetition Credit Agreement Agent to secure the Prepetition Secured Party Claims.

136. "***Priority Tax Claim***" means a Claim held by a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

137. "***Pro Rata***" means the proportion that an Allowed Claim or an Allowed Interest bears to the aggregate amount of Allowed Claims, Allowed Interests, or other matter so referenced, as the context requires.

138. "***Professional***" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

139. "***Professional Fee Claims***" means a Claim for the compensation of the Professionals and other professionals (including, for certainty, professionals to be compensated pursuant to the orders of the CCAA Court in the CCAA Recognition Proceedings) and the reimbursement of expenses incurred by such professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid, including, for the avoidance of doubt, any costs, fees, expenses, or commissions (including with respect to any investment banking transaction fees or commissions) incurred in connection with the Restructuring; *provided that* to the extent a Debtor Professional (as defined in the DIP Approval Order) agrees with the DIP Lender to a modification to the Debtor Professional fees in accordance with Section 1.8 of the DIP Approval Order, the Claim as modified shall be included in the applicable Professional Fee Claim. Professional Fee Claims of the Committee's Professionals shall not exceed the aggregate amounts set forth in the Approved Budget, consistent with the Global Settlement Term Sheet.

140. "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors on the Effective Date in an amount equal to the Professional Fee Reserve Amount, pursuant to Article II.B.

141. "***Professional Fee Reserve Amount***" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.

4895-8166-4456

142.   "*Professional Services Agreement Documents*" means that certain *Professional Services Agreement* dated as of July 15, 2015 by and among certain of the Debtors and MidOcean and all other agreements, documents, instruments, and amendments related thereto.

143.   "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

144.   "*Purchase Agreement*" means that certain Asset Purchase Agreement dated as of April 25, 2024, as amended, modified, or supplemented from time to time, among Purchaser and certain of the Debtors, including all schedules and exhibits thereto, which shall be Filed with the Plan Supplement.

145.   "*Purchase Price*" shall have the meaning set forth in the Purchase Agreement.

146.   "*Purchase Price Calculation*" means the calculation of the "Purchase Price at close" in accordance with Exhibit B of the Purchase Agreement.

147.   "*Purchaser*" means Backyard Products, LLC, and permitted successors, assigns, and designees, as applicable.

148.   "*Qualifying Alternative Transaction*" shall have the meaning set forth in the Purchase Agreement.

149.   "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code, which, in all instances, shall be acceptable to the Prepetition Secured Parties and the Purchaser in their sole and absolute discretion.

150.   "*Released Party*" means each of the following solely in its capacity as such: (a) the Debtors; (b) the DIP Agent; (c) the DIP Lender; (d) MidOcean; (e) the Prepetition Secured Parties; (f) the Purchaser; (g) the Committee; and (h) with respect to each of the foregoing under (a) through (g) such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, employees, managed accounts and funds, predecessors, successors, assigns, subsidiaries, equity Holders, members, agents, attorneys, accountants, investment bankers, consultants, and other professionals, each solely in their capacity as such.

151.   "*Releasing Party*" means each of the following solely in its capacity as such: (a) all Released Parties; (b) all Holders of Claims who affirmatively cast a timely ballot to accept the Plan and did not affirmatively opt out of the releases set forth in Article VIII.F herein; (c) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth in Article VIII.F herein but did not otherwise affirmatively opt out of such releases; and (d) all GUC Trust Beneficiaries.

152.   "*Restructuring*" means all actions that may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary to effectuate, the Plan.

4895-8166-4456

153.    "*Restructuring Expenses*" means the reasonable and documented professional fees and expenses incurred by the DIP Secured Party Advisors, the DIP Secured Parties, the Prepetition Secured Party Advisors and the Prepetition Secured Parties, in each case, in connection with or arising as a result of the Restructuring, the Restructuring Support Agreement, Sale Transaction, the Plan, or the Chapter 11 Cases.

154.    "*Restructuring Support Agreement*" means that certain *Restructuring Support Agreement*, dated April 25, 2024, by and among the Debtors, the Prepetition Secured Parties, the DIP Secured Parties, the Purchaser, and MidOcean, as may be further amended, restated, modified, supplemented, or replaced from time to time in accordance with the terms thereof.

155.    "*Retained Causes of Action*" means those Causes of Action identified on the List of Retained Causes of Action that are not released, waived, or transferred pursuant to the Plan or any Sale Transaction.

156.    "*RSA Parties*" mean, collectively, the Debtors, the Prepetition Secured Parties, the DIP Secured Parties, the Purchaser, and MidOcean.

157.    "*Sale Approval Order*" means the order of the Bankruptcy Court approving the Purchase Agreement and the Sale Transaction, which order may be, but is not required to be, part of the Confirmation Order.

158.    "*Sale Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Sale Order, as such hearing may be adjourned or continued from time to time.

159.    "*Sale Order*" means the Sale Approval Order and the Sale Recognition Order, as applicable.

160.    "*Sale Recognition Order*" means an order of the CCAA Court in the CCAA Recognition Proceedings recognizing and giving effect in Canada to the Sale Approval Order, which order may be, but is not required to be, part of the Confirmation Recognition Order.

161.    "*Sales Process*" means the marketing and sales process for the Debtors' Assets.

162.    "*Sale Transaction*" means the sale by the Debtors that are party to the Purchase Agreement of all of their respective right, title, and interest in, to and under the Transferred Assets to the Purchaser in accordance with the terms of the Purchase Agreement and the Sale Order.

163.    "*Sale Transaction Documents*" means the Sale Order, the Purchase Agreement, and all other documents required to consummate the Sale Transaction (with respect to such other documents required to consummate the Sale Transaction, in form and substance acceptable to each party thereto).

164.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed and assigned to Purchaser pursuant to the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date.

4895-8166-4456

165.     "**_Schedules_**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

166.     "**_SEC_**" means the United States Securities and Exchange Commission.

167.     "**_Secured Claim_**" means a Claim (i) secured by a lien on collateral to the extent of the value of such collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

168.     "**_Security_**" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

169.     "**_Special Committee_**" means the Special Committee of the Board of Directors of KidKraft, Inc.

170.     "**_Sponsor Cash Contribution_**" has the meaning set forth in Article IV.C.8 of the Plan.

171.     "**_Sponsor Claims Waiver_**" has the meaning set forth in Article IV.C.8 of the Plan.

172.     "**_Subordinated Claim_**" means any Claim against a Debtor arising from (a) rescission of a purchase or sale of a Security in any Debtor or an Affiliate of any Debtor, (b) purchase or sale of such a Security, or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

173.     "**_Transferred Assets_**" shall have the meaning set forth in Section 2.1 of the Purchase Agreement, _provided, however,_ the Assigned Avoidance Actions shall not be Transferred Assets.

174.     "**_Transferred Contracts_**" shall have the meaning set forth in Section 2.1(e) of the Purchase Agreement.

175.     "**_Unclaimed Property_**" means any distribution under the Plan on account of an Allowed Claim whose Holder has not: (a) accepted such distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind Down Estate of an intent to accept such distribution; (c) responded to the Debtors', Wind Down Administrator's, or GUC Trustee's (as applicable) requests for information necessary to facilitate such distribution; or (d) taken any other action necessary to facilitate such distribution.

176.     "**_Unexpired Lease_**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

4895-8166-4456

177. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not "impaired" within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash or Reinstatement.

178. "*Unpaid Employee Severance Obligations*" means those obligations owed to certain eligible employees who were terminated prior to the Petition Date and who executed a separation agreement after the Petition Date and prior to the Effective Date, which obligations shall be deemed to have been incurred after the Petition Date and treated as Administrative Expense Claims for purposes of this Plan.

179. "*Unsecured*" means, with respect to a Claim, not Secured.

180. "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

181. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

182. "*Wind Down Administrator*" means the Person or Persons identified in the Plan Supplement (as determined by the Debtors), if known, and appointed on the Effective Date, who will serve as the trustee and administrator overseeing the Wind Down Estate and dissolution of the Debtors and their Estates in accordance with the Plan.

183. "*Wind Down Claims*" means the Prepetition Secured Party Claims that remain outstanding on the Effective Date, in an amount not to exceed $10,000,000, and the Prepetition Secured Party Liens securing such Prepetition Secured Party Claims, which Prepetition Secured Party Claims and Liens shall be automatically released and discharged following the orderly wind down of the Debtors and the other borrower and guarantors under the Prepetition Credit Agreement and after the proceeds of the Netherlands Asset Sale and Netherlands Liquidation, if any, are indefeasibly distributed in Cash to the Prepetition Secured Parties as provided in Article IV of the Plan.

184. "*Wind Down Estate*" means, collectively, (i) the Estates of the Debtors and (ii) the Debtors' non-Debtor affiliates, as applicable, following the Effective Date.

185. "*Wind Down Estate Assets*" means (i) any Assets of the Debtors' Estates that are not GUC Trust Assets and not sold pursuant to the Sale Transaction, including, but not limited to, the Excluded Assets, Interests in the Debtors' non-Debtor affiliates, and any Cause of Action specifically enumerated in the List of Retained Causes of Action and (ii) Cash in the amount set forth in the Post-Sale Reserve; *provided that* proceeds of any Wind Down Estate Assets, including without limitation, Excluded Assets and such Retained Causes of Action shall become Distributable Value. For the avoidance of doubt, no GUC Trust Assets shall be Wind Down Estate Assets.

186. "*Wind Down Estate Expenses*" means any and all reasonable and documented fees, costs, and expenses incurred by the Wind Down Estate or the Wind Down Administrator (or any Person, entity, or professional engaged to assist the Wind Down Administrator) in connection with the Wind Down Transactions, including, without limitation, any reasonable and documented

18

administrative fees, attorneys' or other professionals' fees and expenses, insurance fees, taxes, escrow expenses and fees payable under 28 U.S.C. § 1930, costs associated with any maintenance of any going concern as part of the wind down of such going concern's business operations, or costs to maintain certain assets while they are held, in each case, in accordance with and subject to the Post-Sale Reserve.

187.    "*Wind Down Transactions*" means the transactions that the Debtors or Wind Down Administrator, as applicable, with the consent of the Prepetition Secured Parties, determines to be necessary or appropriate to implement the terms of the Plan, and that ultimately result in the dissolution or other termination of KidKraft and its Affiliates.

B.    *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified, or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* the corporate or limited liability company governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Reference to the Debtors or the Wind Down Estate*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind Down Estate shall mean the Debtors and the Wind Down Estate, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan, the Disclosure Statement, or any other Final Order (other than the Confirmation Order or Sale Approval Order, as applicable) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order or Sale Approval Order and the Plan, the Confirmation Order or Sale Approval Order, as applicable, shall control.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.    *Administrative Expense Claims*

Except (i) with respect to Administrative Expense Claims that are Professional Fee Claims and Bidder Protections, or (ii) to the extent that (x) an Administrative Expense Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Expense Claim

4895-8166-4456

and the applicable Debtor(s) or (y) Wind Down Administrator (as applicable) agrees to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash; on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed; and (c) the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided that* in no event shall the amount paid in the aggregate to Administrative Expense Claims (excluding Professional Fee Claims) in accordance with this Article II.A, Priority Tax Claims under Article II.E hereof, and Other Priority Claims under Article III.B hereof exceed the Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount.  For the avoidance of doubt, the Bidder Protections shall be an Administrative Expense Claim in accordance with any applicable orders of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan and except with respect to Administrative Expense Claims that are Professional Fee Claims, Unpaid Employee Severance Obligations, or Bidder Protection Claims, requests for allowance and payment of Administrative Expense Claims must be Filed and served on the Debtors, the Wind Down Estate, or the Wind Down Administrator (as applicable), pursuant to the procedures specified in the Bar Date Order, the Confirmation Order, and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims that are required to, but do not, File and serve on the Debtors, the Wind Down Estate, or the Wind Down Administrator (as applicable) a request for allowance and payment of such Administrative Expense Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Wind Down Estate, or their respective assets or property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Debtors, the Wind Down Estate, or the Wind Down Administrator (as applicable) and the requesting party no later than 90 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed.

B.      *Professional Compensation*

1.      Final Fee Applications

All final requests for payment of Professional Fee Claims of Professionals, including such Professional Fee Claims incurred during the period from the Petition Date through and including the Effective Date, shall be Filed and served on the Debtors, the Wind Down Estate, or the Wind Down Administrator, as applicable, no later than 45 days after the Effective Date.  Each such final request will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, and once approved by the Bankruptcy Court, such Allowed Professional Fee Claims shall be promptly paid in Cash from the Professional Fee Escrow Account up to its full Allowed amount.

Objections to any Professional Fee Claim of Professionals must be Filed and served on the Debtors, the Wind Down Estate, or the Wind Down Administrator, as applicable, and the

4895-8166-4456

applicable Professional no later than 24 days after such Professional Fee Claim is Filed with the Bankruptcy Court.

    2.      Professional Fee Escrow Account

On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the "Professional Fee Reserve Amount" described in Article II.B.3 herein. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and the other professionals with Professional Fee Claims. The Debtors shall utilize the Funded Reserve Account (as defined in the DIP Approval Order) to fund the Professional Fee Escrow Account, *provided that* the Funded Reserve Account is not a limitation on the amount funded to the Professional Fee Escrow Account. The Professional Fee Escrow Account and funds therein shall not be considered property of the Estates of the Debtors or the Wind Down Estate. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Disbursing Agent or the Wind Down Administrator from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed, and the amount of all other Professional Fee Claims shall be paid in Cash to the applicable professionals by the Disbursing Agent or the Wind Down Administrator from the Professional Fee Escrow Account on the Effective Date. After all such Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be distributed to the Wind Down Estate and deemed Distributable Value and distributed to the holders of Prepetition Secured Party Claims without any further action or order of the Bankruptcy Court.

    3.      Professional Fee Reserve Amount

No later than five Business Days prior to the Effective Date, the Debtors shall solicit Professionals and the other professionals with Professional Fee Claims for estimates of their unpaid Professional Fee Claims before and as of the Effective Date, and such Professionals and other professionals shall deliver such estimate to the Debtors in writing via email two Business Days prior to the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of any such professional's final request for payment of Professional Fee Claims. If any professional does not timely provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such professional.

    4.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Disbursing Agent, the Wind Down Estate, or the Wind Down Administrator (as applicable) shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred on or after the Effective Date by the Professionals and other professionals (including any fees related to the preparation of Professional fee applications). Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Wind Down Estate, or the Wind Down Administrator (as applicable) may employ and pay any Professional or other professional for fees and expenses

incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, in no circumstances shall the payment of any post-Effective Date fees and/or expenses and other Wind Down Estate Expenses exceed the amount of the Post-Sale Reserve.

C.     *DIP Claims*

Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of all DIP Claims, on the Effective Date, the DIP Claims shall: (i) be indefeasibly paid in Cash in full, or (ii) receive such other treatment as agreed by the Debtors and the applicable Holder of a DIP Claim.

D.     *Adequate Protection Claims*

On the Effective Date, the Adequate Protection Claims shall (i) be paid in Cash in full or (ii) receive such other treatment as agreed by (a) to the extent such Adequate Protection Claims are held by the Prepetition Secured Parties, the Debtors and the Prepetition Secured Parties or (b) to the extent such Adequate Protection Claims are not held by a Prepetition Secured Party, the Debtors and the applicable Holder of such Adequate Protection Claims.

E.     *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on the Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

F.     *Statutory Fees*

All Statutory Fees due and payable prior to, and that remain unpaid as of, the Effective Date shall be paid by the applicable Debtors on the Effective Date. No statutory fees shall be paid on the initial funding of the Post-Sale Reserve or the GUC Trust. Statutory fees shall only be paid on subsequent disbursement of Cash by the Wind Down Estate or the GUC Trust, as applicable. Any Statutory Fees that may be owed by the Debtors, the Wind Down Estate, or the GUC Trust, as applicable, after the Confirmation Date related to the reduction to Cash of non-Cash assets shall be paid by the Debtors, the Wind Down Estate, or the GUC Trust, as applicable, until the case is closed, dismissed, or converted. If no disbursements are made by the Debtors, the Wind Down Estate, or the GUC Trust for any quarter post-confirmation, only the minimum statutory fee will be owed in accordance with 28 U.S.C. § 1930(a)(6). The Wind Down Estate and the GUC Trust shall file post-confirmation operating reports with respect to their respective operations and disbursements until these Chapter 11 Cases are closed, dismissed, or converted to cases under chapter 7 of the Bankruptcy Code.

