

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed June 21, 2024**

_____

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-80045-mvl11 |
| | § | |
| **KIDKRAFT, INC.,** *et al.,* | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | Re: Docket No. 28, 29, 54, 220 |

## ORDER (I) AUTHORIZING
## THE SALE OF THE DEBTORS' ASSETS
## FREE AND CLEAR OF ALL LIENS, CLAIMS,
## INTERESTS AND ENCUMBRANCES PURSUANT
## TO 11 U.S.C. §§ 105 AND 363, (II) APPROVING
## THE PURCHASE AGREEMENT, (III) AUTHORIZING
## THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

---

[1]  The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers or Canadian business numbers, as applicable, are: KidKraft, Inc. (3303), KidKraft Europe, LLC (3174), KidKraft Intermediate Holdings, LLC (8800), KidKraft International Holdings, Inc. (2933), KidKraft Partners, LLC (3268), KidKraft International IP Holdings, LLC (1841), Solowave Design Corp. (9294), Solowave Design Holdings Limited (0206), Solowave Design Inc. (3073), Solowave Design LP (7201), and Solowave International Inc. (4302). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 4630 Olin Road, Dallas, TX 75244.

Upon the *Amended Joint Prepackaged Chapter 11 Plan* [Docket No. 220] (as it may be amended, altered, modified, or supplemented, and including all exhibits and supplements thereto, the "***Plan***")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), which contemplates entry of an order (this "***Sale Order***"):  (a) authorizing and approving the applicable Debtors' proposed sale of all of their respective right, title, and interest in, to, and under the Transferred Assets to Backyard Products, LLC, a Delaware limited liability company ("***Backyard***") or, as applicable, any Designated Buyer designated in accordance with the Purchase Agreement (Backyard or such Designated Buyer, as applicable, the "***Buyer***") free and clear of all Liens, Claims, Interests (each as defined herein), and Encumbrances (as defined in the Purchase Agreement) (with the sole exception of any Permitted Encumbrances and Assumed Liabilities), in accordance with the terms and conditions contained in that certain Asset Purchase Agreement, dated as of April 25, 2024, by and among certain of the Debtors and Backyard, substantially in the form attached hereto as **Exhibit 1** (as may be amended or otherwise modified from time to time and including all related documents, exhibits, schedules, and agreements thereto, collectively, the "***Purchase Agreement***," and the proposed sale contemplated thereunder, the "***Sale***") and the other transactions contemplated thereby; (b) approving the Purchase Agreement and the other Sale Transaction Documents; (c) authorizing the assumption and assignment to the Buyer of the Transferred Contracts, including the assignment of any applicable Transferred Contracts that were entered into after the Petition Date; and (d) granting related relief; and the Court having reviewed and considered the Plan and all relief related thereto and any objections thereto; and upon the full record in support of the relief requested by the Debtors in the Plan; and the Court having found that the relief requested in the Plan is in the best interests of the Debtors'

---

[2]   Capitalized terms utilized herein but not otherwise defined shall have the meanings ascribed to them in the Plan or the Purchase Agreement (as defined herein), as the context makes applicable.

4891-1492-7555

Estates, their creditors, and all other parties in interest; and the Court having heard the statements

in support of the relief requested in the Plan at a hearing before this Court on June 21, 2024 (the

"**Combined Hearing**"); and the Court having confirmed the Plan and entered the *Findings of Fact,*

*and Conclusions of Law, and Order Confirming the Debtors' Joint Prepackaged Chapter 11 Plan*

substantially contemporaneously herewith (the "**Confirmation Order**"); and the Court having

determined that the legal and factual bases set forth in the Plan, the *Declaration of Geoffrey Walker*

*in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 31], the *Declaration of*

*Ajay Bijoor, Managing Director of Robert W. Baird & Co. Incorporated, in Support of (I) the*

*Debtors' Motion to Obtain Postpetition Debtor in Possession Financing and (II) the Sale Process*

[Docket No. 32], and the *Declaration of Ajay Bijoor, Managing Director of Robert W. Baird &*

*Co. Incorporated, in Support of (I) the Sale Transaction and (II) the Bid Protections* [Docket No.

188], and at the Combined Hearing, establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.     <u>General</u>. The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to rule 7052 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), made applicable to these chapter 11 cases pursuant to

Bankruptcy Rule 9014.   To the extent that any of the following findings of fact constitute

conclusions of law, they are adopted as such.   To the extent that any of the conclusions of law

constitute findings of fact, they are adopted as such.

B.     <u>Jurisdiction and Venue</u>. The Court has jurisdiction over this matter pursuant to

28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4891-1492-7555

The matters addressed in this Sale Order constitute a "core" proceeding pursuant to 28 U.S.C. § 157(b).