4895-8166-4456

G.    *Restructuring Expenses*

The Debtors will promptly pay in full in Cash any Restructuring Expenses in accordance with the terms of the Restructuring Support Agreement and the DIP Approval Order.  To the extent any Restructuring Expenses remain unpaid on the Effective Date, such Restructuring Expenses shall constitute Allowed Administrative Expense Claims and shall be paid in full in Cash, subject to the Restructuring Support Agreement and the DIP Approval Order without the need to file a proof of such Claim and without further order of the Court.  On the Effective Date, the Disbursing Agent or the Wind Down Estate, as applicable, shall pay the Restructuring Expenses that have accrued and are unpaid as of the Effective Date.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims*

The Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in other Class(es) to the extent that any portion of the Claim or Interest fits within the description of such other Class(es).  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Secured Party Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Unimpaired/Impaired | Presumed to Accept/Deemed to Reject |
| 6 | Intercompany Interests | Unimpaired/Impaired | Presumed to Accept/Deemed to Reject |
| 7 | KidKraft Intermediate Holdings, LLC Interests | Impaired | Deemed to Reject |

4895-8166-4456

B.      *Treatment of Claims and Interests*

1.      <u>Class 1 — Other Priority Claims</u>

a.      *Classification*: Class 1 consists of all Other Priority Claims.

b.      *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is 10 business days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, in each case, or as soon as reasonably practicable thereafter; *provided that* in no event shall the amount paid in the aggregate for Administrative Expense Claims (excluding Professional Fee Claims) in accordance with Article II.A hereof, Priority Tax Claims under Article II.E hereof, and Other Priority Claims under this Article III.B exceed the Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount.

c.      *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.      <u>Class 2 — Other Secured Claims</u>

a.      *Classification*: Class 2 consists of all Other Secured Claims.

b.      *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of Debtors or the Wind Down Estate, as applicable, each Holder shall receive either (i) cash equal to the full allowed amount of its claim, (ii) reinstatement of such holder's claim, (iii) the return to or abandonment of the collateral securing such holder's claim, or (iv) such other treatment as may otherwise be agreed to by such Holder and the Debtors.

c.      *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      <u>Class 3 — Prepetition Secured Party Claims</u>

a.      *Classification*: Class 3 consists of all Prepetition Secured Party Claims.

b.  *Treatment*: Except to the extent that the Holder of Prepetition Secured Party Claims agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Prepetition Secured Party Claim (which satisfaction, settlement, release, and discharge shall occur (i) on the Effective Date for all Prepetition Secured Party Claims other than the Wind Down Claims, and (ii) after the orderly wind down of the Debtors and other borrower and guarantors under the Prepetition Credit Agreement for all Wind Down Claims), each Holder of an Allowed Prepetition Secured Party Claim shall receive the remaining Distributable Value following payment of Administrative Expense Claims and Priority Tax Claims, DIP Claims, Other Priority Claims, Other Secured Claims, (which amount may be paid directly by the Purchaser on the Effective Date), and GUC Trust Interests (subject to the terms of the Global Settlement) on the Effective Date and any Distributable Value that is available for distribution after the Effective Date shall be promptly distributed by the Debtors or Wind Down Estate to holders of Prepetition Secured Party Claims.

c.  *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 Secured Party Claims will be entitled to vote to accept or reject the Plan.

4.  <u>Class 4 — General Unsecured Claims</u>

a.  *Classification*: Class 4 consists of all General Unsecured Claims.

b.  *Treatment*: On the Effective Date, all General Unsecured Claims will be canceled, released, extinguished and discharged, and Holders of General Unsecured Claims will receive no recovery or distribution on account of such claims; *provided*, *however*, that any Holder of Allowed General Unsecured Claims who timely makes a GUC Settlement Opt-In Election in compliance with the GUC Settlement Opt-In Procedures shall receive its Pro Rata share of 100% of the GUC Trust Interests.

c.  *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 General Unsecured Claims will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

5.  <u>Class 5 — Intercompany Claims</u>

a.  *Classification*: Class 5 consists of all Intercompany Claims.

b.  *Treatment*:  All Intercompany Claims will be unaltered and otherwise unaffected by the Plan, or canceled on the Effective Date, in the Debtors' discretion, with the consent of Purchaser.

c.  *Voting*: Class 5 is Unimpaired/Impaired under the Plan. Holders of Class 5 Intercompany Claims are proponents of the Plan within the meaning of

26

section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

6.     <u>Class 6 — Intercompany Interests</u>

    a.     *Classification*: Class 6 consists of all Intercompany Interests.

    b.     *Treatment*: All Intercompany Interests shall be maintained under the Plan, solely for purposes of administrative convenience or canceled on the Effective Date, in the Debtors' discretion, subject to the consent of the Prepetition Secured Parties and the Purchaser.

    c.     *Voting*: Class 6 is Unimpaired/Impaired under the Plan. Holders of a Class 6 Intercompany Interests are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

7.     <u>Class 7 — KidKraft Intermediate Holdings, LLC Interests</u>

    a.     *Classification*: Class 7 consists of all KidKraft Intermediate Holdings, LLC Interests.

    b.     *Treatment*: All prepetition Interests in KidKraft Intermediate Holdings, LLC will be canceled on the Effective Date and Holders shall receive no recovery or distribution on account of their Interests.

    c.     *Voting*: Class 7 is Impaired under the Plan. For purposes of solicitation, it is presumed that Holders of Class 7 KidKraft Intermediate Holdings, LLC Interests shall not receive any distribution on account of such KidKraft Intermediate Holdings, LLC Interests and will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired or Reinstated Claims*

Nothing under the Plan shall affect the Debtors', the Wind Down Estate's, or the Wind Down Administrator's (as applicable) claims, Causes of Action, rights, or defenses in respect of any Unimpaired Claims or Reinstated Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims or Reinstated Claims.

D.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a

Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.  *Elimination of Vacant Classes*

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.  *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

G.  *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date

H.  *Subordinated Claims*

The allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.  *Means for Implementation*

1.  <u>Sale Transaction</u>

On the Effective Date, the applicable Debtors shall consummate the Sale Transaction and the Transferred Assets shall vest in the Purchaser free and clear of all Liens, Claims, charges, or encumbrances pursuant to section 1123 of the Bankruptcy Code and the CCAA and the Sale Transaction Documents; *provided*, that, the conditions precedent set forth in the Purchase Agreement shall have been satisfied or waived in accordance with the terms thereof.  Upon entry of the Sale Approval Order by the Bankruptcy Court and the Sale Recognition Order by the CCAA Court, all matters provided for under the Purchase Agreement and the other Sale Transaction

28

Documents will be deemed authorized and approved without any requirement of further act or action by the Debtors or the Debtors' governing bodies. The applicable Debtors are authorized to execute and deliver, and to consummate the transactions contemplated by the Sale Transaction Documents, as well as to execute, deliver, file, record and issue any documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court or the CCAA Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

In the alternative, the Plan shall serve as a motion under section 363 of the Bankruptcy Code to authorize the sale of the Transferred Assets pursuant to the terms of the Sale Transaction Documents. Section 363(f) of the Bankruptcy Code provides that the Debtors' assets may be sold free and clear of any and all liens, claims, interests, and encumbrances with any such liens, claims, interests, and encumbrances attaching to the proceeds of the Sale Transaction. The Debtors submit that the Sale Transaction satisfies the requirements of section 363(f) of the Bankruptcy Code. To the extent a party objects to Sale Transaction on the basis that it holds a lien or encumbrance on the Transferred Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims under section 365(f)(5) of the Bankruptcy Code and the CCAA. In addition, to the extent the Debtors discover any party may hold a lien on all, or a portion of, the Assets, the Debtors have provided such party with notice of, and an opportunity to object to, the Sale Transaction. Absent objection, each such party will be deemed to have consented to the sale of the Transferred Assets.

Except as otherwise expressly provided in the Sale Transaction Documents, (a) the Purchaser and all of its Affiliates shall not be liable for any Claims against the Debtors or any of their predecessors or direct or indirect subsidiaries, and (b) neither the Purchaser nor any of its affiliates shall have successor or vicarious liabilities of any kind or character, including under any theory of successor or transferee liability, labor, employment, tort, products liability, or benefits law, whether known or unknown as of the closing, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, in each case, with respect to the Debtors or any obligations of the Debtors arising prior to the closing, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors prior to the closing (except as otherwise expressly provided in the Sale Transaction Documents). For the avoidance of doubt, any Avoidance Actions purchased by the Purchaser will not be pursued by the Purchaser.

The transactions contemplated by the Sale Transaction Documents are undertaken by the applicable Debtors and the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the Sale Transaction shall not affect the validity of such sale, unless such authorization and consummation of such sale are duly stayed pending such appeal. The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

4895-8166-4456

2.    Break-Up Fee and Expense Reimbursement

Consistent with the Sale Transaction Documents, the payment of the Break-Up Fee and
Expense Reimbursement for the Purchaser are hereby authorized in the event: (i) the Debtors that
are party to the Purchase Agreement consummate or enter into a Qualifying Alternative
Transaction and the Purchase Agreement is terminated in connection therewith; (ii) the Debtors
that are party to the Purchase Agreement publicly announce or support any plan of reorganization
or plan of liquidation other than the Plan and other than a plan that includes a conversion of any
of the Chapter 11 Cases to chapter 7 of the Bankruptcy Code or that would not prevent or materially
delay consummation of the Closing (as defined in the Purchase Agreement) in accordance with
the terms of the Purchase Agreement; or (iii) the board of directors or board of managers, as
applicable, of any Debtor that is party to the Purchase Agreement determines, in good faith based
upon advice of outside legal counsel, that proceeding with the Purchase Agreement or the
transactions contemplated thereunder (including the Plan or solicitation of the Plan) or taking any
action (or refraining from taking any action) in relation thereto, would be inconsistent with the
exercise of its fiduciary duties under applicable law, and the Purchase Agreement is terminated in
connection therewith (in each of the foregoing cases as further set forth in and subject to the terms
of the Purchase Agreement).    The potential remedy of the Break-Up Fee and Expense
Reimbursement was a condition of the Purchaser entering into the Purchase Agreement, which is
the best option for the Debtors to maximize the value of their estates.    The Break-Up Fee and
Expense Reimbursement are the product of arm's-length, good faith negotiations among the
Debtors and the Purchaser, and as a result, the Debtors believe that the agreement to pay such fees
to the Purchaser (if and when the same become due to the Purchaser pursuant to, and in accordance
with the terms and conditions in, the Purchase Agreement) is a valid exercise of their business
judgment and should be approved if required under the Sale Transaction Documents.

3.    Transactions with Netherlands Affiliates

On or prior to the closing of the transactions contemplated by the Purchase Agreement, the
assets of the Netherlands Subsidiaries that would otherwise be Transferred Assets under the
Purchase Agreement if such assets were owned by a Seller (as defined in the Purchase Agreement)
shall be sold to KidKraft, or another Debtor designated by KidKraft, in exchange for the portion
of the Purchase Price attributable to such assets (the "***Netherlands Asset Sale***").  The transactions
contemplated by the Netherlands Asset Sale are undertaken by the Netherlands Subsidiaries and
the Debtors without collusion and in good faith.  The Netherlands Subsidiaries' assets that do not
become Transferred Assets shall be liquidated with the consent of the Prepetition Secured Parties
and the Netherlands Subsidiaries (the "***Netherlands Liquidation***"). The Netherlands Subsidiaries
will create a right of pledge in favor of the Prepetition Secured Parties over the proceeds of the
Netherlands Asset Sale and the proceeds of the Netherlands Liquidation.

The proceeds of the Netherlands Asset Sale (i.e. the Foreign Sale Reserve) and proceeds
of the Netherlands Liquidation, in each case with the consent of the Prepetition Secured Parties,
shall be used to implement the orderly out-of-court wind down of the Netherlands Subsidiaries
(the "***Netherlands Wind Down***," collectively, with the Netherlands Asset Sale and Netherlands
Liquidation, the "***Netherlands Transactions***").

To the extent proceeds of the Netherlands Asset Sale (i.e. the Foreign Sale Reserve) or Netherlands Liquidation remain, after the Netherlands Wind Down is complete, such proceeds shall be distributed to the Prepetition Secured Parties in a manner to be determined by the Prepetition Secured Parties, the Debtors, and the Wind Down Administrator, as applicable, and the Netherlands Subsidiaries. Following the distribution of such proceeds, the Prepetition Secured Parties and the Netherlands Subsidiaries shall execute a mutual release of all Claims and Causes of Action.

Upon the Bankruptcy Court entering the Sale Approval Order, the Netherlands Asset Sale will be deemed authorized and approved without any requirement or further act or action by the Debtors or the Debtors' governing bodies.

4.    Vesting of Wind Down Estate Assets in the Wind Down Estate

Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, all Wind Down Estate Assets (including all interests, rights, and privileges related thereto) and all GUC Trust Assets (solely until the GUC Trust Assets Transfer occurs) in each Estate and all Causes of Action that are retained under the Plan shall vest in the Wind Down Estate, to be administered by the Wind Down Administrator in accordance with the Plan, free and clear of all Claims, Liens, and encumbrances (except for the Wind Down Claims) to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code; *provided that*, for the avoidance of doubt, no Assets that are, or shall be, transferred to Purchaser as Transferred Assets before or after the Effective Date in accordance with the Purchase Agreement and the Sale Approval Order shall vest in the Wind Down Estate.

The vesting of the Wind Down Estate Assets, as authorized by the Plan, shall not be construed to destroy or limit any such Assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Wind Down Estate as if such Asset or right was still held by the Debtors.

On the next Business Day following the GUC Settlement Opt-In Election Deadline, the Wind Down Estate shall complete the GUC Trust Assets Transfer.

5.    Wind Down Administrator

The Wind Down Administrator shall be selected by the Debtors, with the consent of the Prepetition Secured Parties and the DIP Secured Parties. The Wind Down Administrator shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights, and responsibilities of the Wind Down Administrator shall include the authority and responsibility to fulfill the obligations of the Plan consistent with the Confirmation Order.

On the Effective Date, the authority, power, and incumbency of the Persons acting as managers, directors, and officers of the Debtor entities comprising the Wind Down Estate shall vest in the Wind Down Administrator. The Wind Down Administrator shall be appointed the sole manager, sole director, and sole officer of the Debtor entities comprising the Wind Down Estate, as applicable, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Wind Down Administrator shall be the sole Representative

31

of the Wind Down Estate and shall have the authority to sell, liquidate, or otherwise dispose of any and all of the Wind Down Estate Assets without any additional notice to or approval from the Bankruptcy Court.

In the event the Wind Down Administrator becomes incapacitated or unable to continue serving in such role for any reason, the Prepetition Secured Parties shall select a suitable replacement Wind Down Administrator as promptly as possible without the need for any further action or order of the Bankruptcy Court.

6.     Wind Down Transactions

The Wind Down Administrator shall retain the authority to take all necessary actions to wind down the operations of the Wind Down Estate and dissolve the entities comprising the Wind Down Estate, to the extent required by applicable law.  Subject in all respects to the terms of this Plan, the Wind Down Administrator shall have the power and authority to take any action necessary to dissolve the entities comprising the Wind Down Estate, and may: (i) file a certificate of dissolution for the Wind Down Estate, together with all other necessary corporate and company documents, to effect the dissolution of the Wind Down Estate under applicable laws; (ii) complete and file all final or otherwise required federal, state, and local tax returns and pay all required taxes, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors, their respective Estates, or the entities comprising the Wind Down Estate for any tax incurred during the administration of these Chapter 11 Cases, as determined under applicable tax laws; and (iii) represent the interests of the Debtors, their respective Estates, and entities comprising the Wind Down Estate before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

Any applicable filing by the Wind Down Administrator of any certificates of dissolution (or similar documentation) of the entities comprising the Wind Down Estate shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholder, members, officers, board of directors, or board of managers of the Debtors or any of their respective Affiliates.  As the entities comprising the Wind Down Estate will be dissolved upon completion of the administration of this Plan, no new corporate organizational documents will be executed by the Wind Down Administrator.

For the avoidance of doubt, the Wind Down Administrator shall not be empowered to perform any actions designated to the GUC Trust or the GUC Trustee under the Plan or the GUC Trust Agreement.

7.     Fees and Expenses of the Wind Down Administrator

The Wind Down Estate Expenses shall be paid after the Effective Date solely using the Post-Sale Reserve.  The Wind Down Administrator, on behalf of the Wind Down Estate, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtors) to assist in carrying out duties for the Wind Down Estate and may compensate and reimburse the expenses of such professionals in the ordinary course, without further order of the Bankruptcy Court, subject to the Post-Sale Reserve.