C.      Bases for Relief. The statutory and other legal bases for the relief provided herein are sections 105(a), 363, 365, 503, 507, 1123, 1129, and 1146 of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 3020(e) (to the extent applicable), 6004, 6006, 9007, 9008, and 9014, the Plan and the Confirmation Order. The consummation of the Sale and the other transactions contemplated by the Purchase Agreement and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Local Rules**"), and the *General Order Regarding Procedures for Complex Chapter 11 Cases* (the "**Complex Case Procedures**"), and the Debtors and the Buyer have complied with all of the applicable requirements of such sections and rules in respect of such transactions.

D.      Marketing and Sale Process. The sale of the Transferred Assets to the Buyer pursuant to the Purchase Agreement is duly authorized under sections 363(b)(1), 363(f), 1123 and 1129 of the Bankruptcy Code, Bankruptcy Rule 6004(f), Bankruptcy Local Rule 2002-1, and the Confirmation Order.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Combined Hearing and (ii) the representations of counsel made on the record at the Combined Hearing, the Debtors and their professionals, agents, and other representatives engaged in a robust and extensive marketing and sale process for the Transferred Assets and conducted all aspects of the sale process in good faith.  The marketing process undertaken by the Debtors and their professionals, agents, and other representatives with respect to the Transferred Assets has

4891-1492-7555

been adequate and appropriate and reasonably calculated to maximize value for the benefit the Debtors' Estates and all stakeholders.

      E.     <u>Corporate Authority</u>. The Debtors are the sole and lawful owners of the Transferred Assets. The Transferred Assets constitute property of the Debtors' Estates and title thereto is vested in the Debtors' Estates within the meaning of section 541 of the Bankruptcy Code. The Debtors (i) have full corporate power and authority to execute the Purchase Agreement, and the Sale of the Transferred Assets to the Buyer has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the Sale and all transactions contemplated by the Purchase Agreement and the other Sale Transaction Documents, including this Sale Order, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement, and the consummation by the Debtors of the Sale and all other transactions contemplated by this Sale Order, the Purchase Agreement, or the other Sale Transaction Documents, and (iv) require no further consents or approvals, other than those expressly provided for in the Purchase Agreement, to consummate such transactions.

      F.     <u>Highest and Best Offer; Business Judgment</u>. The Debtors have demonstrated a sufficient basis to enter into the Purchase Agreement, sell the Transferred Assets on the terms outlined therein, and assume and assign the Transferred Contracts to the Buyer under sections 363 and 365 of the Bankruptcy Code and assign any applicable Transferred Contracts that were entered into after the Petition Date pursuant to the Purchase Agreement. All such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their Estate, their creditors, and other parties in interest. Approval of the Sale on the terms set forth in the Purchase Agreement at this time is in the best interests of the Debtors, their Estates, their creditors, and all other parties in interest.

4891-1492-7555

G.      The offer of the Buyer, on the terms and conditions set forth in the Purchase

Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the

highest and best offer received by the Debtors after extensive marketing, (ii) is in the best interests

of the Debtors, their Estates, their creditors, and all other parties in interest, and (iii) is fair and

reasonable and constitutes reasonably equivalent value, fair and adequate consideration, and fair

value for the Transferred Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act,

the Uniform Voidable Transactions Act, and all other applicable laws of the United States, any

state, territory, possession, the District of Columbia, or any other applicable jurisdiction with laws

substantially similar to the foregoing.   Taking into consideration all relevant factors and

circumstances, no other Person or entity has offered to purchase the Transferred Assets for greater

value to the Debtors and their Estates.

H.      The Debtors and the Buyer have not entered into the Purchase Agreement, or

proposed to consummate the Sale: (i) for the purposes of hindering, delaying, or defrauding the

Debtors' present or future creditors, or (ii) fraudulently, for the purpose of statutory or common

law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or

under the laws of the United States, any state, territory, possession, the District of Columbia, or

any other applicable jurisdiction with laws substantially similar to the foregoing.

I.      Good and sufficient reasons for approval of the Purchase Agreement and the Sale

have been articulated by the Debtors.   The Debtors have demonstrated compelling circumstances

for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy

Code and in accordance with the Plan, in that, among other things, the immediate consummation

of the Sale of the Transferred Assets to the Buyer is necessary and appropriate to preserve and to

maximize the value of the Debtors' Estates.   To maximize the value to the Estates of the Sale of

4891-1492-7555

the Transferred Assets, it is essential that the consummation of the Sale and the other transactions provided for under the Purchase Agreement occur promptly following confirmation of the Plan.