8.      Settlement of Claims

Except as otherwise provided in the Plan, on and after the Effective Date, the Wind Down Administrator may compromise or settle any Claims related to the Wind Down Estate Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for Wind Down Estate Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

9.      Sales of Assets by the Wind Down Estate

The Wind Down Administrator may conduct any sales or liquidations of De Minimis Assets on any terms it deems reasonable, subject to the consent of the Prepetition Secured Parties (with such consent not to be unreasonably withheld), without further order of the Bankruptcy Court.  In lieu of conducting sales or liquidating its assets, with the consent of the Prepetition Secured Parties, the Wind Down Administrator may transfer any Wind Down Estate Assets to the Prepetition Secured Parties free and clear of all liens, claims, and encumbrances after the Effective Date.

10.     Abandonment of Assets by the Wind Down Estate

The Wind Down Administrator may, with the consent of the Prepetition Secured Parties, on no less than 14 days' written notice to the U.S. Trustee, abandon any Wind Down Estate Assets which the Wind Down Administrator determines are burdensome to the Wind Down Estate, including any pending adversary proceeding or other legal action commenced or commenceable by any Debtor prior to the Effective Date; *provided that* if the U.S. Trustee provides a written objection to the Wind Down Administrator prior to the expiration of such 14 day period with respect to the proposed abandonment of any Wind Down Estate Asset, then such property may be abandoned only pursuant to an order by the Bankruptcy Court.

11.     Plan Distributions

a.      Sources of Consideration for Plan Distributions

On the Effective Date, the Debtors will fund the Debtors' distributions under the Plan with (i) the proceeds of the Sale Transaction, subject in all respects to amounts held-back in accordance with the Purchase Agreement, (ii) the Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount, (iii) the Debtors' available Cash on hand, and (iv) with the consent of the DIP Secured Parties, the proceeds of the DIP Facility.  After the Effective Date, other than with respect to funds held in the Professional Fee Escrow Account, the Post-Sale Reserve shall be held in a separate account from any other funds held by the Wind Down Estate.

b.      Professional Fee Escrow Account

The Professional Fee Reserve Amount shall be held in trust in a segregated Professional Fee Escrow Account by the Wind Down Administrator for distributions or payment in accordance with the terms of Article II of the Plan.

33

12.    <u>Corporate Existence</u>

On or after the Effective Date, each of the Debtors will be subject to a Dissolution Transaction.  The equity or membership interests of each Debtor entity that is not subject to a Dissolution Transaction on the Effective Date will vest in the Wind Down Estate pursuant to this Plan.  For the avoidance of doubt, the Debtor entities that are not subject to a Dissolution Transaction on the Effective Date will continue to exist after the Effective Date for the limited purpose of completing the GUC Trust Assets Transfer and the Wind Down Transactions.  Promptly after completing the Wind Down Transactions, such entities shall be dissolved by the Wind Down Administrator.

13.    <u>Dissolution Transactions</u>

On or after the Effective Date, the Debtors or the Wind Down Administrator will enter into such Dissolution Transactions and will take such actions as may be necessary or appropriate to merge, dissolve, or otherwise terminate the corporate existence of the Debtors.  The actions to effect the Dissolution Transactions may include:  (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms as these entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that the Wind Down Administrator determines to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions.

14.    <u>Recourse Solely to Wind Down Estate Assets</u>

All Claims against the Debtors and against the GUC Trust are deemed satisfied, waived, and released as to the Debtors and the GUC Trust, as applicable, in exchange for the treatment of such Claims under the Plan or the distributions made from the GUC Trust, and Holders of Allowed Claims against any Debtor will have recourse solely to the Wind Down Estate Assets (and, in the case of the Prepetition Secured Parties, to the unused amounts, if any, of the Post-Sale Reserve and Professional Fee Escrow Account) for the payment of their Allowed Claims in accordance with the terms of the Plan.  There will be no recourse for claims other than as to non-Debtors.

15.    <u>Cancellation of Existing Securities and Agreements</u>

On the Effective Date, except to the extent otherwise expressly provided in the Plan (including with respect to the Prepetition Credit Agreement Documents), (i) all notes, bonds, debentures, instruments, certificates, credit agreements, indentures, collateral documents, guarantees, filings, recordings, registrations, and other documents and instruments evidencing, securing, or governing Claims or Interests, and any Interests that are not represented by certificates or other instruments, shall be canceled, terminated, released, and surrendered automatically

without any action on the part of any party, (ii) all Liens of any nature or any assets of any Debtor securing, or purporting to secure, such Claims shall be fully, finally, and irrevocably released and extinguished automatically without any action on the part of any party (and (x) the Debtors are hereby irrevocably authorized to make such filings, recordings, registrations, and notifications, and take such other actions, as the Debtors shall deem necessary or advisable to carry out such release and extinguishment and (y) the holders of such Claims shall take such actions and execute such instruments as the Debtors may reasonably request to carry out such release and extinguishment) and (iii) the obligations of the Debtors in respect of such Claims or in any way related thereto or arising therefrom (except with respect to any Indemnification Obligations, which obligations shall be assumed and assigned as set forth in Article V.G of the Plan) shall be deemed satisfied in full, terminated, canceled, released, and of no force or effect against the Debtors or the Wind Down Estate, without any further action on the part of the Debtors, the Wind Down Estate, or any other Person.  Holders of or parties to such canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.  To the extent applicable, the Debtors' corporate charters shall be deemed amended by the Confirmation Order to provide that no nonvoting equity securities will be issued and to otherwise comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, but subject to any applicable provisions of Articles IV and VI of the Plan, the Prepetition Credit Agreement Documents shall continue in effect as between all Debtors and the non-Debtors party thereto until the wind down of the Debtors and the Netherlands Wind Down is complete.  Following completion of the wind down of the Debtors and the Netherlands Wind Down and distribution of the proceeds after the Netherlands Wind Down is complete, if any, to the Prepetition Secured Parties, as provided in Article IV of the Plan, the Prepetition Credit Agreement Documents shall be canceled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect against the Debtors or the Wind Down Estate, without any further action on the part of the Debtors, the Wind Down Estate, or any other Person.  Except as provided in the Plan (including Article VI of the Plan), on the Effective Date, the Prepetition Credit Agent, its respective agents, successors, and assigns shall be automatically and fully discharged of all of their duties and obligations associated with the Prepetition Credit Agreement Documents (as applicable).  The commitments and obligations (if any) of the Prepetition Credit Agreement Lenders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, including, any non-Debtors, or any of their respective successors or assigns under the Prepetition Credit Agreement Documents shall fully terminate and be of no further force or effect on the Effective Date.

16.    <u>Release of Liens</u>

Except for the Wind Down Claims (which include the Prepetition Secured Party Liens securing such Claims), and as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Article III, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate shall be deemed fully released and discharged.  After the wind down of the Debtors and the Netherlands Wind Down is complete and after the proceeds of the

35

Netherlands Asset Sale and Netherlands Liquidation, if any, are indefeasibly distributed in Cash to the Prepetition Secured Parties as provided in Article IV of the Plan, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate on account of the Wind Down Claims shall be deemed fully released and discharged. Notwithstanding anything contained herein to the contrary, until completion of the wind down of the Debtors and the Netherlands Wind Down and distribution of the proceeds after the Netherlands Wind Down is complete, if any, to the Prepetition Secured Parties, as provided in Article IV of the Plan, the Plan shall not operate as a waiver of any right, power or remedy of the Prepetition Agent or Prepetition Lenders, or constitute a waiver of any provision of the Prepetition Credit Agreement Documents in respect of any non-Debtor affiliate of the Debtors party thereto and the obligations of the non-Debtor affiliates thereunder shall remain in full force and effect.

     17.    <u>Corporate Governance, Directors and Officers.</u>

     a.    Certificates of Incorporation and Bylaws

Consistent with the Plan, all existing certificates of incorporation and by-laws will be canceled; accordingly, no new certificates of incorporation and by-laws will be necessary for any Debtors. Certain of the Debtor entities comprising the Wind Down Estate will continue to exist after the Effective Date for the purpose of completing the GUC Trust Assets Transfer and the Wind Down Transactions.

     b.    Directors and Officers

As of the Effective Date, the term of the current members of the boards of directors or boards of managers, as applicable, of KidKraft and its Debtor Affiliates shall expire automatically and each person serving as a director of KidKraft and each of its Debtor Affiliates shall be removed and shall be deemed to have resigned and cease to serve automatically. Consistent with the Plan, each of the Estates will vest in the Wind Down Estate effective as of the Effective Date and, thus, no individuals will serve as directors, officers, or voting trustees after the Effective Date for any Debtors. The Wind Down Administrator will be the sole member, manager, director, officer, or other governing body or controlling authority of each Debtor entity that is not subject to a Dissolution Transaction on the Effective Date.

     18.    <u>Insurance Policies</u>

To the extent that any of the Debtors' insurance policies constitute Executory Contracts, such insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan and shall be assumed by the Debtors and assigned to the Wind Down Estate on the Effective Date. All other insurance policies shall vest in the Wind Down Estate.

     19.    <u>D&O Liability Insurance Policies</u>

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtors shall be deemed to assume and vest in the Wind Down Estate all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant to section 365(a) of the Bankruptcy Code, to the extent they are Executory Contracts. Entry of the Confirmation Order will constitute the

Bankruptcy Court's approval of the Debtors' assumption of each of the D&O Liability Insurance Policies, to the extent they are Executory Contracts. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed, and shall survive the Effective Date. On the Effective Date, all D&O Liability Insurance Policies shall vest in the Wind Down Estate consistent with the Confirmation Order without further order of the Bankruptcy Court.

20.     Preservation of Causes of Action

Except as provided in the Plan, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Wind Down Estate will retain and may enforce any claims, demands, rights, and causes of action that any Estate may hold against any Person to the extent not satisfied, settled, and released under the Plan or otherwise, including the Retained Causes of Action; *provided that*, the Wind Down Estate will not retain any Causes of Action (including Avoidance Actions) that are assigned to Purchaser as Transferred Assets in connection with the Sale Transaction that may be included in the GUC Trust Assets and transferred to the GUC Trust or are transferred to the GUC Trust in accordance with the Plan. The Wind Down Administrator may pursue any such retained claims, demands, rights, or causes of action, as appropriate, in accordance with the best interests of the Wind Down Estate. Except to the extent any such claim is specifically satisfied, settled, and released herein, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to include any Cause of Action on the List of Retained Causes of Action shall not be deemed an admission, denial, or waiver of any claims, demands, rights, or causes of action that the Debtor or Estate may hold against any Person. Except to the extent any such claim is specifically satisfied, settled, and released herein, the Debtor intends to preserve those claims, demands, rights, or causes of action designated as Retained Causes of Action. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.A.20 include any claim or Cause of Action with respect to, or against, a Released Party.

21.     Substitution in Pending Legal Actions

On the Effective Date, the Wind Down Estate or the Wind Down Administrator, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including (but not limited to) (i) pending contested matters or adversary proceedings in the Bankruptcy Court or the CCAA Court, (ii) any appeals of orders of the Bankruptcy Court, and (iii) any state court or federal or state administrative proceedings or equivalent in Canada or any other applicable jurisdiction pending as of the Petition Date. The Wind Down Administrator and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

22.     Effectuating Documents; Further Transactions

The Debtors (prior to the Effective Date) and the Wind Down Administrator (on or after the Effective Date) are authorized to and may issue, execute, deliver, file, or record such contracts,

securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and evidence the terms and conditions of the Plan, the Purchase Agreement, and the Dissolution Transactions, in each case, in the name of and on behalf of any Debtor or the Wind Down Estate, as applicable, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment: (a) any transfer made by the Debtors to the Wind Down Estate; (b) any transfer made by the Debtors and, if applicable, the Wind Down Estate to the Purchaser pursuant to the Plan, the Purchase Agreement, and/or the Sale Order; (c) any sales made by the Wind Down Estate to liquidate such assets in the trust and convert such assets into Cash; (d) the making or assignment of any lease or sublease; (e) any Dissolution Transaction; and (f) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to the Plan.

B.      *Restructuring Support Agreement*

Upon the later of (i) the Effective Date or (ii) the consummation of the Sale Transaction, any surviving obligations under the Restructuring Support Agreement shall terminate on a final basis.

C.      *Global Settlement*

1.      <u>GUC Trust</u>

On the Effective Date, the GUC Trust will be established with the primary purpose of liquidating the GUC Trust Assets and making distributions to GUC Trust Beneficiaries on account of their Allowed General Unsecured Claims.

Subject to and to the extent set forth in the Plan, the Confirmation Order, the GUC Trust Agreement, or any other order of the Bankruptcy Court entered in connection therewith, the GUC Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the terms of the Plan to the extent applicable to the GUC Trust; (b) establish, maintain, and administer the GUC Trust Accounts; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, and protect, as applicable, the GUC Trust Assets (directly or through its professionals or a Disbursing Agent), in accordance with the Plan; (d) subject to the GUC Trust Agreement, the Plan, and the Confirmation Order, as applicable, review, reconcile, settle, or object to all General Unsecured Claims that are not Allowed Claims as of the Effective Date pursuant to the procedures for allowing or disputing Claims prescribed in the Plan; (e) calculate and make distributions of the proceeds of the GUC Trust Assets to Holders of Allowed General Unsecured Claims that are GUC Trust Beneficiaries in accordance with the terms of the Plan and the GUC Trust Agreement and otherwise implement the terms of

4895-8166-4456

the Plan to the extent applicable to the GUC Trust; (f) retain, compensate, and employ professionals to represent or advise the GUC Trust; (g) file, in accordance with the GUC Trust Agreement, appropriate tax returns on behalf of the GUC Trust and pay any and all taxes or other obligations arising in connection therewith; (h) exercise such other powers as may be vested in the GUC Trust under the GUC Trust Agreement and the Plan, or as are deemed by the GUC Trustee to be necessary and proper to implement the provisions of the Plan and the GUC Trust Agreement; and (i) terminate the GUC Trust in accordance with the terms of the GUC Trust Agreement. For the avoidance of doubt, the GUC Trust shall not be empowered with performing any actions designated to the Wind Down Estate created pursuant to Article IV.A of the Plan and shall have no authority to pursue any Claims or Causes of Action against Released Parties or Exculpated Parties.

Notwithstanding anything to the contrary in this Article IV.C, the GUC Trust shall have no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the GUC Trust's purpose as described herein and in the GUC Trust Agreement and as may be reasonably necessary to conserve and protect the GUC Trust Assets and provide for the orderly liquidation and distribution thereof. Accordingly, the GUC Trustee shall, in an orderly manner, liquidate the GUC Trust Assets and make timely distributions pursuant to the Plan and not unduly prolong the duration of the GUC Trust.

The GUC Trust Beneficiaries, who will be treated as grantors and deemed owners for federal income tax purposes, will be holders of GUC Trust Interests. The GUC Trust shall file federal income tax returns for the GUC Trust as a grantor trust pursuant to Section 671 of the Tax Code and the Treasury Regulations promulgated thereunder. The parties shall not take any position on their respective tax returns with respect to any other matter related to taxes that is inconsistent with treating the GUC Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance from the Internal Revenue Service.

The GUC Trust shall be responsible for paying any (i) U.S. Trustee fees accruing in relation to disbursements by the GUC Trust and (ii) taxes related to the GUC Trust Assets or the liquidation thereof. Any professionals hired by the GUC Trustee will be compensated for services in such capacity solely from the GUC Trust Assets or proceeds thereof.

2.      Funding of and Transfer of Assets into the GUC Trust

Except as otherwise provided in the Plan or the Confirmation Order, on the next Business Day following the GUC Settlement Opt-In Election Deadline, the Wind Down Estate shall complete the GUC Trust Assets Transfer, and all such assets shall vest in the GUC Trust on such date, to be administered by the GUC Trustee in accordance with the Plan and the GUC Trust Agreement. Except as set forth in the Plan, the GUC Trust Assets shall be transferred to the GUC Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code. All Cash amounts funded into the GUC Trust from the Debtors shall be funded by the U.S. Debtors.

For all federal and applicable state and local income tax purposes, all Persons (including without limitation the Debtors, the GUC Trustee and the GUC Trust Beneficiaries) will treat the

39

transfers and assignment of the GUC Trust Assets to the GUC Trust for the benefit of the GUC Trust Beneficiaries as (a) a transfer of the GUC Trust Assets directly to the GUC Trust Beneficiaries followed by (b) the transfer of the GUC Trust Assets by the GUC Trust Beneficiaries to the GUC Trust. The GUC Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The GUC Trust Beneficiaries will be treated as the grantors and deemed owners of their allocable portion of the GUC Trust Assets for federal income tax purposes.