J.      Opportunity to Object. A reasonable opportunity to object or be heard with respect to the Sale (and all transactions contemplated in connection therewith), the assumption and assignment of the Transferred Contracts, including the assignment of any applicable Transferred Contracts that were entered into after the Petition Date, to the Buyer pursuant to the Purchase Agreement, the Identified Cure Amounts (defined below), the Combined Hearing, and all deadlines related thereto has been afforded to all interested persons and entities, including, without limitation: (i) the United States Trustee for the Northern District of Texas; (ii) counsel to Prepetition Secured Parties and the DIP Secured Parties; (iii) counsel to the official committee of unsecured creditors; (iv) the United States Attorney's Office for the Northern District of Texas; (v) the Internal Revenue Service; (vi) the state attorneys general for states in which the Debtors conduct business; (vii) all known holders of Liens, Claims, Interests, and Encumbrances secured by the Transferred Assets; (viii) each landlord of the Debtors' warehouses and/or other premises; (ix) each governmental agency that is an interested party with respect to the Sale and the other transactions contemplated in the Purchase Agreement; (x) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Bankruptcy Local Rules, and (xi) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

K.      Good Faith Buyer; Arm's Length Sales. The Purchase Agreement was negotiated, proposed, and entered into by the applicable Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors, the Buyer, nor any of their respective affiliates have engaged in any conduct that would cause or permit the Purchase Agreement or the Sale of the Transferred Assets (or the other transactions contemplated in the

4891-1492-7555

Purchase Agreement) to be avoided, or costs or damages to be imposed, under section 363(n) of

the Bankruptcy Code or other applicable law.

L.     The Buyer is a good faith Buyer under section 363(m) of the Bankruptcy Code and,

as such, is entitled to all of the protections afforded thereby.  In particular, (i) the Buyer recognizes

that the Debtors were free to deal with any other party interested in purchasing the Transferred

Assets; (ii) the Buyer did not in any way induce or cause the filing of the Chapter 11 Cases by the

Debtors; (iii) the Buyer did not violate section 363(n) of the Bankruptcy Code by any action or

inaction; (iv) no common identity of directors, officers, or controlling stakeholders exists between

the Buyer and any of the Debtors; and (v) the Buyer did not act in a collusive manner with any

person and the Purchase Price was not controlled by any undisclosed agreement among third

parties.

M.     <u>Free and Clear Transfer Required by the Buyer</u>. The Buyer would not have entered

into the Purchase Agreement, and would not have consummated the Sale contemplated thereby,

thus adversely affecting the Debtors, their Estates, and their creditors, if each of the Sale (and the

other transactions contemplated by the Purchase Agreement) and the assumption and assignment

of the Transferred Contracts to the Buyer thereof, including the assignment of any applicable

Transferred Contracts that were entered into after the Petition Date, were not free and clear of all

Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole

exception of any Permitted Encumbrances and Assumed Liabilities) as more fully set forth in

Paragraph V.7 of this Sale Order, or if the Buyer would, or in the future could, be liable for any

encumbrances, obligations, or liabilities other than the Permitted Encumbrances and Assumed

Liabilities.  Except as otherwise expressly provided in the Plan,  the Confirmation Order, or this

Sale Order, the Buyer shall not have any responsibility whatsoever with respect to the Excluded

Liabilities, which shall remain the sole responsibility of the Debtors before, on, and after Closing.

N.       As of the Closing, pursuant and subject to the applicable terms of the Purchase

Agreement, the Sale will effect a legal, valid, enforceable, and effective transfer of the Transferred

Assets under the Purchase Agreement and will vest the Buyer with all of the applicable Debtors'

respective rights, title, and interests in such Transferred Assets free and clear of all Liens, Claims,

Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any

Permitted Encumbrances and Assumed Liabilities), including, without limitation, (i) liens,

mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, options,

hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way,

encroachments, restrictive covenants, restrictions on transferability or other similar restrictions,

rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale

arrangements, or other title retention arrangements, other liens (including mechanic's,

materialman's, possessory, and other consensual and non-consensual liens and statutory liens),

judgments, charges of any kind or nature, if any, including any restriction on the use, voting,

transfer, receipt of income, or other exercise of any attributes of ownership, or any rights that

purport to give any party a right of first refusal, option, or consent with respect to the Debtors'

interests in the Transferred Assets or any similar rights; (ii) all claims as defined in Bankruptcy

Code section 101(5), including all rights or causes of action (whether in law or in equity),

proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment,

indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities

relating to any act or omission of the Debtors or any other person, consent rights, options, contract

rights, covenants, claims for reimbursement, exoneration, products liability, alter-ego,

4891-1492-7555

environmental, or tax, decrees of any court or foreign or domestic governmental entity, indentures, loan agreements, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent, and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, labor, employment, tort, products liability, and pension claims, and debts arising in any way in connection with any agreements, acts, or failures to act, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases and whether imposed by agreement, understanding, law, equity or otherwise; (iv) any rights based on any products, successor or transferee liability, (v) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Transferred Assets or any similar rights; (vi) any rights under labor or employment agreements; (vii) any rights under mortgages, deeds of trust, and security interests; (viii) any rights related to intercompany loans and receivables between the Debtors that are party to the Purchase Agreement and any Debtor or non-Debtor subsidiary or affiliate; (ix) any rights under any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "***ERISA***")), health or welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the