The fair market value of the portion of the GUC Trust Assets that is treated for U.S. federal income tax purposes as having been transferred to each GUC Trust Beneficiary will be determined by the GUC Trustee, and all parties (including, without limitation, the GUC Trustee and the GUC Trustee Beneficiaries) must utilize such fair market values determined by the GUC Trustee for federal and applicable state and local income tax purposes.

The GUC Trust's taxable income, gain, loss, deduction or credit will be allocated to the GUC Trust Beneficiaries in accordance with their relative beneficial interests in the GUC Trust during the applicable taxable period. Such allocation will be binding on all parties for federal and applicable state and local income tax purposes, and the parties will responsible for the payment of any federal, state and local income tax due on the income and gain so allocated to them.

The act of transferring the GUC Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the GUC Trust as if the asset or right was still held by the Debtors.

3.     GUC Trustee

Solely with respect to the GUC Trust Assets and the administration of General Unsecured Claims, the GUC Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to fulfill the items identified in the Plan.  Other rights and duties of the GUC Trustee and the GUC Trust Beneficiaries shall be as set forth in the GUC Trust Agreement.

The Committee shall select the GUC Trustee, subject to the consent, not to be unreasonably withheld, of the Debtors and the Prepetition Secured Parties.

4.     GUC Trust Agreement

The GUC Trust Agreement will contain certain provisions to comply with Internal Revenue Service guidance for trusts treated as liquidating trusts.  Among other things, the GUC Trust Agreement will require that the GUC Trust terminate no later than three years from the Effective Date; *provided, however*, that the Bankruptcy Court, upon motion by the GUC Trustee, may extend the term of the GUC Trust for a reasonable finite period if (a) such extension is necessary to the purpose of the GUC Trust, (b) the GUC Trustee receives an opinion of counsel or a ruling from the IRS stating that such an extension would not adversely affect the status of the GUC Trust as a liquidating trust for federal income tax purposes, and (c) such an extension is obtained within the six (6) month period prior to the GUC Trust's third (3rd) anniversary or the

end of the immediately preceding extension period, as applicable; *provided, however*, each finite extension may be no more than six months (and such extension shall not exceed a total of four extensions unless the GUC Trustee received a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the GUC Trust as a grantor trust for U.S. federal income tax purposes. The GUC Trust Agreement generally will also provide for, among other things: (i) the payment of reasonable and documented compensation to the GUC Trustee; (ii) the payment of other expenses of the GUC Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their compensation; (iv) the investment of Cash by the GUC Trustee within certain limitations; (v) the preparation and filing of appropriate tax returns and other reports on behalf of the GUC Trust and the Debtors and the payment of taxes or other obligations owed by the GUC Trust, if any; (vi) the distribution at least annually to the GUC Trust Beneficiaries the GUC Trust's net Cash income and all other Cash proceeds received by the GUC Trust in excess of an amount reasonably necessary to meet Claims and contingent liabilities and to maintain the value of the GUC Trust Assets; (vii) the orderly liquidation of the GUC Trust Assets; and (viii) any reconciliation, administration, objection, resolution, and distribution on account of General Unsecured Claims. For the avoidance of doubt, any payments to be made by the GUC Trust shall be paid solely from the GUC Trust Assets or the proceeds thereof.

Additional terms of the GUC Trust and Obligations of the GUC Trustee, if any, will be addressed in the Plan Supplement or GUC Trust Agreement, as applicable.

5.      Settlement of Claims and Causes of Action

Except as otherwise provided in the Plan or the GUC Trust Agreement, on and after the Effective Date, the GUC Trustee may compromise or settle any General Unsecured Claims or any Causes of Action that are GUC Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for GUC Trust Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

6.      Recourse Solely to GUC Trust Assets

All Claims against the Debtors are deemed satisfied, waived, and released as to the Debtors in exchange for the treatment of such Claims under the Plan, and Holders of Allowed General Unsecured Claims against any Debtor will have recourse solely to the GUC Trust Assets for the payment of their Allowed General Unsecured Claims, and only if such Holder made a GUC Settlement Opt-In Election, all in accordance with the terms of the Plan and the GUC Trust Agreement. A Holder of Allowed General Unsecured Claims that does not make a GUC Settlement Opt-In Election will receive no recovery or distribution on account of such claims, as set forth in Article III.B.4 of the Plan.

Potential Avoidance Actions against a Holder of General Unsecured Claims that is listed on Schedule 1 to the Global Settlement Term Sheet will (i) be purchased by the Purchaser as part of the Sale Transaction, subject to the occurrence of the GUC Settlement Election Opt-In Deadline, (ii) be held by the Wind Down Administrator pending the occurrence of the GUC Settlement

Election Opt-In Deadline, (iii) to the extent any such Holder does not make a GUC Settlement Opt-In Election, will be conveyed to the Purchaser on the next Business Day following the GUC Settlement Opt-In Election Deadline, and (iv) will not be pursued by the Purchaser. **For the avoidance of doubt, if a Holder of General Unsecured Claims that is listed on Schedule 1 makes a GUC Settlement Opt-In Election, any potential Avoidance Actions against such Holder will not be conveyed to the Purchaser and instead will become GUC Trust Assets, and such potential Avoidance Actions may be pursued against such Holder.**

       7.     <u>Distribution of GUC Trust Assets</u>

The GUC Trust Assets, including any proceeds received by the GUC Trust on account of the prosecution or settlement of any commercial tort claims or Avoidance Actions that are GUC Trust Assets, net of any GUC Trust expenses (including professional fees) not covered by the GUC Trust Expense Reserve, shall be distributed at least annually as follows:

(i) Holders of Allowed General Unsecured Claims that are GUC Trust Beneficiaries other than the Prepetition Secured Parties and/or DIP Secured Parties shall receive their Pro Rata share of 100% of the GUC Trust Assets up to $1,000,000; and

(ii) thereafter, all Holders of Allowed General Unsecured Claims that are GUC Trust Beneficiaries (including the Prepetition Secured Parties' Deficiency Claims) shall receive their Pro Rata share of 100% of the GUC Trust Assets.

       8.     <u>MidOcean Waiver of Claims and Cash Contribution</u>

On the Effective Date, MidOcean will (i) contribute $100,000 in Cash to the GUC Trust (the "***Sponsor Cash Contribution***") and (ii) waive any General Unsecured Claims it may have against the Debtors, including any claims under the subordinated note and services agreement (the "***Sponsor Claims Waiver***"); *provided*, *however*, that nothing in the foregoing shall result in any of the Debtors' directors that are MidOcean designees waiving or releasing any rights to assert indemnification claims against the Debtors or any of its insurance carriers or any rights as beneficiaries of any insurance policies.

MidOcean is a Released Party under the Plan and has provided valuable consideration to the Estates in the form of the Sponsor Cash Contribution and the Sponsor Claims Waiver. Accordingly, notwithstanding anything set forth in the Plan, neither the GUC Trust nor the Debtors (nor any entity on behalf of the Debtors' Estates, including the Wind Down Estate) shall bring or be entitled to bring any claims or Causes of Action against (i) the Debtors' current and former directors and officers appointed and/or designated by MidOcean or (ii) MidOcean or any of its current and former Affiliates or it or its current and former Affiliates' current and former directors, managers, officers, employees, managed accounts and funds, predecessors, successors, assigns, subsidiaries, equity holders, members, agents, attorneys, accountants, investment bankers, consultants, and other professionals, each solely in their capacity as such, and all such claims shall be deemed and hereby are waived and released, and each of the foregoing Persons shall be a "Released Party" for purposes of the Plan.

42

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on a schedule of assumed contracts by the Purchaser; (ii) is designated as a Transferred Contract pursuant to the Purchase Agreement on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (iii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iv) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (v) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (vi) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order and/or Sale Approval Order, as applicable, shall constitute the Bankruptcy Court's order approving the assumptions, assumptions and assignments, or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract or Unexpired Lease comprising a Transferred Contract shall re-vest in and be fully enforceable by the Purchaser in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to, with the consent of the Purchaser, alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Effective Date on no less than two business days' notice to the applicable non-Debtor counterparties.

Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court in accordance with the Bar Date Order. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Wind Down Estate, the Estates, or their property (as applicable), without the need for any objection by the Wind Down Estate or Wind Down Administrator (as**

**applicable), or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease, as reflected on the applicable Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the proposed cure amount (if any) in Cash by the Debtors, the Wind Down Estate, or for the Transferred Contracts, by the Purchaser, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

1.    Cure of Defaults for Transferred Contracts Under the Purchase Agreement

Consistent with the Purchase Agreement and subject to the terms and conditions therein, within three business days after the Petition Date the Debtors shall deliver a Cure Notice, in form and substance reasonably acceptable to Buyer, of potential assumption and assignment and proposed cure of the Transferred Contracts to the applicable counterparty (each a "**Contract Counterparty**"), which shall specify: (a) that such contract is contemplated to be assumed and assigned to Purchaser as a Transferred Contract in connection with the Sale Transactions; (b) the proposed Cure Claim with respect to each Transferred Contract; (c) that each respective Contract Counterparty may file an objection (a "**Contract Objection**") to the proposed assumption and assignment of the applicable Transferred Contract or the proposed Cure Claim, if any. Such Contract Objection must (i) be in writing; (ii) comply with the Federal Rules of Bankruptcy Procedure and any applicable local rules of the U.S. Bankruptcy Court; (iii) be Filed with the Bankruptcy Court, together with proof of service, on or before 5:00 p.m. (Central Time) on the date that is 21 days after the date the Debtors delivered the Cure Notice (the "**Cure Notice Objection Deadline**"); (iv) be served, so such objection is actually received on or before the Cure Notice Objection Deadline on counsel to the Debtors, counsel to the DIP Secured Parties, counsel to the Purchaser, and the Office of the U.S. Trustee for the Northern District of Texas; and (v) state with specificity the grounds for such objection, including, without limitation, the asserted amount of the fully liquidated Cure Claim and the legal and factual bases for any unliquidated portion of the Cure Claim that the Contract Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the applicable Transferred Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise to any such defaults. If a Contract Counterparty files a Contract Objection in a manner that is consistent with the requirements set forth above and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such Contract Objection will be determined at the Confirmation Hearing or such other date determined by the U.S. Bankruptcy Court.

44

2.     Cure of Defaults for Other Assumed Executory Contracts and Unexpired Leases

For all other Executory Contracts or Unexpired Leases not deemed "Transferred Contracts," at least 14 days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed cure amounts to the applicable third parties. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount paid or proposed to be paid by the Debtors or the Wind Down Estate to such counterparty must be filed with the Bankruptcy Court and served on and actually received by the Debtors at least 7 days before the Confirmation Hearing. **Any counterparty that fails to timely object to the proposed assumption or proposed cure amount shall be deemed to have assented to such assumption and cure amount, and any such objection shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtors or the Wind Down Estate, without the need for any objection by the Wind Down Estate or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**

Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Wind Down Estate of the amount set forth in the applicable Cure Notice or, if the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is determined by a Final Order to be greater than the applicable amount set forth in the Cure Notice, the amount of such Allowed Cure Claim; *provided*, *however*, that following entry of a Final Order resolving any such dispute, the applicable Debtor shall, with the consent of the Purchaser, have the right to reject any Executory Contract or Unexpired Lease within thirty (30) days of such resolution; *provided further, however*, that nothing herein shall prevent the Wind Down Estate from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim. The Wind Down Estate also may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

If there is any dispute regarding any Cure Claim, the ability of the Wind Down Estate or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Wind Down Estate, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, in each case with the consent of the Purchaser. Notwithstanding the foregoing, to the extent the dispute relates solely to any Cure Claims, the applicable Debtor may, with the consent of the Purchaser, assume the Executory Contract or Unexpired Lease prior to the resolution of any such dispute; *provided*, *however*, that the Debtor reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Claim by the contract counterparty; *provided further*, *however*, that following entry of a Final Order resolving any such dispute, the applicable Debtor shall, with the consent of the Purchaser, have the right to reject any Executory Contract or Unexpired Lease within 30 days of such resolution.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or

ownership interest composition or other bankruptcy or insolvency-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan or the Sale Transaction Documents, shall constitute an admission by the Debtors, the Wind Down Estate, the Purchaser, or the Wind Down Administrator (as applicable) that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor, Wind Down Estate, the Purchaser, or the Wind Down Administrator (as applicable) has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Wind Down Estate, the Purchaser, or the Wind Down Administrator (as applicable) shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

F.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

G.      *Indemnification Obligations*

All Indemnification Obligations shall not be discharged or impaired by Confirmation of the Plan or entry of the Confirmation Order and shall be assumed by the Wind Down Estate and remain intact, irrevocable, and shall survive the entry of the Confirmation Order and Effective Date of the Plan on terms no less favorable to such current and former directors, officers, managers,

46

equity holders, employees, attorneys, accountants, investment bankers, and other professionals of any of  the Debtors and such current and former directors', officers', and managers' respective Affiliates than the Indemnification Obligations in place prior to the Petition Date, and to the extent any such Indemnification Obligations are obligations of a non-Debtor Affiliate of any of the Debtors, such Indemnification Obligations shall be assigned on the Effective Date to the Wind Down Estate.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind Down Estate or the GUC Trust (as applicable).

a.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

b.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date,

and any reasonable and documented compensation and expense reimbursement claims (including reasonable and documented attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Purchaser, the Wind Down Estate, or the Wind Down Administrator (as applicable).

c.      No Liability

Except on account of gross negligence, fraud, or willful misconduct, the Disbursing Agent shall have no (a) liability to any party for actions taken in accordance with the Plan or in reliance upon information provided to it in accordance with the Plan or (b) obligation or liability to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a distribution is made or who does not otherwise comply with the terms of the Plan.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Property*

1.    Delivery of Distributions

a.      Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims and Interests maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims and Interests.  The Disbursing Agent shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

b.      Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors, the Purchaser, the Wind Down Administrator, or the GUC Trustee (as applicable).

c.      Delivery of Distributions on Secured Party Claims.

The Prepetition Credit Agreement Agent shall be deemed to be the Holder of all Secured Party Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Claims shall be made to the Prepetition Credit Agreement Agent.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, the Prepetition Credit Agreement Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed Secured Party Claims in accordance with the terms of the Prepetition Credit Agreement Documents, subject to any modifications to such distributions in accordance with the terms of the Plan.

4895-8166-4456

d.     Delivery of Distributions on DIP Claims

The DIP Agent shall be deemed to be the Holder of all DIP Claims for purposes of distributions to be made hereunder, and all distributions on account of such DIP Claims shall be made to the DIP Agent. As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of DIP Claims in accordance with the terms of the DIP Facility Documents, subject to any modifications to such distributions in accordance with the terms of the Plan.

e.     Minimum Distributions

No Distribution shall be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the Holder of such Claim on the applicable Distribution Date has an economic value of less than $250.

2.     <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors or the Wind Down Estate, as applicable, shall have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall be redistributed Pro Rata (it being understood that, for purposes of this Article VI.C, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed) without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

D.     *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, Wind Down Administrator, GUC Trustee, Disbursing Agent, and any applicable withholding agent shall comply with all applicable tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions until receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. For these purposes, all distributions made on behalf of the Debtors pursuant to the Plan shall if applicable be first in satisfaction of the portion of Claims that are not subject to any withholding tax obligation. All Persons holding Claims against any Debtor shall be required to provide any additional information reasonably necessary for the Debtors, Wind Down Administrator, GUC Trustee, Disbursing Agent, and any applicable withholding agent to comply with all tax

49

withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors, Wind Down Estate, Wind Down Administrator, GUC Trustee, and Disbursing Agent (as applicable) reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

E.      *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

F.      *Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentation shall be deemed to be cancelled pursuant to Article IV of the Plan, except to the extent otherwise provided in the Plan.

G.      *Allocations*

The aggregate consideration to be distributed to each Holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.

H.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.      *Setoffs and Recoupment*

The Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable), may, but shall not be required to, set off against, or recoup from, any Allowed Claim (other than an Allowed General Unsecured Claim) against a Debtor of any nature whatsoever that the applicable Debtor, Wind Down Estate, Wind Down Administrator, GUC Trust, or GUC Trustee (as applicable) may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim against a Debtor hereunder shall constitute a

50

waiver or release by the applicable Debtor, Wind Down Estate, Wind Down Administrator, GUC Trust, or GUC Trustee (as applicable) of any such Claim it may have against the Holder of such Allowed Claim.

J.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable), shall reduce in full an Allowed Claim (including any applicable Cure Claim of a Transferred Contract paid by the Purchaser), and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, Wind Down Estate, the Wind Down Administrator, GUC Trust, or the GUC Trustee (as applicable); *provided that* the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor, Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      Claims Payable by Insurers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided that* the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable), shall provide 21 days' notice to the Holder of such Claim prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.