4891-1492-7555

Debtors have at any time contributed to or had any liability or potential liability; (x) any other employee claims related to worker's compensation, occupational disease or unemployment, or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "***COBRA***"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors;  (l) the WARN Act (29 U.S.C. §§ 2101 et seq.) (the "***WARN Act***") and any state law equivalents; (xi) any bulk sales or similar law; (xii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority; (xiii) any unexpired lease or executory contract to which a Debtor is a party that is not a Transferred Contract that will be assumed and assigned pursuant to this Sale Order and the Purchase Agreement; and (xiv) any other Excluded Liabilities as provided in the Purchase Agreement.  Notwithstanding the foregoing, the Transferred Assets shall not include the Avoidance Actions against any parties identified on Schedule 1 to the Global Settlement Term Sheet until the passage of one Business Day after the expiration of the GUC Settlement Opt-In Election Deadline.  In the event that a Holder of General

Unsecured Claims that is listed on Schedule 1 to the Global Settlement Term Sheet makes a GUC Settlement Opt-In Election prior to the expiration of the GUC Settlement Opt-In Election Deadline, any potential Avoidance Action against such Holder will not be conveyed to the Purchaser and instead will become GUC Trust Assets.

      O.    <u>Satisfaction of Section 363(f)</u>. The Debtors may sell the Transferred Assets free and clear of any and all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has or have been satisfied.  All parties in interest, including, without limitation, any holders of Liens, Claims, Interests, and Encumbrances and any contract counterparty to the Transferred Contracts who did not object or who withdrew their objection to the Sale, the assumption and assignment, or the assignment of the applicable Transferred Contract, or the associated Cure Claims, are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) and 1141 of the Bankruptcy Code.  Those (i) holders of Liens, Claims, Interests, or Encumbrances and (ii) non-Debtor parties to Transferred Contracts that did not object are adequately protected by having their Liens, Claims, Interests, or Encumbrances, if any, attach to the portion of the purchase price ultimately attributable to the Transferred Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Transferred Assets, subject to any claims and defenses the Debtors or their Estates may possess with respect thereto.

      P.    <u>No Successorship</u>. Neither the Buyer nor any of its respective affiliates are successors to the Debtors or their Estates by reason of any theory of law or equity, and neither the Buyer nor any of its respective affiliates shall assume or in any way be responsible for any liability

or obligation of any of the Debtors and/or their Estates, except as otherwise expressly provided in

the Purchase Agreement, the Plan, the Confirmation Order, and this Sale Order.  The Buyer: (i) has

not, *de facto* or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation

or substantial continuation, and is not holding itself out as a mere continuation, of any of the

Debtors or of their respective Estates, businesses, or operations or any enterprise of the Debtors,

and (iii) does not have a common identity of incorporators, directors, or equity holders with any

of the Debtors.

Q.      <u>The Transferred Contracts</u>. The Debtors have demonstrated that (i) it is an exercise

of their sound business judgment to assume and assign the Transferred Contracts, including the

assignment of any applicable Transferred Contracts that were entered into after the Petition Date,

to the Buyer in each case in connection with the consummation of the Sale and (ii) the assumption

and assignment of the Transferred Contracts, including the assignment of any applicable

Transferred Contracts that were entered into after the Petition Date, to the Buyer is in the best

interests of the Debtors, their Estates, their creditors, and all other parties in interest.   The

Transferred Contracts being assumed and assigned or assigned to the Buyer are an integral part of

the Transferred Assets being purchased by the Buyer, and, accordingly, such assumption,

assignment, and cure of any defaults, as applicable, under the Transferred Contracts are reasonable

and enhance the value of the Debtors' Estates.  Any contract counterparty to a Transferred Contract

that has not actually filed with the Court an objection to such assumption and assignment or

assignment in accordance with the terms of the *Order (I) Approving Certain Bidder Protections,*

*(II) Approving Contract Assumption and Assignment Procedures, and (III) Granting Related*

*Relief* entered substantially contemporaneously herewith (the "***Bidder Protections Order***") is

deemed to have consented to such assumption and assignment and the monetary amounts required

4891-1492-7555

to cure any existing defaults arising under such Transferred Contracts pursuant to section 365(b)(1) of the Bankruptcy Code as identified on a Contract Notice (as defined in the Bidder Protections Order) or the Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Court as part of the Plan Supplement (as defined in the Plan) (such amounts, the "***Identified Cure Amounts***").