3.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
# PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Allowance of Claims*

On or after the Effective Date, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

B.    *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable), by order of the Bankruptcy Court, shall together have the sole authority to: (1) File, withdraw, or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced.

C.    *Adjustment to Claims or Interests Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register without the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) having to File an application, motion, complaint, objection, or any

4895-8166-4456

other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Time to File Objections to Claims*

Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

E.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action (other than Causes of Action that constitute a Transferred Asset under the Purchase Agreement) against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Wind Down Estate or the Wind Down Administrator (as applicable).

**ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS DISPUTED, CONTINGENT, OR UNLIQUIDATED, AND FOR WHICH NO PROOF OF CLAIM HAS BEEN TIMELY FILED, SHALL BE DEEMED DISALLOWED AND SHALL BE EXPUNGED WITHOUT FURTHER ACTION AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

F.    *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

G.    *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan to the contrary, no payment or distribution of any kind or nature provided under the Plan shall be made to the extent that all or any portion of any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as

set forth in Article VII, unless and until such Disputed Claim becomes an Allowed Claim; *provided that* any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

H.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

In accordance with Bankruptcy Rule 9019, the Plan constitutes the good-faith compromise and settlement among the Global Settlement Parties regarding the matters set forth in the Global Settlement Term Sheet, and reflects and implements such compromise and settlement, including by the establishment and funding of the GUC Trust.  Such compromise and settlement is made in exchange for consideration and is in the best interests of the Global Settlement Parties and the Holders of General Unsecured Claims, is within the reasonable range of possible litigation outcomes, is fair, equitable, and reasonable, and is an essential element of the resolution of these Chapter 11 Cases.

4895-8166-4456

B.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Sale Order, the Plan and/or the Plan Supplement, the distributions, rights, and treatment that are provided in the Sale Order or the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Wind Down Estate or the Wind Down Administrator, as applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property, including, without limitation, the Transferred Assets, shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.    *Term of Injunctions or Stays*

Unless otherwise provided herein, the Confirmation Order, the Confirmation Recognition Order or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, or ordered by the CCAA Court in the CCAA Recognition Proceeding, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

D.    *Release of Liens*

**Except as otherwise specifically provided in the Sale Order (solely with respect to any Permitted Encumbrances and Assumed Liabilities), the Plan, and/or the Plan Supplement, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, including, without limitation, the Transferred Assets, shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind Down Estate or the GUC Trust and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court or the CCAA Court and without any action or Filing being required to be made by the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable).**

E.    *Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released and discharged by the Debtors, their Estates, and the Wind Down Estate (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, their Estates, or the Wind Down Estate), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their Estates, the Wind Down Estate, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Agreement Documents, the Note Purchase Agreement Documents, the Professional Services Agreement Documents, the DIP Facility Documents (and any payments or transfers in connection therewith), the Sale Transaction, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Sale Order, the Plan, the Confirmation Order, or Confirmation Recognition Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP Facility Documents, the Sale Transaction, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the CCAA Recognition Proceedings, the filing of the Chapter 11 Cases, the filing of the CCAA Recognition Proceedings, the Sales Process, the Global Settlement, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan and the Sales Process, including the issuance or distribution of any property pursuant to the Plan and the Sales Process, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the Restructuring or the assumption of the Indemnification Obligations as set forth in the Plan; (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action arising from any obligations of any party under the Purchase Agreement; (iii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud or willful misconduct; (iv) nothing in this

Article VIII.E shall, nor shall it be deemed to, release any Causes of Action specifically enumerated in the List of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

F.    *Releases by Releasing Parties*

As of the Effective Date, each Releasing Party hereby releases and discharges each Debtor, Estate, Wind Down Estate, and Released Party from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Estate, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party or its estate, heirs, executors, administrators, successors, or assigns would have been legally entitled to assert in his, her, or its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their Estates, the Wind Down Estate, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Agreement Documents, the Note Purchase Agreement Documents, the Professional Services Agreement Documents, the DIP Facility Documents (and any payments or transfers in connection therewith), the Sale Transaction, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Sale Order, the Plan, the Confirmation Order, or the Confirmation Recognition Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP Facility Documents, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the CCAA Recognition Proceedings, the filing of the Chapter 11 Cases, the filing of the CCAA Recognition Proceedings, the Sales Process, the Global Settlement, the pursuit of

Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan and the Sales Process, including the issuance or distribution of any property pursuant to the Plan and the Sales Process, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that except as expressly provided under the Plan, the foregoing releases shall not release obligations of the Debtors on account of any Allowed Claims that are treated under the Plan.  Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.F do not release any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the Restructuring or the Global Settlement or the assumption of the Indemnification Obligations as set forth in the Plan; (ii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action arising from any obligations of any party under the Purchase Agreement; (iii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct; and (iv) nothing herein shall, nor shall it be deemed to, release any of the non-Debtor Affiliates of the Released Parties party to the Prepetition Credit Agreement Documents from the Wind Down Claims.  For the avoidance of doubt, nothing in this Article VIII.F shall, nor shall it be deemed to, release any Causes of Action specifically enumerated in the List of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

G.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Sale Process, the Sale Transaction, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to the Plan, or the Restructuring, or any related contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement

contemplated by the Plan or the reliance by any Person on the Plan or the Confirmation Order or Confirmation Recognition Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Sale Process, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the CCAA Recognition Proceedings, the filing of the Chapter 11 Cases, the filing of the CCAA Recognition Proceedings, the Sales Process, the Global Settlement, solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan and the Sales Process, including the issuance of or distribution of any property pursuant to the Plan and the Sales Process, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related to the foregoing, except for claims related to any act or omission that is determined in a Final Order to have constituted fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Confirmation Order shall provide that the Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, nothing in this Article VIII.G shall, nor shall it be deemed to, exculpate any Exculpated Party from any Causes of Action (i) arising from any obligations of any party under the Purchase Agreement; or (ii) specifically enumerated in the List of Retained Causes of Action.

H.     *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released pursuant to Article VIII.E or Article VIII.F, discharged pursuant to Article VIII.B, or are subject to exculpation pursuant to Article VIII.G, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind Down Estate, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property, including, without limitation, the Transferred Assets, or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; or (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of

4895-8166-4456

or in connection with or with respect to any such Claims, Interests, or Causes of Action. Notwithstanding anything to the contrary in the foregoing, this injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action in the Bankruptcy Court to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.  Subject in all respects to Article XI, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the CCAA Recognition Proceedings, the Debtors, the Wind Down Estate, the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Sale Process, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the CCAA Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim or Cause of Action of any kind, including negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such entity or person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XI, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

I.      *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind Down Estate or the Wind Down Administrator (as applicable) or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind Down Estate or the Wind Down Administrator (as applicable), or another Entity with whom the Wind Down Estate or the Wind Down Administrator (as applicable) have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable), unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on

or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.    *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

L.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

M.    *Document Retention.*

On and after the Effective Date, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee (as applicable) may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind Down Estate or the Wind Down Administrator (as applicable).

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that the following conditions, as determined by the Debtors with the consent of the DIP Agent, the Prepetition Secured Parties, and the Purchaser shall have been satisfied (or waived pursuant to the provisions of Article IX.C of the Plan):

1.    the Restructuring Support Agreement shall not have been breached or terminated and shall be in full force and effect;

2.    the Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code;

3.    a Final DIP Approval Order shall have been entered by the Bankruptcy Court and the Final DIP Recognition Order shall have been entered by the CCAA Court, and each shall not have been breached or terminated, shall be in full force and effect, and no stay thereof shall be in effect;

4.    the Purchase Agreement shall have been executed by the parties thereto, shall not have been breached or terminated and shall be in full force and effect;

5.    all provisions, terms, and conditions hereof shall have been approved in the Confirmation Order;

6.    the Administrative Expense Claim, Priority Tax Claim, and Other Priority Claim Backstop Amount shall have been funded by cash on hand of the Debtors and the proceeds of the DIP Facility into a reserve account and shall be added to the outstanding obligations under the DIP Facility (less cash on hand);

7.    the Special Committee's investigation shall have concluded; and

8.    a motion (including any exhibits, schedules, amendments, modifications or supplements thereto) shall have been filed in the CCAA Recognition Proceedings seeking the issuance of the Sale Recognition Order pursuant the Purchase Agreement and consistent with the terms of the Restructuring Support Agreement and the Restructuring Support Agreement Documentation.

B.    *Conditions Precedent to the Effective Date*

It shall be a condition to the occurrence of the Effective Date that the following conditions, as determined by the Debtors with the consent of the DIP Agent, the Prepetition Secured Parties, and the Purchaser shall have been satisfied (or waived pursuant to the provisions of Article IX.C of the Plan):

1.    the Restructuring Support Agreement shall not have been breached or terminated and shall be in full force and effect;

2.    the Confirmation Order and Confirmation Recognition Order shall have been entered and neither the Confirmation Order nor the Confirmation Recognition Order shall have been stayed, modified, or vacated on appeal;

3.    the Sale Order shall have been entered (whether or not included as a part of the Confirmation Order and Confirmation Recognition Order, as applicable), and shall not have been stayed, modified, or vacated on appeal;

4.    the Sale Transaction (including with respect to the sale of the Canadian Transferred Assets to Purchaser pursuant to the CCAA Recognition Proceedings) shall have been consummated in accordance with the terms of the Purchase Agreement;

5.    a Final DIP Approval Order shall have been entered by the Bankruptcy Court and Final DIP Recognition Order shall have been entered by the CCAA Court, and each shall not have been breached or terminated, shall be in full force and effect, and no stay thereof shall be in effect;

6.    the Professional Fee Escrow Account shall be funded using cash on hand of the Debtors, proceeds of the DIP Facility, or proceeds of the Sale Transaction, as applicable, in an amount equal to the Professional Fee Reserve Amount;

7.    all required governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

8.    all documents and agreements necessary to implement the Plan and the Restructuring shall have been (a) tendered for delivery and (b) effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements;

9.    the Bankruptcy Court shall have approved the Plan's releases and such approval shall have been recognized and given effect in Canada by the CCAA Court;

10.    all Restructuring Expenses shall have been paid in Cash in full;

11.    the GUC Trust shall have been created and funded in accordance with the Plan;

12.    the Post-Sale Reserve shall have been funded using cash on hand of the Debtors, proceeds of the DIP Facility, or the Sale Transaction proceeds, as applicable; and

13.    the Foreign Sale Reserve shall have been funded using Sale Transaction proceeds and distributed to the Netherlands Subsidiaries.

C.    *Waiver of Conditions*

The conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan set forth in Article IX.A and Article IX.B may be amended, modified, supplemented, or waived in writing by mutual agreement of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, and the Purchaser without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained herein, in the Global Settlement, and in the Restructuring Support Agreement, the Debtors reserve the right to alter, amend, or modify the

4895-8166-4456

Plan, subject to the consent of the Prepetition Secured Parties, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the restrictions on modifications set forth in the Plan and the Restructuring Support Agreement, the Debtors expressly reserve their rights to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

Subject to the conditions and limitations set forth in the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (iv) be used by the Debtors or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims; *provided that*, the foregoing reservation of rights shall not in any way amend, nullify, or void any action, act, or right ratified upon the Bankruptcy Court's entry of the Sale Approval Order.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured, Unsecured, or subordinated status, or amount of any Claim or Interest, including the

resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections relating to any of the foregoing;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

5.      consider any modifications of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, the Confirmation Order, the Sale Approval Order or any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Sale Approval Order in each case, to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, the Sale Approval Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Sale Approval Order in such manner as may be necessary or appropriate to consummate the Plan;

6.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.      adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor, the GUC Trust, or GUC Trustee;

8.      adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

9.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

10.     enter and enforce any order for the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code, including for the avoidance of doubt the Sale Approval Order;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

4895-8166-4456

12.     adjudicate, decide, or resolve any dispute and all matters related to the Sale Transaction and Sale Transaction Documents;

13.     adjudicate, decide, or resolve any dispute and all matters arising under the GUC Trust Agreement;

14.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

15.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

16.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII of the Plan;

17.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

18.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or the Sale Approval Order;

19.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein, including any Restructuring Transactions;

20.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.     hear and determine matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     hear and determine matters concerning section 1145 of the Bankruptcy Code;

23.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute or matter relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

24.     enforce all orders previously entered by the Bankruptcy Court;

25.     enter a final decree concluding or closing the Chapter 11 Cases;

26.     enforce the injunction, release, and exculpation provisions set forth in Article VIII of the Plan;

4895-8166-4456

27.     hear any other matter not inconsistent with the Bankruptcy Code; and

28.     the CCAA Court shall retain jurisdiction over the CCAA Recognition Proceedings and all matters, arising out of, or related to, the CCAA Recognition Proceedings including the orders of the CCAA Court.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, the Confirmation Order, and the Sale Approval Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Wind Down Estate, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs.  Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests.

D.     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor,

4895-8166-4456

administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, the Wind Down Estate, the Wind Down Administrator, the GUC Trust, or the GUC Trustee as applicable, shall be served on:

| | |
|---|---|
| **Debtors or the Wind Down Estate** | **KidKraft Inc.**<br>4630 Olin Road<br>Dallas, TX 75244<br>Attn: Geoffrey Walker |
| **Attorneys to the Debtors** | **Vinson & Elkins LLP**<br>2001 Ross Avenue, Suite 3900<br>Dallas, TX 75201<br>Attn: William L. Wallander<br>       Matthew D. Struble<br>       Kiran Vakamudi<br><br>and<br><br>**Vinson & Elkins LLP**<br>1114 Avenue of the Americas, 32nd Floor<br>New York, NY 10036<br>Attn: David S. Meyer<br>       Lauren R. Kanzer |
| **Wind Down Administrator** | **SierraConstellation Partners, LLC**<br>3090 Olive St., 3rd Floor<br>Dallas, TX 75219<br>Attn: Carl Moore |
| **GUC Trustee** | **Jiangang Ou, Esq.**<br>1222 Howard Lane<br>Bellaire, Texas 77401 |
| **United States Trustee** | **Office of the United States Trustee for the Northern District of Texas**<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Attn: Meredyth Kippes |
| **Prepetition Credit Agreement Agent and DIP Agent** | **GB Funding, LLC**<br>101 Huntington Avenue, Suite 1100<br>Boston, Massachusetts 02199 |

4895-8166-4456

|  | Attn:  David Braun |
|  | Kyle Shonak |

| **Counsel to the Prepetition Credit Agreement Agent and DIP Agent** | **Katten Muchin Rosenman LLP**<br>50 Rockefeller Plaza<br>New York, NY 10020<br>Attn:  Cindi M. Giglio<br>Lucy F. Kweskin |
| **Purchaser** | **Backyard Products LLC**<br>317 S. Main Street<br>Ann Arbor, MI  48104<br>Attn:  Thomas van der Meulen |
| **Counsel to Purchaser** | **King & Spalding LLP**<br>1185 6th Avenue<br>New York, NY 10036<br>Attn:  Spencer Stockdale<br>Michael Fishel<br>Jeff Dutson |
| **MidOcean** | **MidOcean Partners**<br>245 Park Avenue<br>38th Floor<br>New York, NY 10167<br>Attn:  Daniel Penn |
| **Counsel to MidOcean** | **Gibson Dunn & Crutcher LLP**<br>200 Park Avenue<br>New York, NY 10166<br>Attn:  Andrew Herman |

F.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court or the CCAA Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan, the Confirmation Order, the Confirmation Recognition Order or the Sale Order shall remain in full force and effect in accordance with their terms.

G.   *Entire Agreement*

Except as otherwise indicated, and without limiting the effectiveness of the Global Settlement and the Restructuring Support Agreement and any related agreements thereto, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.   *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.stretto.com/kidkraft or the Bankruptcy Court's website at https://www.txnb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.   *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided that* any such alteration or interpretation shall be acceptable to the Debtors, the DIP Agent, the Prepetition Secured Parties, and the Purchaser. Notwithstanding any such alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors', the Prepetition Secured Parties', and the Purchaser's consent; and (3) nonseverable and mutually dependent.

J.   *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities (if any) offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Wind Down Estate or Wind Down Administrator (as applicable) will have any liability for the violation

of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities (if any) offered and sold under the Plan and any previous plan.

K.     *Request for Expedited Determination of Taxes*

The Debtors, the Wind Down Estate, the Wind Down Administrator, or the GUC Trustee, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

L.     *Closing of Chapter 11 Cases*

The Wind Down Estate or the Wind Down Administrator (as applicable) shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to issue a final decree closing the Chapter 11 Cases and file materials with the CCAA Court to terminate the CCAA Recognition Proceedings.