R.      <u>Cure Claims and Adequate Assurance</u>. The Debtors and the Buyer have, including by way of entering into the Purchase Agreement and agreeing to the provisions relating to the Transferred Contracts therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the applicable Transferred Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Transferred Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has, based upon the record of these proceedings, including the evidence proffered by the Debtors at the Combined Hearing, provided adequate assurance of its future performance of and under the Transferred Contracts pursuant to sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Buyer's promise under the Purchase Agreement to perform the obligations under the Transferred Contracts after the Closing shall constitute adequate assurance of future performance under the Transferred Contracts being assigned to the Buyer within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The Identified Cure Amounts are hereby deemed to be the sole amounts necessary to cure any and all defaults under the applicable Transferred Contracts under section 365(b) of the Bankruptcy Code.

4891-1492-7555

S.      <u>Final Order</u>. This Sale Order constitutes a "final" order within the meaning of 28 U.S.C. § 158(a).

T.      <u>Time Is of the Essence; Waiver of Stay</u>. Time is of the essence in consummating the Sale.  In order to maximize the value of the Transferred Assets, it is essential that the Sale and the assignment of the Transferred Assets occur within the time constraints set forth in the Purchase Agreement, and there is no just reason for delay in the implementation of this Sale Order. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d) and, to the extent applicable, Bankruptcy Rule 3020(e).

U.      <u>Confirmation of the Plan</u>. The Sale of the Transferred Assets is authorized in connection with confirmation of the Plan and is thus entitled to the full benefits and protections provided under section 1146 of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.      <u>The Sale is Approved.</u>**

1.      The Sale of the Transferred Assets contemplated by the Purchase Agreement is hereby approved, as set forth herein.

**II.      <u>Approval of the Purchase Agreement.</u>**

2.      The Purchase Agreement, the Sale Transaction Documents, and all other ancillary documents and all of the terms and conditions thereof are hereby approved.  Pursuant to sections 105, 363, 365, and 1123 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the Purchase Agreement and to consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement, the Plan, the Confirmation Order, and this Sale Order without further leave of the Court.

4891-1492-7555

3.      The Debtors are authorized to execute and deliver, and are empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Transferred Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

**III.    Binding Effect of Order.**

4.      This Sale Order, the Plan, the Confirmation Order, and the Purchase Agreement shall each be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, Interests, and Encumbrances (including holders of any rights or claims based on any putative products, successor, or transferee liability) of any kind or nature whatsoever, all contract counterparties to the Transferred Contracts, the Buyer, all successors and assigns of the Buyer, the Debtors, and their respective affiliates and subsidiaries, and any trustee or successor trustee appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.

**IV.    Amendments to the Purchase Agreement.**

5.      Subject to the terms and conditions of the Purchase Agreement, the Debtors and the Buyer, as the context makes applicable, may amend, modify, supplement, or waive any provision of the Purchase Agreement (an "***Amendment***") without further approval or order of the Court, so long as (a) such Amendment is not material and is undertaken in good faith by the Buyer and the Debtors; (b) the Debtors provide prior written notice of the Amendment (the "***Amendment Notice***") to the U.S. Trustee, counsel to the Prepetition Secured Parties and DIP Secured Parties, and, counsel to the official committee of unsecured creditors (collectively, the "***Notice Parties***"),

16

and (c) the Debtors file the Amendment Notice with the Court; *provided*, *however*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such Amendment.  Any material Amendment must be approved by the Court to be effective.

6.     Section 2.1(k)(i) of the Purchase Agreement is hereby amended as follows:

"(i) any of Seller's vendors, suppliers, customers or trade creditors with whom Buyer continues to conduct business in regard to the Transferred Assets after the Closing that is listed on **Schedule 1** of the Global Settlement Term Sheet (as defined in the Plan) (the "***Go-Forward Vendors Schedule***"); *provided* that to the extent any vendor, supplier, customer or trade creditor not previously identified on the Sellers' bankruptcy schedules is identified after entry of the U.S. Sale Order, the Buyer shall have 30 days to add such party to the Go-Forward Vendors Schedule, and such party shall be deemed to have been a Designated Party hereunder as of the Closing."

**V.    Transfer of the Transferred Assets Free and Clear.**

7.     The Buyer shall assume and be liable for the Assumed Liabilities expressly assumed pursuant to the Purchase Agreement, this Sale Order, and the Confirmation Order, and, for the avoidance of doubt, shall not assume or be liable for any Excluded Liabilities.  Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f), 1123, 1141, and 1146 of the Bankruptcy Code, upon the Closing, the Transferred Assets shall be transferred to the Buyer free and clear of any and all Liens, Claims, Interests, and Encumbrances (as defined in the Purchase Agreement) of any kind or nature whatsoever with the sole exception of any Permitted Encumbrances and Assumed Liabilities.  For purposes of this Sale Order, "Liens," "Claims," and "Interests," as used herein, shall have the respective meanings set forth below:

4891-1492-7555

a.  any and all charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), options, rights of consent, rights of setoff, successor and products liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, third-party interests, or any other restrictions or limitations of any kind with respect to the Transferred Assets including all the restrictions or limitations set forth in this Paragraph 6 (collectively, "***Liens***");

b.  any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment, or pension laws, (ii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, and (iii) any and all other claims, causes of action, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors, or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the marketing and bidding process with respect to the Transferred Assets, the Transferred Contracts, or the transactions contemplated by the Purchase Agreement, including all the claims set forth in this Paragraph 6 (collectively, "***Claims***"); and

c.  any and all equity or other interests of any kind or nature whatsoever in or with respect to (i) any of the Debtors or their respective affiliates, subsidiaries, successors, or assigns, (ii) the Transferred Assets, or (iii) the Transferred Contracts, including all the interests set forth in this Paragraph 6 (collectively, "***Interests***");

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity, or otherwise, and whether occurring or arising before, on, or after the Petition Date or occurring or arising prior to the Closing.  Any and all such Liens, Claims, Interests, and Encumbrances shall attach to the portion of the purchase price ultimately attributable to the Transferred Assets against or in which they claim an interest, in the order of

their priority, with the same validity, force, and effect, if any, which they now have against such Transferred Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their Estates may possess with respect thereto.  At Closing, the Buyer shall take title to and possession of the Transferred Assets subject only to any Permitted Encumbrances and Assumed Liabilities; *provided, however*, that the Transferred Assets shall not include the Avoidance Actions against any parties identified on Schedule 1 to the Global Settlement Term Sheet until the passage of one Business Day after the expiration of the GUC Settlement Opt-In Election Deadline.  In the event that a Holder of General Unsecured Claims that is listed on Schedule 1 to the Global Settlement Term Sheet makes a GUC Settlement Opt-In Election prior to the expiration of the GUC Settlement Opt-In Election Deadline, any potential Avoidance Action against such Holder will not be conveyed to the Purchaser and instead will become GUC Trust Assets.

**VI.**    **Vesting of Transferred Assets in the Buyer.**

8.    The transfer of the Transferred Assets to the Buyer pursuant to the Purchase Agreement shall constitute a legal, valid, and effective transfer of the Transferred Assets on the Closing, and, subject to the proviso in decretal paragraph 7 above, shall vest the Buyer with all of the Debtors' rights, title, and interests in the Transferred Assets free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities).

**VII.**    **Release of Liens.**

9.    The Debtors are authorized and directed to execute such documents as may be necessary to release any Liens, Claims, Interests, and Encumbrances (with the sole exception of any Permitted Encumbrances and Assumed Liabilities) of any kind against the Transferred Assets as such Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) may have been recorded or may otherwise exist.  If any person or entity that

19

has filed financing statements, lis pendens, or other documents or agreements evidencing Liens,

Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed

Liabilities) against or in the Transferred Assets shall not have delivered to the Debtors prior to the

Closing Date of the Sale, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of all Liens, Claims, Interests, and

Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) that the person or

entity has with respect to the Transferred Assets, (a) the Debtors are hereby authorized to execute

and file such statements, instruments, releases, and other documents on behalf of the person or

entity with respect to the Transferred Assets; (b) the Buyer is hereby authorized to file, register, or

otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded,

shall constitute conclusive evidence of the release of all such Liens, Claims, Interests, and

Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) against the Buyer

and the applicable Transferred Assets; (c) the Debtors' creditors and the holders of any Liens,

Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed

Liabilities) are authorized and directed to execute such documents and take all other actions as

may be necessary to terminate, discharge, or release their Liens, Claims, Interests, and

Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) in the Transferred

Assets; and (d) the Buyer may seek in this Court or any other court of competent jurisdiction to

compel appropriate parties to execute termination statements, instruments of satisfaction, and

releases of all such Liens, Claims, Interests, and Encumbrances (other than Permitted

Encumbrances and Assumed Liabilities) with respect to the Transferred Assets.  This Sale Order

is deemed to be in recordable form sufficient to be placed in the filing or recording system of each

and every federal, state, or local government agency, department, or office, and such agencies,

departments, and offices are authorized to accept this Sale Order for filing or recording. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Transferred Assets free and clear of Liens, Claims, Interests, and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and none of the Debtors or the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

## VIII.   Assumption and Assignment of Transferred Contracts.

10.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyer of the Transferred Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Pursuant to the Purchase Agreement, the Debtors' assignment of any Transferred Contracts that were entered into after the Petition Date is hereby approved.

11.     The Debtors are hereby authorized, in accordance with the Purchase Agreement, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyer the Transferred Contracts, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities), which Transferred Contracts, by operation of this Sale Order, shall be deemed assumed and assigned to the Buyer effective as of the Closing, (ii) assignment to the Buyer any applicable Transferred Contracts that were entered into after the Petition Date pursuant to the Purchase Agreement, and (iii) execute and deliver to the Buyer such documents or other instruments as the Buyer may deem necessary to assign and transfer the Transferred Contracts to the Buyer.