M.     *No Stay of Confirmation Order*

The Confirmation Order and Confirmation Recognition Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

N.     *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors,' Wind Down Estate's, or the Wind Down Administrator's (as applicable) right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court or the Noticing and Claims Agent prior to the Confirmation Date.

O.     *Dissolution of Statutory Committees*

On the Effective Date, any statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties, and responsibilities arising from, or related to, the Chapter 11 Cases.

\* \* \* \*

4895-8166-4456

Respectfully submitted, as of the date first set forth below,

Dated:     June 20, 2024
          Dallas, Texas

                             KIDKRAFT, INC.
                             on behalf of itself and all other Debtors


                             */s/ Geoffrey Walker*
                             Geoffrey Walker
                             President & Chief Executive Officer

## Exhibit B

**Sale Approval Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-80045-mvl11 |
| | § | |
| **KIDKRAFT, INC.,** *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | Re: Docket No. 28, 29, 54, 220 |

**ORDER (I) AUTHORIZING
THE SALE OF THE DEBTORS' ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES PURSUANT
TO 11 U.S.C. §§ 105 AND 363, (II) APPROVING
THE PURCHASE AGREEMENT, (III) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are: KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc. (4302). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 4630 Olin Road, Dallas, TX 75244.

Upon the *Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 220] (as it may be

amended, altered, modified, or supplemented, and including all exhibits and supplements thereto,

the "***Plan***")[2] filed by the above-captioned debtors and debtors in possession (collectively, the

"***Debtors***"), which contemplates entry of an order (this "***Sale Order***"):  (a) authorizing and

approving the applicable Debtors' proposed sale of all of their respective right, title, and interest

in, to, and under the Transferred Assets to Backyard Products, LLC, a Delaware limited liability

company ("***Backyard***") or, as applicable, any Designated Buyer designated in accordance with the

Purchase Agreement (Backyard or such Designated Buyer, as applicable, the "***Buyer***") free and

clear of all Liens, Claims, Interests (each as defined herein), and Encumbrances (as defined in the

Purchase Agreement) (with the sole exception of any Permitted Encumbrances and Assumed

Liabilities), in accordance with the terms and conditions contained in that certain Asset Purchase

Agreement, dated as of April 25, 2024, by and among certain of the Debtors and Backyard,

substantially in the form attached hereto as **<u>Exhibit 1</u>** (as may be amended or otherwise modified

from time to time and including all related documents, exhibits, schedules, and agreements thereto,

collectively, the "***Purchase Agreement***," and the proposed sale contemplated thereunder, the

"***Sale***") and the other transactions contemplated thereby; (b) approving the Purchase Agreement

and the other Sale Transaction Documents; (c) authorizing the assumption and assignment to the

Buyer of the Transferred Contracts, including the assignment of any applicable Transferred

Contracts that were entered into after the Petition Date; and (d) granting related relief; and the

Court having reviewed and considered the Plan and all relief related thereto and any objections

thereto; and upon the full record in support of the relief requested by the Debtors in the Plan; and

the Court having found that the relief requested in the Plan is in the best interests of the Debtors'

---

[2]    Capitalized terms utilized herein but not otherwise defined shall have the meanings ascribed to them in the Plan
or the Purchase Agreement (as defined herein), as the context makes applicable.

4891-1492-7555

Estates, their creditors, and all other parties in interest; and the Court having heard the statements

in support of the relief requested in the Plan at a hearing before this Court on June 21, 2024 (the

"**Combined Hearing**"); and the Court having confirmed the Plan and entered the *Findings of Fact,*

*and Conclusions of Law, and Order Confirming the Debtors' Joint Prepackaged Chapter 11 Plan*

substantially contemporaneously herewith (the "**Confirmation Order**"); and the Court having

determined that the legal and factual bases set forth in the Plan, the *Declaration of Geoffrey Walker*

*in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 31], the *Declaration of*

*Ajay Bijoor, Managing Director of Robert W. Baird & Co. Incorporated, in Support of (I) the*

*Debtors' Motion to Obtain Postpetition Debtor in Possession Financing and (II) the Sale Process*

[Docket No. 32], and the *Declaration of Ajay Bijoor, Managing Director of Robert W. Baird &*

*Co. Incorporated, in Support of (I) the Sale Transaction and (II) the Bid Protections* [Docket No.

188], and at the Combined Hearing, establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.   <u>General</u>. The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to rule 7052 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), made applicable to these chapter 11 cases pursuant to

Bankruptcy Rule 9014.   To the extent that any of the following findings of fact constitute

conclusions of law, they are adopted as such.   To the extent that any of the conclusions of law

constitute findings of fact, they are adopted as such.

B.   <u>Jurisdiction and Venue</u>. The Court has jurisdiction over this matter pursuant to

28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The matters addressed in this Sale Order constitute a "core" proceeding pursuant to 28 U.S.C. § 157(b).

C.     Bases for Relief. The statutory and other legal bases for the relief provided herein are sections 105(a), 363, 365, 503, 507, 1123, 1129, and 1146 of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 3020(e) (to the extent applicable), 6004, 6006, 9007, 9008, and 9014, the Plan and the Confirmation Order. The consummation of the Sale and the other transactions contemplated by the Purchase Agreement and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Local Rules**"), and the *General Order Regarding Procedures for Complex Chapter 11 Cases* (the "**Complex Case Procedures**"), and the Debtors and the Buyer have complied with all of the applicable requirements of such sections and rules in respect of such transactions.

D.     Marketing and Sale Process. The sale of the Transferred Assets to the Buyer pursuant to the Purchase Agreement is duly authorized under sections 363(b)(1), 363(f), 1123 and 1129 of the Bankruptcy Code, Bankruptcy Rule 6004(f), Bankruptcy Local Rule 2002-1, and the Confirmation Order.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Combined Hearing and (ii) the representations of counsel made on the record at the Combined Hearing, the Debtors and their professionals, agents, and other representatives engaged in a robust and extensive marketing and sale process for the Transferred Assets and conducted all aspects of the sale process in good faith.  The marketing process undertaken by the Debtors and their professionals, agents, and other representatives with respect to the Transferred Assets has

been adequate and appropriate and reasonably calculated to maximize value for the benefit the

Debtors' Estates and all stakeholders.

      E.    <u>Corporate Authority</u>. The Debtors are the sole and lawful owners of the Transferred

Assets.  The Transferred Assets constitute property of the Debtors' Estates and title thereto is

vested in the Debtors' Estates within the meaning of section 541 of the Bankruptcy Code.  The

Debtors (i) have full corporate power and authority to execute the Purchase Agreement, and the

Sale of the Transferred Assets to the Buyer has been duly and validly authorized by all necessary

corporate action, (ii) have all of the corporate power and authority necessary to consummate the

Sale and all transactions contemplated by the Purchase Agreement and the other Sale Transaction

Documents, including this Sale Order, (iii) have taken all corporate action necessary to authorize

and approve the Purchase Agreement, and the consummation by the Debtors of the Sale and all

other transactions contemplated by this Sale Order, the Purchase Agreement, or the other Sale

Transaction Documents, and (iv) require no further consents or approvals, other than those

expressly provided for in the Purchase Agreement, to consummate such transactions.

      F.    <u>Highest and Best Offer; Business Judgment</u>. The Debtors have demonstrated a

sufficient basis to enter into the Purchase Agreement, sell the Transferred Assets on the terms

outlined therein, and assume and assign the Transferred Contracts to the Buyer under sections 363

and 365 of the Bankruptcy Code and assign any applicable Transferred Contracts that were entered

into after the Petition Date pursuant to the Purchase Agreement.  All such actions are appropriate

exercises of the Debtors' business judgment and in the best interests of the Debtors, their Estate,

their creditors, and other parties in interest.  Approval of the Sale on the terms set forth in the

Purchase Agreement at this time is in the best interests of the Debtors, their Estates, their creditors,

and all other parties in interest.

5

G.      The offer of the Buyer, on the terms and conditions set forth in the Purchase

Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the

highest and best offer received by the Debtors after extensive marketing, (ii) is in the best interests

of the Debtors, their Estates, their creditors, and all other parties in interest, and (iii) is fair and

reasonable and constitutes reasonably equivalent value, fair and adequate consideration, and fair

value for the Transferred Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act,

the Uniform Voidable Transactions Act, and all other applicable laws of the United States, any

state, territory, possession, the District of Columbia, or any other applicable jurisdiction with laws

substantially similar to the foregoing.   Taking into consideration all relevant factors and

circumstances, no other Person or entity has offered to purchase the Transferred Assets for greater

value to the Debtors and their Estates.

H.      The Debtors and the Buyer have not entered into the Purchase Agreement, or

proposed to consummate the Sale: (i) for the purposes of hindering, delaying, or defrauding the

Debtors' present or future creditors, or (ii) fraudulently, for the purpose of statutory or common

law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or

under the laws of the United States, any state, territory, possession, the District of Columbia, or

any other applicable jurisdiction with laws substantially similar to the foregoing.

I.      Good and sufficient reasons for approval of the Purchase Agreement and the Sale

have been articulated by the Debtors.   The Debtors have demonstrated compelling circumstances

for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy

Code and in accordance with the Plan, in that, among other things, the immediate consummation

of the Sale of the Transferred Assets to the Buyer is necessary and appropriate to preserve and to

maximize the value of the Debtors' Estates.   To maximize the value to the Estates of the Sale of

4891-1492-7555

the Transferred Assets, it is essential that the consummation of the Sale and the other transactions provided for under the Purchase Agreement occur promptly following confirmation of the Plan.

J. <u>Opportunity to Object</u>. A reasonable opportunity to object or be heard with respect to the Sale (and all transactions contemplated in connection therewith), the assumption and assignment of the Transferred Contracts, including the assignment of any applicable Transferred Contracts that were entered into after the Petition Date, to the Buyer pursuant to the Purchase Agreement, the Identified Cure Amounts (defined below), the Combined Hearing, and all deadlines related thereto has been afforded to all interested persons and entities, including, without limitation: (i) the United States Trustee for the Northern District of Texas; (ii) counsel to Prepetition Secured Parties and the DIP Secured Parties; (iii) counsel to the official committee of unsecured creditors; (iv) the United States Attorney's Office for the Northern District of Texas; (v) the Internal Revenue Service; (vi) the state attorneys general for states in which the Debtors conduct business; (vii) all known holders of Liens, Claims, Interests, and Encumbrances secured by the Transferred Assets; (viii) each landlord of the Debtors' warehouses and/or other premises; (ix) each governmental agency that is an interested party with respect to the Sale and the other transactions contemplated in the Purchase Agreement; (x) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Bankruptcy Local Rules, and (xi) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

K. <u>Good Faith Buyer; Arm's Length Sales</u>. The Purchase Agreement was negotiated, proposed, and entered into by the applicable Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors, the Buyer, nor any of their respective affiliates have engaged in any conduct that would cause or permit the Purchase Agreement or the Sale of the Transferred Assets (or the other transactions contemplated in the

Purchase Agreement) to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or other applicable law.

L.      The Buyer is a good faith Buyer under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  In particular, (i) the Buyer recognizes that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) the Buyer did not in any way induce or cause the filing of the Chapter 11 Cases by the Debtors; (iii) the Buyer did not violate section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, officers, or controlling stakeholders exists between the Buyer and any of the Debtors; and (v) the Buyer did not act in a collusive manner with any person and the Purchase Price was not controlled by any undisclosed agreement among third parties.

M.      <u>Free and Clear Transfer Required by the Buyer</u>. The Buyer would not have entered into the Purchase Agreement, and would not have consummated the Sale contemplated thereby, thus adversely affecting the Debtors, their Estates, and their creditors, if each of the Sale (and the other transactions contemplated by the Purchase Agreement) and the assumption and assignment of the Transferred Contracts to the Buyer thereof, including the assignment of any applicable Transferred Contracts that were entered into after the Petition Date, were not free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities) as more fully set forth in Paragraph V.7 of this Sale Order, or if the Buyer would, or in the future could, be liable for any encumbrances, obligations, or liabilities other than the Permitted Encumbrances and Assumed Liabilities.  Except as otherwise expressly provided in the Plan,  the Confirmation Order, or this

8

Sale Order, the Buyer shall not have any responsibility whatsoever with respect to the Excluded Liabilities, which shall remain the sole responsibility of the Debtors before, on, and after Closing.

N.    As of the Closing, pursuant and subject to the applicable terms of the Purchase Agreement, the Sale will effect a legal, valid, enforceable, and effective transfer of the Transferred Assets under the Purchase Agreement and will vest the Buyer with all of the applicable Debtors' respective rights, title, and interests in such Transferred Assets free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities), including, without limitation, (i) liens, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, options, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or other title retention arrangements, other liens (including mechanic's, materialman's, possessory, and other consensual and non-consensual liens and statutory liens), judgments, charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, or any rights that purport to give any party a right of first refusal, option, or consent with respect to the Debtors' interests in the Transferred Assets or any similar rights; (ii) all claims as defined in Bankruptcy Code section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, claims for reimbursement, exoneration, products liability, alter-ego,

9

4891-1492-7555

environmental, or tax, decrees of any court or foreign or domestic governmental entity, indentures, loan agreements, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent, and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, labor, employment, tort, products liability, and pension claims, and debts arising in any way in connection with any agreements, acts, or failures to act, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases and whether imposed by agreement, understanding, law, equity or otherwise; (iv) any rights based on any products, successor or transferee liability, (v) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Transferred Assets or any similar rights; (vi) any rights under labor or employment agreements; (vii) any rights under mortgages, deeds of trust, and security interests; (viii) any rights related to intercompany loans and receivables between the Debtors that are party to the Purchase Agreement and any Debtor or non-Debtor subsidiary or affiliate; (ix) any rights under any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "*ERISA*")), health or welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the

10

Debtors have at any time contributed to or had any liability or potential liability; (x) any other employee claims related to worker's compensation, occupational disease or unemployment, or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors;  (l) the WARN Act (29 U.S.C. §§ 2101 et seq.) (the "**WARN Act**") and any state law equivalents; (xi) any bulk sales or similar law; (xii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority; (xiii) any unexpired lease or executory contract to which a Debtor is a party that is not a Transferred Contract that will be assumed and assigned pursuant to this Sale Order and the Purchase Agreement; and (xiv) any other Excluded Liabilities as provided in the Purchase Agreement.  Notwithstanding the foregoing, the Transferred Assets shall not include the Avoidance Actions against any parties identified on Schedule 1 to the Global Settlement Term Sheet until the passage of one Business Day after the expiration of the GUC Settlement Opt-In Election Deadline.  In the event that a Holder of General

4891-1492-7555

Unsecured Claims that is listed on Schedule 1 to the Global Settlement Term Sheet makes a GUC Settlement Opt-In Election prior to the expiration of the GUC Settlement Opt-In Election Deadline, any potential Avoidance Action against such Holder will not be conveyed to the Purchaser and instead will become GUC Trust Assets.

O.    <u>Satisfaction of Section 363(f)</u>. The Debtors may sell the Transferred Assets free and clear of any and all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has or have been satisfied.  All parties in interest, including, without limitation, any holders of Liens, Claims, Interests, and Encumbrances and any contract counterparty to the Transferred Contracts who did not object or who withdrew their objection to the Sale, the assumption and assignment, or the assignment of the applicable Transferred Contract, or the associated Cure Claims, are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) and 1141 of the Bankruptcy Code.  Those (i) holders of Liens, Claims, Interests, or Encumbrances and (ii) non-Debtor parties to Transferred Contracts that did not object are adequately protected by having their Liens, Claims, Interests, or Encumbrances, if any, attach to the portion of the purchase price ultimately attributable to the Transferred Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Transferred Assets, subject to any claims and defenses the Debtors or their Estates may possess with respect thereto.

P.    <u>No Successorship</u>. Neither the Buyer nor any of its respective affiliates are successors to the Debtors or their Estates by reason of any theory of law or equity, and neither the Buyer nor any of its respective affiliates shall assume or in any way be responsible for any liability

12

or obligation of any of the Debtors and/or their Estates, except as otherwise expressly provided in the Purchase Agreement, the Plan, the Confirmation Order, and this Sale Order. The Buyer: (i) has not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or of their respective Estates, businesses, or operations or any enterprise of the Debtors, and (iii) does not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

Q.     The Transferred Contracts. The Debtors have demonstrated that (i) it is an exercise of their sound business judgment to assume and assign the Transferred Contracts, including the assignment of any applicable Transferred Contracts that were entered into after the Petition Date, to the Buyer in each case in connection with the consummation of the Sale and (ii) the assumption and assignment of the Transferred Contracts, including the assignment of any applicable Transferred Contracts that were entered into after the Petition Date, to the Buyer is in the best interests of the Debtors, their Estates, their creditors, and all other parties in interest. The Transferred Contracts being assumed and assigned or assigned to the Buyer are an integral part of the Transferred Assets being purchased by the Buyer, and, accordingly, such assumption, assignment, and cure of any defaults, as applicable, under the Transferred Contracts are reasonable and enhance the value of the Debtors' Estates. Any contract counterparty to a Transferred Contract that has not actually filed with the Court an objection to such assumption and assignment or assignment in accordance with the terms of the *Order (I) Approving Certain Bidder Protections, (II) Approving Contract Assumption and Assignment Procedures, and (III) Granting Related Relief* entered substantially contemporaneously herewith (the "***Bidder Protections Order***") is deemed to have consented to such assumption and assignment and the monetary amounts required

to cure any existing defaults arising under such Transferred Contracts pursuant to section 365(b)(1) of the Bankruptcy Code as identified on a Contract Notice (as defined in the Bidder Protections Order) or the Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Court as part of the Plan Supplement (as defined in the Plan) (such amounts, the "***Identified Cure Amounts***").