21

12.    Subject to Paragraph 12 hereof:

    a. The Debtors are authorized to and may assume all of the Transferred Contracts in accordance with section 365 of the Bankruptcy Code.

    b. The Debtors are authorized to and may assign each Transferred Contract to the Buyer in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Transferred Contract that prohibit or condition the assignment of such Transferred Contract on the consent of the counterparty thereto or allow the non-Debtor party to such Transferred Contract to terminate, recapture, impose any fee or penalty, condition, renewal, or extension limitations, or modify any term or condition upon the assignment of such Transferred Contract shall constitute unenforceable anti-assignment provisions which are expressly preempted under section 365 of the Bankruptcy Code and void and of no force and effect.

    c. All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Transferred Contracts by the Debtors to the Buyer have been satisfied.

    d. Upon the Closing, the Transferred Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract (including those of the type described in sections 365(b)(2), 365(e)(1), and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer.

13.    All defaults of the Debtors under the Transferred Contracts occurring or arising prior to the assignment thereof to the Buyer at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured or satisfied by the payment of the Identified Cure Amount, if any, to cure all monetary defaults, if any, under each Transferred Contract in the amounts set forth on the schedule of Identified Cure Amounts attached to the Schedule of Assumed Executory Contracts and Unexpired Leases or any supplement thereto (or any other cure cost reached by agreement after an objection to the proposed cure cost by a counterparty to a Transferred Contract), which was served in compliance with the Bidder Protections Order, and as set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, and which Identified Cure Amounts were satisfied, or shall be satisfied as soon as practicable, by the Buyer as provided in the Purchase

22

4891-1492-7555

Agreement. For all Transferred Contracts set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Buyer is authorized and directed to pay all Identified Cure Amounts required to be paid in accordance with the Purchase Agreement upon the later of (a) the Closing, (b) for any Transferred Contracts for which an objection has been filed to the assumption and assignment of such agreement or the Identified Cure Amounts relating thereto and such objection remains pending as of the date of this Sale Order, the resolution of such objection by settlement or order of this Court, and (c) the Effective Date of the Plan for any Transferred Contract designated by the Buyer after the Closing.

14.    Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their Estates shall be relieved from any liability for any breach of or obligations under any Transferred Contract following the effective date of such assumption and assignment to the Buyer.

**IX.    Release of Liens by Creditors; Collection of Transferred Assets.**

15.    Except as expressly provided to the contrary in this Sale Order or the Purchase Agreement, as applicable, the holder of any valid Lien, Claim, Interest, or Encumbrance in the Transferred Assets, shall, as of the Closing, be deemed to have waived and released such Lien, Claim, Interest, or Encumbrance, without regard to whether such holder has executed or filed any applicable release, and such Lien, Claim, Interest, or Encumbrance shall automatically, and with no further action by any party, attach to the portion of the purchase price ultimately attributable to the Transferred Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Transferred Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their Estates may possess with respect thereto. Notwithstanding the foregoing, any such holder of such a Lien, Claim, Interest, or Encumbrance is authorized and directed to execute and deliver any waivers, releases, or other related documentation, as reasonably requested by the Buyer or the Debtors.

23

4891-1492-7555

16.     All persons and entities that are in possession of some or all of the Transferred Assets as of the Closing are directed to surrender possession of such Transferred Assets to the Buyer in accordance with the Purchase Agreement as of the Closing or at such time thereafter as the Buyer may request.  As of the Closing, the Buyer and its respective successors and assigns shall be designated and appointed as the Debtors' true and lawful attorney with full power of substitution in the Debtors' name and stead on behalf of and for the benefit of the Buyer and its respective successors and assigns, for the following sole and limited purposes:  to have the power to demand and receive any and all of the Transferred Assets and to give receipts and releases for and in respect of the Transferred Assets, or any part thereof, and from time to time to institute and prosecute against third parties for the benefit of the Buyer and its respective successors and assigns, as their interests may appear, proceedings at law, in equity, or otherwise, which the Buyer and its respective successors and assigns, as their interests may appear, may deem proper for the collection or reduction to possession of any of the Transferred Assets.

**X.    Effect of Recordation of Order.**

17.     The entry of this Sale Order (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities) existing as to the Transferred Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to

24

4891-1492-7555

accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Transferred Assets.  Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement, including, without limitation, recordation of this Sale Order.