R.      <u>Cure Claims and Adequate Assurance</u>. The Debtors and the Buyer have, including by way of entering into the Purchase Agreement and agreeing to the provisions relating to the Transferred Contracts therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the applicable Transferred Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Transferred Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has, based upon the record of these proceedings, including the evidence proffered by the Debtors at the Combined Hearing, provided adequate assurance of its future performance of and under the Transferred Contracts pursuant to sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Buyer's promise under the Purchase Agreement to perform the obligations under the Transferred Contracts after the Closing shall constitute adequate assurance of future performance under the Transferred Contracts being assigned to the Buyer within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The Identified Cure Amounts are hereby deemed to be the sole amounts necessary to cure any and all defaults under the applicable Transferred Contracts under section 365(b) of the Bankruptcy Code.

4891-1492-7555

S.    <u>Final Order</u>. This Sale Order constitutes a "final" order within the meaning of 28 U.S.C. § 158(a).

T.    <u>Time Is of the Essence; Waiver of Stay</u>. Time is of the essence in consummating the Sale.  In order to maximize the value of the Transferred Assets, it is essential that the Sale and the assignment of the Transferred Assets occur within the time constraints set forth in the Purchase Agreement, and there is no just reason for delay in the implementation of this Sale Order. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d) and, to the extent applicable, Bankruptcy Rule 3020(e).

U.    <u>Confirmation of the Plan</u>. The Sale of the Transferred Assets is authorized in connection with confirmation of the Plan and is thus entitled to the full benefits and protections provided under section 1146 of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.    <u>The Sale is Approved.</u>**

1.    The Sale of the Transferred Assets contemplated by the Purchase Agreement is hereby approved, as set forth herein.

**II.    <u>Approval of the Purchase Agreement.</u>**

2.    The Purchase Agreement, the Sale Transaction Documents, and all other ancillary documents and all of the terms and conditions thereof are hereby approved.  Pursuant to sections 105, 363, 365, and 1123 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the Purchase Agreement and to consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement, the Plan, the Confirmation Order, and this Sale Order without further leave of the Court.

4891-1492-7555

3.     The Debtors are authorized to execute and deliver, and are empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Transferred Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

### III.     Binding Effect of Order.

4.     This Sale Order, the Plan, the Confirmation Order, and the Purchase Agreement shall each be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, Interests, and Encumbrances (including holders of any rights or claims based on any putative products, successor, or transferee liability) of any kind or nature whatsoever, all contract counterparties to the Transferred Contracts, the Buyer, all successors and assigns of the Buyer, the Debtors, and their respective affiliates and subsidiaries, and any trustee or successor trustee appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.

### IV.     Amendments to the Purchase Agreement.

5.     Subject to the terms and conditions of the Purchase Agreement, the Debtors and the Buyer, as the context makes applicable, may amend, modify, supplement, or waive any provision of the Purchase Agreement (an "***Amendment***") without further approval or order of the Court, so long as (a) such Amendment is not material and is undertaken in good faith by the Buyer and the Debtors; (b) the Debtors provide prior written notice of the Amendment (the "***Amendment Notice***") to the U.S. Trustee, counsel to the Prepetition Secured Parties and DIP Secured Parties, and, counsel to the official committee of unsecured creditors (collectively, the "***Notice Parties***"),

16

and (c) the Debtors file the Amendment Notice with the Court; *provided*, *however*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such Amendment.  Any material Amendment must be approved by the Court to be effective.

6.      Section 2.1(k)(i) of the Purchase Agreement is hereby amended as follows:

"(i) any of Seller's vendors, suppliers, customers or trade creditors with whom Buyer continues to conduct business in regard to the Transferred Assets after the Closing that is listed on **Schedule 1** of the Global Settlement Term Sheet (as defined in the Plan) (the "***Go-Forward Vendors Schedule***"); *provided* that to the extent any vendor, supplier, customer or trade creditor not previously identified on the Sellers' bankruptcy schedules is identified after entry of the U.S. Sale Order, the Buyer shall have 30 days to add such party to the Go-Forward Vendors Schedule, and such party shall be deemed to have been a Designated Party hereunder as of the Closing."

**V.      Transfer of the Transferred Assets Free and Clear.**

7.      The Buyer shall assume and be liable for the Assumed Liabilities expressly assumed pursuant to the Purchase Agreement, this Sale Order, and the Confirmation Order, and, for the avoidance of doubt, shall not assume or be liable for any Excluded Liabilities.  Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f), 1123, 1141, and 1146 of the Bankruptcy Code, upon the Closing, the Transferred Assets shall be transferred to the Buyer free and clear of any and all Liens, Claims, Interests, and Encumbrances (as defined in the Purchase Agreement) of any kind or nature whatsoever with the sole exception of any Permitted Encumbrances and Assumed Liabilities.  For purposes of this Sale Order, "Liens," "Claims," and "Interests," as used herein, shall have the respective meanings set forth below:

a.   any and all charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), options, rights of consent, rights of setoff, successor and products liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, third-party interests, or any other restrictions or limitations of any kind with respect to the Transferred Assets including all the restrictions or limitations set forth in this Paragraph 6 (collectively, "***Liens***");

b.   any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment, or pension laws, (ii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, and (iii) any and all other claims, causes of action, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors, or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the marketing and bidding process with respect to the Transferred Assets, the Transferred Contracts, or the transactions contemplated by the Purchase Agreement, including all the claims set forth in this Paragraph 6 (collectively, "***Claims***"); and

c.   any and all equity or other interests of any kind or nature whatsoever in or with respect to (i) any of the Debtors or their respective affiliates, subsidiaries, successors, or assigns, (ii) the Transferred Assets, or (iii) the Transferred Contracts, including all the interests set forth in this Paragraph 6 (collectively, "***Interests***");

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity, or otherwise, and whether occurring or arising before, on, or after the Petition Date or occurring or arising prior to the Closing.  Any and all such Liens, Claims, Interests, and Encumbrances shall attach to the portion of the purchase price ultimately attributable to the Transferred Assets against or in which they claim an interest, in the order of

4891-1492-7555

their priority, with the same validity, force, and effect, if any, which they now have against such Transferred Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their Estates may possess with respect thereto. At Closing, the Buyer shall take title to and possession of the Transferred Assets subject only to any Permitted Encumbrances and Assumed Liabilities; *provided, however*, that the Transferred Assets shall not include the Avoidance Actions against any parties identified on Schedule 1 to the Global Settlement Term Sheet until the passage of one Business Day after the expiration of the GUC Settlement Opt-In Election Deadline. In the event that a Holder of General Unsecured Claims that is listed on Schedule 1 to the Global Settlement Term Sheet makes a GUC Settlement Opt-In Election prior to the expiration of the GUC Settlement Opt-In Election Deadline, any potential Avoidance Action against such Holder will not be conveyed to the Purchaser and instead will become GUC Trust Assets.

**VI.    Vesting of Transferred Assets in the Buyer.**

8.    The transfer of the Transferred Assets to the Buyer pursuant to the Purchase Agreement shall constitute a legal, valid, and effective transfer of the Transferred Assets on the Closing, and, subject to the proviso in decretal paragraph 7 above, shall vest the Buyer with all of the Debtors' rights, title, and interests in the Transferred Assets free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities).

**VII.   Release of Liens.**

9.    The Debtors are authorized and directed to execute such documents as may be necessary to release any Liens, Claims, Interests, and Encumbrances (with the sole exception of any Permitted Encumbrances and Assumed Liabilities) of any kind against the Transferred Assets as such Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) may have been recorded or may otherwise exist. If any person or entity that

19

has filed financing statements, lis pendens, or other documents or agreements evidencing Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) against or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing Date of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) that the person or entity has with respect to the Transferred Assets, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Transferred Assets; (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all such Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) against the Buyer and the applicable Transferred Assets; (c) the Debtors' creditors and the holders of any Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge, or release their Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) in the Transferred Assets; and (d) the Buyer may seek in this Court or any other court of competent jurisdiction to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all such Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) with respect to the Transferred Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office, and such agencies,

4891-1492-7555

departments, and offices are authorized to accept this Sale Order for filing or recording. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Transferred Assets free and clear of Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and none of the Debtors or the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

## VIII.  <u>Assumption and Assignment of Transferred Contracts.</u>

10.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyer of the Transferred Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Pursuant to the Purchase Agreement, the Debtors' assignment of any Transferred Contracts that were entered into after the Petition Date is hereby approved.

11.    The Debtors are hereby authorized, in accordance with the Purchase Agreement, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyer the Transferred Contracts, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities), which Transferred Contracts, by operation of this Sale Order, shall be deemed assumed and assigned to the Buyer effective as of the Closing, (ii) assignment to the Buyer any applicable Transferred Contracts that were entered into after the Petition Date pursuant to the Purchase Agreement, and (iii) execute and deliver to the Buyer such documents or other instruments as the Buyer may deem necessary to assign and transfer the Transferred Contracts to the Buyer.

4891-1492-7555

12.    Subject to Paragraph 12 hereof:

a.    The Debtors are authorized to and may assume all of the Transferred Contracts in accordance with section 365 of the Bankruptcy Code.

b.    The Debtors are authorized to and may assign each Transferred Contract to the Buyer in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Transferred Contract that prohibit or condition the assignment of such Transferred Contract on the consent of the counterparty thereto or allow the non-Debtor party to such Transferred Contract to terminate, recapture, impose any fee or penalty, condition, renewal, or extension limitations, or modify any term or condition upon the assignment of such Transferred Contract shall constitute unenforceable anti-assignment provisions which are expressly preempted under section 365 of the Bankruptcy Code and void and of no force and effect.

c.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Transferred Contracts by the Debtors to the Buyer have been satisfied.

d.    Upon the Closing, the Transferred Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract (including those of the type described in sections 365(b)(2), 365(e)(1), and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer.

13.    All defaults of the Debtors under the Transferred Contracts occurring or arising prior to the assignment thereof to the Buyer at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured or satisfied by the payment of the Identified Cure Amount, if any, to cure all monetary defaults, if any, under each Transferred Contract in the amounts set forth on the schedule of Identified Cure Amounts attached to the Schedule of Assumed Executory Contracts and Unexpired Leases or any supplement thereto (or any other cure cost reached by agreement after an objection to the proposed cure cost by a counterparty to a Transferred Contract), which was served in compliance with the Bidder Protections Order, and as set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, and which Identified Cure Amounts were satisfied, or shall be satisfied as soon as practicable, by the Buyer as provided in the Purchase

22

Agreement. For all Transferred Contracts set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Buyer is authorized and directed to pay all Identified Cure Amounts required to be paid in accordance with the Purchase Agreement upon the later of (a) the Closing, (b) for any Transferred Contracts for which an objection has been filed to the assumption and assignment of such agreement or the Identified Cure Amounts relating thereto and such objection remains pending as of the date of this Sale Order, the resolution of such objection by settlement or order of this Court, and (c) the Effective Date of the Plan for any Transferred Contract designated by the Buyer after the Closing.

14.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their Estates shall be relieved from any liability for any breach of or obligations under any Transferred Contract following the effective date of such assumption and assignment to the Buyer.

**IX.     Release of Liens by Creditors; Collection of Transferred Assets.**

15.     Except as expressly provided to the contrary in this Sale Order or the Purchase Agreement, as applicable, the holder of any valid Lien, Claim, Interest, or Encumbrance in the Transferred Assets, shall, as of the Closing, be deemed to have waived and released such Lien, Claim, Interest, or Encumbrance, without regard to whether such holder has executed or filed any applicable release, and such Lien, Claim, Interest, or Encumbrance shall automatically, and with no further action by any party, attach to the portion of the purchase price ultimately attributable to the Transferred Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Transferred Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their Estates may possess with respect thereto. Notwithstanding the foregoing, any such holder of such a Lien, Claim, Interest, or Encumbrance is authorized and directed to execute and deliver any waivers, releases, or other related documentation, as reasonably requested by the Buyer or the Debtors.

23

16.     All persons and entities that are in possession of some or all of the Transferred Assets as of the Closing are directed to surrender possession of such Transferred Assets to the Buyer in accordance with the Purchase Agreement as of the Closing or at such time thereafter as the Buyer may request.  As of the Closing, the Buyer and its respective successors and assigns shall be designated and appointed as the Debtors' true and lawful attorney with full power of substitution in the Debtors' name and stead on behalf of and for the benefit of the Buyer and its respective successors and assigns, for the following sole and limited purposes:  to have the power to demand and receive any and all of the Transferred Assets and to give receipts and releases for and in respect of the Transferred Assets, or any part thereof, and from time to time to institute and prosecute against third parties for the benefit of the Buyer and its respective successors and assigns, as their interests may appear, proceedings at law, in equity, or otherwise, which the Buyer and its respective successors and assigns, as their interests may appear, may deem proper for the collection or reduction to possession of any of the Transferred Assets.

**X.     <u>Effect of Recordation of Order.</u>**

17.     The entry of this Sale Order (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities) existing as to the Transferred Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to

24

accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Transferred Assets. Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement, including, without limitation, recordation of this Sale Order.

## XI.   Section 1146 Exemption.

18.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to the Wind Down Estate or to any other Person or Entity) of property under the Plan or this Sale Order pursuant to: (1) the Sale, including the sale and transfer by the Debtors of the Transferred Assets; (2) the sale and liquidation of the Excluded Assets (as defined in the Plan); (3) the issuance, distribution, transfer, or exchange of any debt or equity Security, or other interest in the Debtors; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation

25

Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## XII.   **Prohibition of Actions Against the Buyer.**

19.    Except for any Permitted Encumbrances and Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the Purchase Agreement, the Plan, the Confirmation Order, or this Sale Order, neither the Buyer, nor any of its respective affiliates shall have any liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Transferred Assets or otherwise, and upon Closing all entities or persons are permanently and forever prohibited, barred, estopped, and enjoined from asserting against the Buyer and its permitted successors, designees, and assigns, or property, or the Transferred Assets conveyed in accordance with the Purchase Agreement, any Lien, Claim, Interest, or Encumbrance of any kind whatsoever arising prior to Closing including, without limitation, under any theory of successor or transferee liability, *de facto* merger or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Purchase Agreement, the Plan, the Confirmation Order, or this Sale Order, the Buyer and its respective affiliates shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and neither the Buyer nor its affiliates shall have

26

any successor or vicarious liabilities of any kind or character, including but not limited to any liability pertaining to any theory of antitrust, warranty, products liability, environmental, successor, or transferee liability, labor law, ERISA, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any claims under the WARN Act or any state law equivalents, or any claims related to wages, benefits, severance, or vacation pay owed to employees or former employees of the Debtors.

20. The Buyer may elect, as of the Closing or any time thereafter, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets, except to the extent not permitted by applicable law.

**XIII.    Distribution of Proceeds.**

21. All proceeds of the Sale shall be distributed in accordance with the Plan.

**XIV.    No Interference.**

22. Following the Closing, no holder of a Lien, Claim, Interest, or Encumbrance in or against the Debtors or the Transferred Assets shall interfere with the Buyer's title to or use and enjoyment of the Transferred Assets based on or related to such Lien, Claim, Interest, or Encumbrance or any actions that the Debtors may take in these Chapter 11 Cases or any successor cases.

**XV.    Retention of Jurisdiction.**

23. This Court retains jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order, the Confirmation Order, the Plan, and the

27

Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to:  (a) compel delivery of the Transferred Assets or performance of other obligations owed to the Buyer; (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein; (d) interpret, implement, and enforce the provisions of this Sale Order; and (e) protect the Buyer and its affiliates against (i) any Liens, Claims, Interests, and Encumbrances in or against the Debtors or the Transferred Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Transferred Assets that may be in their possession.