**XI.**    **Section 1146 Exemption.**

18.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to the Wind Down Estate or to any other Person or Entity) of property under the Plan or this Sale Order pursuant to:  (1) the Sale, including the sale and transfer by the Debtors of the Transferred Assets; (2) the sale and liquidation of the Excluded Assets (as defined in the Plan); (3) the issuance, distribution, transfer, or exchange of any debt or equity Security, or other interest in the Debtors; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation

4891-1492-7555

Order, the appropriate state or local governmental officials or agents shall forego the collection of

any such tax or governmental assessment and accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax, recordation fee, or

governmental assessment.  All filing or recording officers (or any other Person with authority over

any of the foregoing), wherever located and by whomever appointed, shall comply with the

requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax

or governmental assessment, and shall accept for filing and recording any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

**XII.**     **Prohibition of Actions Against the Buyer.**

19.     Except for any Permitted Encumbrances and Assumed Liabilities or as expressly

permitted or otherwise specifically provided for in the Purchase Agreement, the Plan, the

Confirmation Order, or this Sale Order, neither the Buyer, nor any of its respective affiliates shall

have any liability or responsibility for any liability or other obligation of the Debtors arising under

or related to the Transferred Assets or otherwise, and upon Closing all entities or persons are

permanently and forever prohibited, barred, estopped, and enjoined from asserting against the

Buyer and its permitted successors, designees, and assigns, or property, or the Transferred Assets

conveyed in accordance with the Purchase Agreement, any Lien, Claim, Interest, or Encumbrance

of any kind whatsoever arising prior to Closing including, without limitation, under any theory of

successor or transferee liability, *de facto* merger or continuity liability, whether known or unknown

as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent,

liquidated or unliquidated.  Without limiting the generality of the foregoing, and except as

otherwise specifically provided in the Purchase Agreement, the Plan, the Confirmation Order, or

this Sale Order, the Buyer and its respective affiliates shall not be liable for any claims against the

Debtors or any of their predecessors or affiliates, and neither the Buyer nor its affiliates shall have

4891-1492-7555

any successor or vicarious liabilities of any kind or character, including but not limited to any liability pertaining to any theory of antitrust, warranty, products liability, environmental, successor, or transferee liability, labor law, ERISA, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any claims under the WARN Act or any state law equivalents, or any claims related to wages, benefits, severance, or vacation pay owed to employees or former employees of the Debtors.

20.    The Buyer may elect, as of the Closing or any time thereafter, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets, except to the extent not permitted by applicable law.

**XIII.    Distribution of Proceeds.**

21.    All proceeds of the Sale shall be distributed in accordance with the Plan.

**XIV.    No Interference.**

22.    Following the Closing, no holder of a Lien, Claim, Interest, or Encumbrance in or against the Debtors or the Transferred Assets shall interfere with the Buyer's title to or use and enjoyment of the Transferred Assets based on or related to such Lien, Claim, Interest, or Encumbrance or any actions that the Debtors may take in these Chapter 11 Cases or any successor cases.

**XV.    Retention of Jurisdiction.**

23.    This Court retains jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order, the Confirmation Order, the Plan, and the

4891-1492-7555

Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to:  (a) compel delivery of the Transferred Assets or performance of other obligations owed to the Buyer; (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein; (d) interpret, implement, and enforce the provisions of this Sale Order; and (e) protect the Buyer and its affiliates against (i) any Liens, Claims, Interests, and Encumbrances in or against the Debtors or the Transferred Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Transferred Assets that may be in their possession.

**XVI.** **Final Order; No Stay of Order.**

24.     This Sale Order constitutes a "final" order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent applicable 3020(e), this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Sale under the Purchase Agreement at any time pursuant to the terms thereof.

**XVII.** **Good Faith.**

25.     The transactions contemplated by the Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the subject transactions shall not affect the validity of the sales to the Buyer (including the assumption and assignment or assignment by the Debtors of any of the Transferred Contracts),

4891-1492-7555

unless such authorization is duly stayed pending such appeal. The Buyer is a good faith Buyer and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

**XVIII.   No Collusion.**

26.    The transactions contemplated by the Purchase Agreement were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors, the Buyer, nor any of their respective affiliates have engaged in any conduct that would cause or permit the Purchase Agreement or the Sale of the Transferred Assets (or the other transaction contemplated in the Purchase Agreement) to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or other applicable law.

**XIX.   Inconsistencies with Prior Orders, Pleadings or Agreements.**

27.    To the extent of any conflict between the Purchase Agreement, the Confirmation Order, the Plan, and this Sale Order, the terms of this Sale Order shall govern with respect to the Sale and the Purchase Agreement. To the extent this Sale Order is inconsistent or conflicts with any prior order or pleading in these Chapter 11 Cases, the terms of this Sale Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale.

**XX.   Failure to Specify Provisions.**

28.    The failure to specifically reference any particular provisions of the Purchase Agreement, the Confirmation Order, the Plan, or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and other related documents be authorized and approved.

**# # # End of Order # # #**

4891-1492-7555

**Order submitted by:**

**VINSON & ELKINS LLP**

William L. Wallander (Texas Bar No. 20780750)
Matthew D. Struble (Texas Bar No. 24102544)
Kiran Vakamudi (Texas Bar No. 24106540)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
bwallander@velaw.com
mstruble@velaw.com
kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com;
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

4891-1492-7555