**XVI.   Final Order; No Stay of Order.**

24.     This Sale Order constitutes a "final" order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent applicable 3020(e), this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Sale under the Purchase Agreement at any time pursuant to the terms thereof.

**XVII.  Good Faith.**

25.     The transactions contemplated by the Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the subject transactions shall not affect the validity of the sales to the Buyer (including the assumption and assignment or assignment by the Debtors of any of the Transferred Contracts),

4891-1492-7555

unless such authorization is duly stayed pending such appeal. The Buyer is a good faith Buyer and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

## XVIII.   No Collusion.

26.     The transactions contemplated by the Purchase Agreement were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors, the Buyer, nor any of their respective affiliates have engaged in any conduct that would cause or permit the Purchase Agreement or the Sale of the Transferred Assets (or the other transaction contemplated in the Purchase Agreement) to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or other applicable law.

## XIX.     Inconsistencies with Prior Orders, Pleadings or Agreements.

27.     To the extent of any conflict between the Purchase Agreement, the Confirmation Order, the Plan, and this Sale Order, the terms of this Sale Order shall govern with respect to the Sale and the Purchase Agreement. To the extent this Sale Order is inconsistent or conflicts with any prior order or pleading in these Chapter 11 Cases, the terms of this Sale Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale.

## XX.     Failure to Specify Provisions.

28.     The failure to specifically reference any particular provisions of the Purchase Agreement, the Confirmation Order, the Plan, or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and other related documents be authorized and approved.

### # # # End of Order # # #

29

**Order submitted by:**

**VINSON & ELKINS LLP**

William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
bwallander@velaw.com
mstruble@velaw.com
kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## Exhibit C

**Proposed Notice of Effective Date**

4854-6211-3726

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 24-80045-mvl11** |
| | § | |
| **KIDKRAFT, INC.,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| Debtors. [1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF (I) ENTRY OF ORDER
CONFIRMING THE DEBTORS' AMENDED
JOINT CHAPTER 11 PLAN, (II) OCCURRENCE OF THE
EFFECTIVE DATE, (III) OPPORTUNITY FOR HOLDERS OF
ALLOWED GENERAL UNSECURED CLAIMS TO MAKE A GUC SETTLEMENT
OPT-IN ELECTION, AND (IV) ADMINISTRATIVE EXPENSE CLAIMS BAR DATE**

**PLEASE TAKE NOTICE** that on June 21, 2024, the Honorable Michelle V. Larson, United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of Texas (the "***Bankruptcy Court***"), entered the order [Docket No. __] (the "***Confirmation Order***") confirming the *Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 220] (as amended, modified, or supplemented, the "***Plan***").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on _____, 2024.

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in these chapter 11 cases can be found on the docket of these chapter 11 cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Stretto, at https://cases.stretto.com/kidkraft.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors, the Wind Down Estate, the GUC Trust, any Holder

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are:  KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc (4302).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  4630 Olin Road, Dallas, TX 75244.

[2]    Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

4854-6211-3726

of a Claim against or Interest in the Debtors and such Holder's respective successors, assigns, and designees, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Expense Claims shall be _____, 2024, and the deadline for filing requests for payment of Professional Fee Claims shall be _____, 2024.[3]

**PLEASE TAKE FURTHER NOTICE** that the Bar Date for filing claims based on the rejection of Executory Contracts or Unexpired Leases is the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Central Time) on the date that is 30 days following service of an order (including the Confirmation Order) approving the rejection of any executory contract or unexpired lease of the Debtors. To the extent any executory contract or unexpired lease is rejected pursuant to the terms of the Plan, the Rejection Damages Bar Date shall be 30 days after service of this *Notice of (I) Entry of Order Confirming the Debtors' Amended Joint Chapter 11 Plan, (II) Occurrence of the Effective Date, and (III) Administrative Expense Claims Bar Date*.

**PLEASE TAKE FURTHER NOTICE** that all Holders of Allowed General Unsecured Claims may elect to participate in any distributions from the GUC Trust by timely submitting a GUC Settlement Opt-In Election in accordance with the procedures set forth in the GUC Settlement Opt-In Form, which is attached as **Exhibit A** to the GUC Settlement Opt-In Notice, attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Bankruptcy Court and serve a copy of such request for notice on counsel to the Wind Down Estate. You must do this even if you filed such a notice prior to the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

---

[3]   The deadline for filing requests for payment of Administrative Expense Claims shall be: (a) for Administrative Expense Claims that are not Professional Fee Claims, 30 days after the Effective Date; and (b) for Administrative Expense Claims that are Professional Fee Claims, 45 days after the Effective Date.

4854-6211-3726

Dated: _____, 2024
Dallas, Texas

/s/ _____

**VINSON & ELKINS LLP**

William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
bwallander@velaw.com
mstruble@velaw.com
kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com;
lkanzer@velaw.com

**ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION**

4854-6211-3726

## Exhibit 1

**GUC Settlement Opt-In Notice**

William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
bwallander@velaw.com; mstruble@velaw.com;
kvakamudi@velaw.com
**PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
**VINSON & ELKINS LLP**
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; lkanzer@velaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 24-80045-mvl11** |
| | § | |
| **KIDKRAFT, INC., *et al.*,** | § | **(Chapter 11)** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |
| | § | |
| | § | **Re: Docket No. ___** |

## NOTICE OF (I) GLOBAL SETTLEMENT,
## (II) OPTION TO OPT-IN TO PARTICIPATION
## IN THE GUC TRUST, AND (III) OTHER RELEVANT INFORMATION

**PLEASE TAKE NOTICE THAT** on May 10, 2024 (the "*Petition Date*"), KidKraft, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "*Debtors*") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "*Bankruptcy Court*").

**PLEASE TAKE FURTHER NOTICE THAT** on May 23, 2024, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "*Committee*") pursuant to section 1102 of the Bankruptcy Code. *See* Docket No. 120.

**PLEASE TAKE FURTHER NOTICE THAT** on June 17, 2024, the Debtors filed a *Notice of Filing Global Settlement Term Sheet* [Docket No. 195] that attaches a copy of a Global

---

[1]  The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are: KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc. (4302).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  4630 Olin Road, Dallas, TX 75244.

1

Settlement Term Sheet thereto as Exhibit A (the "**Global Settlement Term Sheet**"), by and between the Debtors, the Committee, the DIP Secured Parties, the Prepetition Secured Parties, the Purchaser, and MidOcean.

**PLEASE TAKE FURTHER NOTICE THAT** on June 21, 2024, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement; and (II) Confirming the Debtors' Amended Joint Prepackaged Chapter 11 Plan* (the "**Confirmation Order**") [Docket No. __], which, *inter alia*, confirmed the Debtors' *Amended Joint Prepackaged Chapter 11 Plan* (the "**Plan**") [Docket No. 220]. The Plan incorporates and implements the terms of the Global Settlement Term Sheet, including provisions related to the creation of a trust (the "**GUC Trust**") to be funded with certain assets (as further described in the Plan, the "**GUC Trust Assets**"), for the benefit of the Holders of Allowed General Unsecured Claims (as defined in the Plan) who elect to "opt in" to receiving their Pro Rata share of 100% of the beneficial interests in the GUC Trust by [●], 2024 (the "**GUC Settlement Opt-In Election Deadline**," and such affirmative election, the "**GUC Settlement Opt-In Election**"), all as further set forth in Article IV.C of the Plan. Holders of Allowed General Unsecured Claims desiring to make a GUC Settlement Opt-In Election must timely complete and return the form attached hereto as **Exhibit A** (the "**GUC Settlement Opt-In Form**") pursuant to the instructions and procedures set forth therein.

**IMPORTANTLY, THE PLAN PROVIDES THAT ANY CREDITOR WHO MAKES A GUC SETTLEMENT OPT-IN ELECTION AGREES THAT ANY AVOIDANCE ACTION AGAINST IT THAT WOULD HAVE OTHERWISE BEEN A TRANSFERRED ASSET PURCHASED BY THE PURCHASER WILL <u>NOT</u> BE INCLUDED IN THE TRANSFERRED ASSETS, AND SUCH CREDITOR MAKING THE GUC SETTLEMENT OPT-IN ELECTION IS POTENTIALLY SUBJECT TO BEING SUED FOR AN AVOIDANCE ACTION.**

**All Holders of Allowed General Claims are advised to review and consider the description of certain tax considerations related to the GUC Trust attached hereto as <u>Exhibit B</u> (the "*GUC Trust Tax Disclosures*").**

Copies of the Global Settlement Term Sheet, the Plan, and the Confirmation Order may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Bankruptcy Court, 1100 Commerce Street, Dallas, TX 75242 where they are available for review during normal operating hours. The Global Settlement Term Sheet, the Plan, and the Confirmation Order also are available for inspection on the Bankruptcy Court's website at https://www.txnb.uscourts.gov or for review and download free of charge on the Debtors' restructuring website at https://www.cases.stretto.com/kidkraft.[2] Copies of other documents filed in these chapter 11 cases may be obtained free of charge by contacting Stretto, Inc., the Debtors' claims, noticing, and solicitation agent ("**Stretto**") via (i) telephone at (855) 469-

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan. The statements contained herein are summaries of the provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan, the Plan shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement or the Plan.

1713 (Toll-Free) or (714) 886-6210 (International) (ii) email at TeamKidKraft@stretto.com (with "KidKraft Opt-In" in the subject line).

> **ANY PERSON WHO MAKES THE GUC SETTLEMENT OPT-IN ELECTION SPECIFIED HEREIN HEREBY AGREES AND UNDERSTANDS THAT ANY AVOIDANCE ACTION AGAINST IT THAT OTHERWISE WOULD BE PURCHASED BY THE PURCHASER AND NOT PROSECUTED BY THE PURCHASER WILL BE REMOVED FROM THE LIST OF AVOIDANCE ACTIONS PURCHASED BY THE PURCHASER, AND SUCH CREDITOR MAY BE SUED FOR ANY APPLICABLE AVOIDANCE ACTIONS.**
>
> 任何做出此处指定的 GUC 和解选择参与者，特此同意并理解：任何针对其而采取的个别清偿无效之诉权（否则，该诉权将由收购方购买并且不会被收购方起诉），都将从收购方购买的个别清偿无效之诉权的清单上删除，并且该债权人可能会因任何适用的个别清偿无效之诉权而被起诉。

Dated:  June [_], 2024
Dallas, Texas

*/s/*  _____

**VINSON & ELKINS LLP**
William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
bwallander@velaw.com; mstruble@velaw.com;
kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

4885-1203-0154

**Exhibit A**

**GUC Settlement Opt-In Form**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 24-80045-mvl11** |
| | § | |
| **KIDKRAFT, INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**GUC SETTLEMENT OPT-IN FORM**

By checking the box below and signing this GUC Settlement Opt-In Form,[2] the undersigned exercises its option to opt-in into participation in the GUC Trust and receiving its Pro Rata share of the GUC Trust Interests.  Further, by checking the box below and signing this GUC Settlement Opt-In Form, the undersigned elects to have any Avoidance Actions that may exist against it removed from the Transferred Assets (as applicable), and agrees that the GUC Trust and GUC Trustee may pursue such Avoidance Actions against it.

☐   The undersigned hereby **OPTS-IN** to participate in the GUC Trust and to have any Avoidance Actions against it removed from the Transferred Assets sold to the Purchaser.

_____
Date

_____
Name of Holder of General Unsecured Claim (Print or Type)

_____
Signature

_____
Name and Title of Authorized Agent (Print or Type)

_____
Address

_____

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are:  KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc. (4302).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  4630 Olin Road, Dallas, TX 75244.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 220].

_____

City, State, Zip

_____

Telephone / Email Address

     Completed Opt-In Forms must be actually received by the financial advisor for the Committee, Dundon Advisors, LLC, at the physical address below or via email **by 5:00 p.m. (Prevailing Central Time) on _____, 2024.**  Send your completed Opt-Out Form by **<u>ONLY ONE</u>** of the following means of submission:

     (i) if by first class mail, overnight delivery, or hand delivery, at DUNDON ADVISERS, LLC, c/o Joe Cashel, Ten Bank Street, Suite 1100, White Plains, NY 10606; or

     (ii) if via email, to <u>kidkraft@dundon.com</u>, with a reference to "KidKraft Opt-In Election" in the subject line.

2

Dated:  June [_], 2024
Dallas, Texas

*/s/*_____

**VINSON & ELKINS LLP**
William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
bwallander@velaw.com; mstruble@velaw.com;
kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## Exhibit B

## GUC Trust Tax Disclosures

Pursuant to the Plan,[1] the GUC Trust will be organized for the primary purpose of liquidating the GUC Trust Assets and making distributions to GUC Trust Beneficiaries on account of their GUC Trust Interests.  The GUC Trust is not organized with an objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose.  Thus, the GUC Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury regulation section 301.7701-4(d).  Under the Plan, all relevant parties are required to treat the GUC Trust as a liquidating trust, subject to definitive guidance to the contrary from the Internal Revenue Service.  In general, a liquidating trust is not a separate taxable entity but rather is treated as a grantor trust, pursuant to sections 671 through 679 of the Tax Code, owned by the grantors of the trust.  For this purpose, the beneficiaries of a liquidating trust are treated as the grantors and owners of the trust.  The GUC Trust will file annual information tax returns with the Internal Revenue Service as a grantor trust pursuant to Section 671 of the Tax Code and the applicable Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the GUC Trust Assets (e.g., income, gain, loss, deduction and credit).

Although the GUC Trust has been structured with the intention of complying with guidelines established by the IRS in Rev. Proc. 94-45, 1994-2 C.B. 684, for the formation of a liquidating trust, it is possible that the Internal Revenue Service could require a different characterization of the GUC Trust, which could result in a different and possibly greater tax liability to the GUC Trust or the holders of the GUC Trust Interests.  No request for a ruling from the Internal Revenue Service will be sought on the classification of the GUC Trust, and there can be no assurance that the Internal Revenue Service will not take a contrary position to the classification of the GUC Trust.  If the Internal Revenue Service were to successfully challenge the classification of the GUC Trust as a grantor trust, the U.S. federal income tax consequences to the GUC Trust and the holders of the GUC Trust Interests could be materially different from those discussed herein.  The following discussion assumes, for U.S. federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes, the treatment of the GUC Trust as a grantor trust, the GUC Trust Beneficiaries, who will be treated as grantors and deemed owners for U.S. federal and applicable state and local income tax purposes, as holders of GUC Trust Interests, and the GUC Trust Beneficiaries as the grantors and deemed owners of their allocable portion of the GUC Trust Assets.

To the extent the GUC Trust is treated as a "liquidating trust" then, upon its creation, for U.S. federal income tax purposes, each GUC Trust Beneficiary would be treated as having received and as owning an undivided interest in the GUC Trust Assets in exchange for surrendering all or a portion of such GUC Trust Beneficiary's Allowed General Unsecured Claims followed by a transfer by such GUC Trust Beneficiary of such GUC Trust Assets to the GUC Trust.  Upon the transfer of the GUC Trust Assets as more fully set forth in the GUC Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the GUC Trust Assets.  Under the

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 220].

Plan, all parties (including, without limitation, the Debtors, the GUC Trustee, the GUC Trust and the holders of GUC Trust Interests) are required to report consistently with the foregoing for U.S. federal and applicable state and local income tax purposes.  Consistent with such treatment, the GUC Trust's taxable income, gain, loss, deduction or credit will be allocated to the GUC Trust Beneficiaries in accordance with their relative beneficial interests in the GUC Trust during the applicable taxable period, and such allocation will be binding on all parties for U.S. federal and applicable state and local income tax purposes.  The GUC Trust Beneficiaries have an obligation to report its share of the GUC Trust's tax items (including gain on the sale or other disposition of a GUC Trust Asset).  Accordingly, the GUC Trust Beneficiaries may incur a tax liability as a result of owning a beneficial interest in the GUC Trust, regardless of whether the GUC Trust distributes cash or other GUC Trust Assets, and the GUC Trust Beneficiaries will responsible for the payment of any federal, state and local income tax due on the income and gain so allocated to them.

The basis of such GUC Trust Interest in the GUC Trust Assets received will be equal to the fair market value of the GUC Trust Assets as of the Effective Date.  The fair market values of the GUC Trust Assets will be determined by the GUC Trustee as the trustee of the GUC Trust, and all parties must utilize and report consistently with such fair market values for U.S. federal and applicable state and local income tax purposes.  The determination of the fair market values of the GUC Trust Assets is factual in nature and the IRS may challenge any such determination.

**Holders of Allowed General Unsecured Claims should not construe the contents of this GUC Trust Tax Disclosures as providing any legal, business, financial, securities, or tax advice, and should consult with their own advisors before making the GUC Settlement Opt-In Election.**

4885-1203-0154